# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CLAUDIA BALCERO GIRALDO, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| **v.** } | **Case No.: 2:09-CV-1041-RDP** |
| } | |
| **DRUMMOND COMPANY, INC.;** } | |
| **DRUMMOND LTD.; AUGUSTO** } | |
| **JIMENEZ; ALFREDO ARAUJO; and** } | |
| **JAMES ADKINS,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

The court has before it the Motion for Partial Dismissal by Defendants Drummond Company, Inc. ("DCI") and Drummond Ltd. ("DLTD") (collectively referred to herein as "Drummond" or "Defendants") (Doc. #62) filed June 28, 2010.  Pursuant to the court's orders of July 21, 2009 and June 29, 2010, the motion for partial dismissal (Doc. #62) is now under submission and is considered without oral argument.

Having considered the briefs and evidentiary submissions on Colombian law, the court finds that the motion for partial dismissal (Doc. #62) is due to be granted.

## I.    Relevant Procedural History and Facts

Plaintiffs Jane Doe (1-166) and Peter Doe (1-81) commenced this action on May 27, 2009 by filing a complaint (Doc. #1) in this court for equitable relief and damages under the Alien Tort Claims Act ("ATS"),[1] Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350, and Colombian

---

[1] Over time, courts have referred variously to 28 U.S.C. § 1350 as the Alien Tort Statute (hence "ATS"), the Alien Tort Act, and the Alien Tort Claims Act.  In *Sosa v. Alvarez-Machain*, 542

wrongful death law.  (*See* Compl. ¶¶ 122-44).  In the original complaint, Plaintiffs alleged that they were wives and legal heirs, parents and legal heirs, and children and legal heirs of those "murdered by the AUC's Juan Andres Alvarez Front in furtherance of its agreement with Drummond to provide security, pacify the area, and otherwise ensure that the civilian population in and around the Drummond mine and its railroad line would not in any way provide support or cooperation to the FARC or other leftist rebels." (Compl. ¶ 15).  Plaintiffs sought "damages for the loss of their relative who was an innocent civilian murdered in furtherance of Drummond's security objectives and also as a result of the civil conflict between the AUC and the FARC[.]" (Compl. ¶ 15).

Defendants DCI and DLTD filed a motion to dismiss the original complaint on July 20, 2009. (Doc. #13).  Upon careful consideration of the briefing on the motion to dismiss, the court determined that the motion (Doc. #13) had clear merit.  However, Plaintiffs were afforded an opportunity to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a).  (*See* Doc. #30 at 1).  Plaintiffs filed a First Amended Complaint on December 4, 2009 (*see* Doc. #35) which was the subject of a second motion to dismiss (Doc. #37).  The second motion to dismiss (Doc. #37) was granted in part and denied in part by this court on April 30, 2010 (*see* Docs. # 43, 44) and on the same day the court denied Plaintiffs' motion for leave to proceed using pseudonyms (*see* Docs. #2, 45).  Plaintiffs filed a Second Amended Complaint (Doc. #55) on June 14, 2010, which named Plaintiffs instead of using pseudonyms.  The Drummond Defendants now seek to dismiss the claims of those Plaintiffs identified in the Second Amended Complaint "as not acting in a representative capacity for the decedents."  (Doc. #62 at 1).

---

U.S. 692 (2004), the Supreme Court referred to §1350 as the Alien Tort Statute. *See Vietnam Ass'n for Victims of Agent Orange*, 517 F.3d 104, 113, n.2 (2d. Cir. 2008).

II.    <u>**Standard of Review**</u>

As explained at greater length in the Memorandum Opinions of November 9, 2009 and April 30, 2010 (Docs. #30, 43), the issue of standing focuses on "whether the party invoking federal court jurisdiction has 'a personal stake in the outcome of the controversy,' and whether the dispute touches upon 'the legal relations of parties having adverse legal interests.'" *Flast v. Cohen*, 392 U.S. 83, 100-101 (1968) (internal citations omitted).  If a party lacks standing to bring a lawsuit, then the court lacks subject matter jurisdiction to hear the case, and the litigation is due to be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Enacted in 1992, the TVPA provides a cause of action for official torture and extrajudicial killing.  *See Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1263 (11th Cir. 2009).  The House Report sets out that the TVPA "authorizes Federal courts to hear cases brought by or on behalf of a victim of any individual who subjects a person to torture or extrajudicial killing.  H.R. Rep. No. 102-367(I), 1992 U.S.C.C.A.N. 84, 87.  The note to 28 U.S.C. § 1350 explains that liability attaches for extrajudicial killing "for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death."  The ATS provides no guidance on the issue of standing, thus making applicable the standards provided by the TVPA.  *See Arce v. Garcia*, 400 F.3d 1340 (11th Cir. 2005) (adopting the TVPA's statute of limitations where ATS did not provide one "because the statutes – and the policies behind the statutes – are similar," including "purpose," "mechanism," and "location within the United States Code"), *vacated on other grounds*, 434 F.3d 1254 (11th Cir. 2006).  The court declines Plaintiffs' invitation (in their Opposition to Defendants Drummond Company Inc. and Drummond Ltd.'s Motion for Partial Dismissal) to revisit the decision to apply the same standards to the ATS as to the TVPA.  (*See* Doc. #65 at 16).  Therefore, if

3

Plaintiffs lack standing under the TVPA, they similarly lack standing under the ATS; if Plaintiffs have standing under the TVPA, they similarly have standing under the ATS.

## III.   <u>Analysis</u>

Defendants seek dismissal of all Plaintiffs who are not suing as legal representatives of the decedents.  (*See* Doc. #62 at 1-2).  Specifically, Defendants maintain two grounds for partial dismissal of the complaint: (1) Plaintiffs' own allegations reveal that the non-representative Plaintiffs are not seeking damages on behalf of the alleged victims; and (2) the non-representative Plaintiffs cannot be proper wrongful death beneficiaries under Alabama law.  (*See generally* Doc. #62).  Plaintiffs counter that: (1) nothing changed in the Second Amended Complaint to allow Drummond to re-argue the standing issue; and (2) the TVPA is clear that legal representatives and wrongful death beneficiaries have standing.

As a preliminary matter, the court addresses Plaintiffs' argument that the standing issue is one that this court ruled on with the motion to dismiss the first Amended Complaint.  (*See* Doc. #65 at 3-8).  While it is true that the Second Amended Complaint contains some language identical to that of the First Amended Complaint, the Second Amended Complaint added 46 new decedents and 221 new Plaintiffs whose claims have never been made the subject of a motion to dismiss.  (*See* Docs. #35, 55).  Moreover, the court's ruling on the standing issue relied on Plaintiffs' representation that they had "amended their complaint to 'remove all claims for their own personal damages, leaving for each decedent a single representative, in most cases the surviving spouse, and in all cases the person who is the legal representative for decedent under the law of Colombia." (Doc. #43 at 33).  In fact, however, 357 of the plaintiffs named in the Second Amended Complaint explicitly state that they do not act as legal representatives of the decedents' estates and in most cases, multiple

4

Plaintiffs are attempting to recover for the same wrongdoing. (Doc. #55, ¶¶ 18-130). It is that issue that is properly brought in the pending motion, and is considered herein by the court.

### A.      A Review of Relevant Procedural History

In July 2009, the Drummond Defendants filed a motion (Doc. #13) to dismiss the original complaint. One of the arguments for dismissal included in that motion was that Plaintiffs lacked standing under the Torture Victims Protection Act and Alien Torts Claims Act.[2] (*See* Doc. #13 at 4-5). This court analyzed the issue in its Memorandum Opinion dated November 9, 2009, and held that the TVPA limits the types of damages recoverable to a claimant. (*See* Doc. #30 at 30) ("Thus, the relevant question is whether a wrongful death claimant under the TVPA is entitled to 'traditional' wrongful death damages *or* whether the TVPA limits the types of damages recoverable to a wrongful death claimant. The court is convinced it is the latter.").

> This court is convinced that a wrongful death claimant can have no standing under the TVPA if she seeks damages on her own behalf. There is simply nothing in the statute suggesting that damages are recoverable for anything beyond those sought 'on behalf of' a victim. Plaintiffs in this case do not allege that they themselves have been tortured or murdered – they allege only personal injuries stemming from the loss of their relative. As such, they have done nothing to establish that they are properly claimants to an action for wrongful death, nor that such wrongful death claims are brought on behalf of the deceased victims, as this court is convinced the TVPA requires.

(Doc. #30 at 31) (internal citations omitted). Based on that holding, this court found that Plaintiffs lacked standing to bring their claims under the TVPA, as those claims were drafted in the original complaint, but allowed Plaintiffs an opportunity to amend the complaint. (*See* Doc. #30 at 31).

---

[2] In the original complaint, Plaintiffs detailed their relationships with and dependence on the murdered relative, and did not dispute the fact that they were seeking damages only for themselves. (*See* Compl., ¶¶ 15-82; *see also* Doc. #30 at 29).

Plaintiffs' first Amended Complaint was filed on December 4, 2009.  (*See* Doc. #35).  In that amended complaint, Plaintiffs "remove[d] all claims for their own personal damages, leaving for each decedent ***a*** single legal representative, in most cases the surviving spouse, and in all cases the person who is ***the*** legal representative for the decedent under the law of Colombia."  (Doc. #43 at 33) (emphasis added).  On January 8, 2010, the Drummond Defendants filed a motion to dismiss the amended complaint (Doc. #37).  One of the grounds for dismissal included in that motion was, again, that Plaintiffs lacked standing on the basis that (1) Plaintiffs failed to "affirmatively allege" that they "seek damages on behalf of the victims;" and (2) Plaintiffs had not established that they were the personal representatives of the decedents' estates under Alabama law and thus proper claimants to an action for wrongful death.  (*See* Doc. #37 at 4, 34; Doc. #41 at 14-15).  The court denied the motion to dismiss on standing grounds, noting that "[t]he claims now revolve around the fact that Plaintiffs are wrongful death beneficiaries seeking damages on behalf of the allegedly murdered victims."  (Doc. #43 at 34).  The court declined to address the issue of whether Plaintiffs could be declared the personal representatives of decedents under Alabama law.  (*See* Doc. #43 at 34, n. 30).

On April 30, 2010, the court entered a Memorandum Opinion and Order (Doc. #45) on Plaintiffs' Motion to Proceed Using Pseudonyms (Doc. #2), ordering Plaintiffs to identify themselves.  (*See* Doc. #45 at 6).   On June 14, 2010, Plaintiffs filed a Second Amended Complaint, which, for the first time, fully identified all Plaintiffs.  (*See* Doc. #55).

**B.     Standing under the TVPA and ATS**

The Drummond Defendants correctly state that this court has already held that, in order to have standing under the TVPA and ATS, Plaintiffs ***must*** be seeking damages on behalf of the victim. (*See* Doc. #30 at 31) (and as reproduced in part, *supra*).  In finding that Plaintiffs of the first

6

Amended Complaint could withstand Defendants' standing argument for dismissal, the court relied on Plaintiffs' contentions that they had "remove[d] all claims for their own personal damages, leaving for each decedent *a single legal representative*, in most cases the surviving spouse, and *in all cases the person who is the legal representative for the decedent under the law of Colombia*." (*See* Doc. #38 at 33; Doc. #43 at 33) (and as reproduced in part, *supra*)).[3] But with the revelation of the named Plaintiffs, it is clear to the court that the Second Amended Complaint contains *multiple* individuals seeking recovery based on a single decedent, *not* a "single legal representative" for each decedent; moreover, it is clear that certain Plaintiffs do not act as representatives of the decedents' estates, making the relief sought by those Plaintiffs *not* "on behalf of" the deceased, but rather on behalf of Plaintiff him or herself.   (*See, e.g.,* Doc. #55, ¶ 107).

As a matter of standing, those Plaintiffs who fail to act in a representative capacity for the decedents' estates (357 of the plaintiffs identified in the Second Amended Complaint) are due to be dismissed from this action.   It is not enough that a plaintiff alleges status as a wrongful death beneficiary under Colombian law.   (*See, e.g.,* Doc. #55, ¶¶ 18 ("Christian A. Roca Balcero and Sebastian J. Roca Balcero are Israel Alberto Roca Martinez's children and are also legal heirs under the laws of Colombia, but do not act as legal representatives of his Estate in this lawsuit.  Plaintiffs herein are all wrongful death beneficiaries of Israel Alberto Roca Martinez.")).[4] Although the TVPA

---

[3] As is made clear from the above quotations, contrary to Plaintiffs' assertion otherwise, there is no holding in this case that those Plaintiffs who expressly allege they are not acting in a representative capacity have properly alleged standing.

[4] As further example, in the case of decedent Luis Fernando Florez Barrios, his domestic partner is alleged to be acting as the legal representative of his estate, but eleven additional Plaintiffs related to him are also named even though they are not suing in a representative capacity.  (*See* Doc. #55, ¶ 107).

7

confers standing on the decedents' legal representatives or "any person who may be a claimant in an action for wrongful death," 28 U.S.C. § 1350, note § 2, both Congress and this court have recognized that "[t]he term 'beneficiary in a wrongful death action' is generally intended to [mean] those persons recognized as legal claimants in a wrongful death action under Anglo-American law." (Doc. #30 at 31, n. 22).  Here, that would mean looking to Alabama law as a guidepost for standing.[5] (*See* Doc. #65 at 12) ("Plaintiffs acknowledge that the issue of who can sue as a wrongful death claimant should initially be analyzed by looking to state law.").  Application of foreign law is appropriate only "[w]here application of Anglo-American law would result in no remedy whatsoever for an extrajudicial killing." (Doc. #65 at 12-13).  Because Anglo-American law provides an avenue of relief for some Plaintiffs, albeit not *all* Plaintiffs, it would be improper to use Colombian law as the springboard for standing.[6]  The victims of the conduct alleged in this case have some potential recourse for their deaths, and that is the essential inquiry herein.  The proper Plaintiffs for each decedent in this court are, therefore, those Plaintiffs who seek damages on behalf of the decedent and

---

[5] Under Alabama law, the right to bring a wrongful death action "is vested in the personal representative alone."  *Downtown Nursing Home, Inc. v. Pool*, 375 So.2d 465, 466 (Ala. 1979); *Bonner v. Williams*, 370 F.2d 301, 303 (5th Cir. 1966).

[6] By way of a conference with the court on August 19, 2010 (*see* Text Orders 72, 73), the parties were directed to file submissions regarding who, under Colombian law, may bring a wrongful death lawsuit and how any judgment in such lawsuit would be distributed.  Both Plaintiffs and Defendants made such submissions, including therein declarations from Colombian lawyers. (*See* Docs. #76, 77).  The declarations reflect that any heir of a deceased may bring an action to recover for the deceased, with the proceeds being distributed among all heirs in accordance with Colombian law on intestate succession; that is, an heir would be entitled to share in the proceeds in Colombian court whether or not he or she is a named plaintiff in the case currently before this court, and without being required to prove anything other than status as an heir. (*See* Doc. #76 at 1).  If the non-representative Plaintiffs are truly heirs of the decedents as the Second Amended Complaint alleges, then any damages recovered by the legal representative would then be distributed among them by the Colombian courts and pursuant to Colombian law. (*See* Docs. #76, 77).

who identifies him/herself as a legal representative of the decedent.[7]  All other purported Plaintiffs will have recourse for recovery should  this case reach the Colombian courts.  (*See* Doc. #65 at 15).

As a practical matter, because only one recovery – that on behalf of the alleged victim – is statutorily permitted, it would be imprudent for this court to allow more than one individual to recover on behalf of a single decedent.  Allowing as many as eleven Plaintiffs to sue and potentially recover would result in substantial jury confusion as to how to award damages to each named Plaintiff and create a real risk of inconsistent judgments and double recovery.[8]

IV.   **Conclusion**

For the foregoing reasons, the Motion for Partial Dismissal by Defendants Drummond Company, Inc. and Drummond Ltd. (Doc. #62) is due to be granted.  A separate order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this _____6th_____ day of January, 2011.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[7] Once again, at this stage in the proceedings, the court does not deem it necessary for the proper Plaintiffs to prove that they have been declared the personal representatives of the decedents' estates.  (*See* Doc. #43 at 34, n. 30).

[8] With the ATS and TVPA both carrying a ten-year statute of limitations, the risk of double recovery is real.  One heir could litigate an alleged killing to conclusion, and then another heir could come immediately thereafter and start the suit over again.