FILED

2012 Mar-08  PM 02:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **CLAUDIA BALCERO GIRALDO, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| v. | } | **Case No.:  2:09-CV-1041-RDP** |
| | } | |
| **DRUMMOND COMPANY, INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER

The court has before it Defendants' Motion to Compel Interrogatory Responses (Doc. #245) and Plaintiffs' Motion to Compel Production of Responsive Documents and Response to Interrogatory and Memorandum of Authorities (Doc. #246). Both Motions (Docs. #245, 246) were filed on October 25, 2011 and have been fully briefed in accordance with the court's Order of October 26, 2011 (Doc. #248). They are now under submission and before the court for review.

## I.     Discovery Standards Pursuant to Federal Rules of Civil Procedure 26 and 37(a)(3)

Under the Federal Rules of Civil Procedure, a party is permitted to obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense . . . ". FED. R. CIV. P. 26(b)(1). The information sought does not need to be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Adkins v. Christie*, 488 F.3d 1324, 1330 (11th Cir. 2007). District courts can limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit . . .". FED. R. CIV. P. 26(b)(2)(c)(iii). However, courts are required to accord discovery a broad and liberal scope in order

to provide parties with information essential to the proper litigation of all relevant facts, to eliminate

surprise, and to promote settlement.  *Hickman v. Taylor*, 329 U.S. 495 (1947).  In other words:

> [D]istrict courts have broad discretion in fashioning discovery rules,
> but they are bound to adhere "to the liberal spirit of the [Federal]
> Rules."  *Burns v. ThiokolChem. Corp.*, 483 F.2d 300, 305 (5th Cir.
> 1973).  The Federal Rules do not give district courts "blanket
> authorization . . . to prohibit disclosure of information whenever it
> deems it advisable to do so, but are rather a grant of power to impose
> conditions on discovery in order to prevent injury, harassment, or
> abuse of the court's processes."  *Williams v. City of Dothan, Ala.*, 745
> F.2d 1406, 1416 (11th Cir. 1984) (quoting *Bridge C.A.T. Scan
> Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d. Cir. 1983)).

*Adkins v. Christie*, 488 F.3d 1324, 1331 (11th Cir. 2007).

A party may seek an order to compel discovery if an opposing party fails to respond to

discovery requests or has an evasive or incomplete response.  FED. R. CIV. P. 37(a)(3)(A), (B).  In

ruling on a discovery motion, courts consider the totality of the circumstances, weighing the value

of material sought against the burden of providing it, and taking into account society's interest in

furthering the truth-seeking function in a particular case before the court.  *See Patterson v. Avery

Dominion Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

## II.    Analysis

### A.    The Motion to Compel Interrogatory Responses (Doc. #245)

#### 1.    Responses to Interrogatories Nos. 1 and 3 (Second Set)

Defendants seek to compel Plaintiffs to respond more fully to certain interrogatories:

•    In Interrogatory No. 1, Defendants requested that Plaintiffs:

> Identify each and every "AUC leader" or "member" referenced in
> Paragraphs 8 and 9 of the SAC (Second Amended Complaint) as
> "now speaking freely" or "giving testimony and speaking to
> government and human rights lawyers" regarding their alleged

2

> "relationship" or "alliances" with Defendants.  With respect to each
> person identified in response to this Interrogatory, identify (a) each
> and every statement he or she has made concerning the Defendants;
> (b) all testimony he or she has given concerning the Defendants; (c)
> each and every document concerning his or her statements or
> testimony regarding the Defendants; and (d) each and every person
> with knowledge of his or her statements or testimony concerning the
> Defendants, including but not limited to each "human rights lawyer"
> to whom he has spoken.  (Doc. #245, Exh. A  at 4).

• In Interrogatory No. 3, Defendants similarly ask for each statement by "Jorge 40" which form the basis of paragraph 184 of the Third Amended Complaint "that Drummond was one of the U.S. multinationals that provided substantial support to the AUC."

The upshot of these contested requests is that there remain at least four individuals identified by Plaintiffs as having responsive facts but that have not provided declarations – Halcon, Rodrigo Tovar Pupo ("Jorge 40"), Jose Gelvez Albarracin ("El Canoso"), and Wilson Alejandro Tavera Caicedo  (Doc. #245, Exh. A at 5-6; Doc. #263 at 2).  Each of these persons has been identified in the various amended complaints as having information concerning Drummond's purported support of the AUC.  (Doc. #245 at 5).  Defendants argue that "[i]f those witnesses have made oral statements regarding Defendants as alleged in the TAC, then those facts are not privileged and must be identified in response to Interrogatory No. 1."  (Doc. #245 at 5-6).  "[W]here the party seeking discovery can establish that relevant and non-privileged facts remain hidden in an attorney's file" and where production of those facts is essential to the preparation of the party's case, discovery of those facts is proper.  *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

In response to these interrogatories, Plaintiffs have objected claiming that the requests for information are overly broad, compound, burdensome, and violate attorney-client and work product privileges, but they have focused their argument on privilege issues.  (Doc. #245, Exh. A at 4).  While declarations from certain witnesses have been provided, and certain meetings have been

3

detailed in discovery responses, Plaintiffs assert that any remaining information that has been requested is protected under the attorney work product doctrine.  (Doc. #255 at 3).  Plaintiffs argue that the Supreme Court's decision in *Hickman v. Taylor* protects information learned through witness interviews and does not force an attorney to repeat or write out all that witnesses have told him.  329 U.S. at 512-513.  "[I]f opinion work product were accessible by opposing counsel much of what is now put down in writing would remain unwritten.  In addition, inefficiency, unfairness and sharp practices in the preparation of cases for trial would result."  *Williamson v. Moore*, 221 F.3d 1177 (11th Cir. 2000) (internal citations and quotations omitted).

The court agrees with Plaintiffs on this point.  The court appreciates an important distinction raised by this case (as compared to the vast majority of cases that have dealt with this issue).  The complaints as amended expressly rely on the statements of disclosed witnesses as support for the material allegation that Drummond provided support to the AUC (*see generally* Complaints; *see also* Doc. #263 at 3).  Nevertheless, the fact remains that these individuals will be deposed by Defendants.[1]  At that time, Defendants will have a full and fair opportunity to question the witnesses' knowledge concerning the allegations of the complaint.  For now at least, it is not necessary to consider whether counsel for Plaintiffs might be required to more fully develop for Defendants the "facts" as set forth by the witnesses.  Therefore, Defendants' Motion to Compel (Doc. #245), as it relates to the responses to Interrogatories 1 and 3, is **DENIED WITHOUT PREJUDICE**.

---

[1] To accommodate Plaintiffs' counsels' objection, the court will allow deposition questions which explore this subject area with persons who have knowledge of the fact basis for this allegation. The time spent questioning any such deponent on this particular subject will <u>not</u> count against any time limits imposed on depositions in this case.

### 2.      Response to Interrogatory No. 19 (Second Set)

In Interrogatory No. 19, Defendants ask Plaintiffs to identify each person having knowledge of the allegation made in paragraph 266 of the Third Amended Complaint that "Drummond allowed its NAPA parts store to import the chemicals necessary to manufacture cocaine out of raw cocoa, and allowed its coal barges to transport cocaine from Colombia to the U.S."  Plaintiffs have identified Jose Gelvez Albarracin ("El Canoso"), Wilson Alejandro Tavera Caicedo, and "a confidential informant," specifically noting that the NAPA allegation is supported solely by the confidential informant.  (Doc. #255 at 15).  Plaintiffs objected to identifying the confidential informant on the ground of protected work product but as a compromise "provided Defendants with identifying information related to specific allegations and Defendants agreed that if Plaintiffs were not calling the confidential informant ("CI") witness at trial, they need not disclose the CI's name." (Doc. #255 at 13).  Plaintiffs also stated to Defendants that they would "provide the name or withdraw the allegation concerning the NAPA parts store only."  (Doc. #255 at 15).

Because the parties have already come to a compromise as to this issue, there is nothing left for the court to do other than enforce it.  Defendants' Motion to Compel Interrogatory Responses (Doc. #245), as it deals with the identity of the confidential informant, is **GRANTED IN PART**. Plaintiffs are **DIRECTED** to provide Defendants with the name of the confidential informant **by March 30, 2012**, or otherwise withdraw the allegation attributed to that informant by the same date.

### 3.      Response to Interrogatory No. 4 (Third Set)

Interrogatory No. 4 as contained in the third set of interrogatories asks Plaintiffs to describe anything of value offered or given by Plaintiffs or their representatives to any person disclosed in Plaintiffs' Rule 26 disclosures.  Plaintiffs have partially responded to this interrogatory, providing

information for certain witnesses who are planned to be called at trial, but have asserted attorney work product privilege related to individuals who will not be called at trial. (*See* Doc. #245 at 4; *see also* Doc. #255 at 9). Defendants contend that evidence of payments or offers of payments would be relevant as potentially leading to the discovery of other admissible evidence. (Doc. #263 at 7). "For example, Plaintiffs could have offered to pay a potential witness whose information turned out to be unfavorable to Plaintiffs' case." (Doc. #263 at 7). Defendants do not seek to know every person with whom Plaintiffs have spoken about the case, only those who were paid or offered something of value. (*See* Doc. #263 at 8). Plaintiffs counter that Defendants are "digging for irrelevant information, and seeking to trace all individuals with whom Plaintiffs have spoken . . . Defendants are using this request as a back-door attempt to discover and track counsel's trial strategies and investigations." (Doc. #255 at 10, 12).

Not surprisingly, case law relevant to this issue is sparse, if not altogether non-existent. The issue is further complicated by the apparent fact that Colombian jailed paramilitaries are not willing to talk to anyone unless offered or given something of value. To be sure, Defendants are entitled to know whether Plaintiffs or their representatives offered anything of value to those individuals listed on Plaintiffs' Rule 26 disclosures, and they presumably have been given that information. (*See* Doc. #255 at 9) ("Plaintiffs agreed to respond to interrogatories regarding whether anything of value was given to witnesses or Plaintiffs in this case . . .".). While the court agrees with Plaintiffs that a request for such information as to "any other potential witness" is too broad of a universe, to release that information as it relates to paramilitaries only would serve a legitimate discovery (and litigation) purpose here: to ensure that the testimony of paramilitaries is not put up for sale and discover if, in fact, it has been. As such, Defendants' Motion to Compel Interrogatory Responses (Doc. #245), as

it relates to the information on payments or offers of payment is **GRANTED IN PART** and **DENIED IN PART**, without prejudice, as set forth above.[2]

**B.      The Motion to Compel Production of Responsive Documents (Doc. #246)**

Plaintiffs' Motion to Compel Production of Responsive Documents and Response to Interrogatory (Doc. #246) seeks eight categories of information: documents related to a full-page press release that Defendants placed in Colombian newspapers concerning this case; financial documents relating to punitive damages and Plaintiffs' agency and alter ego claims; documents relating to "state action;" certain travel documents relating to agency and alter ego claims; documents regarding Jaime Blanco, a known AUC collaborator and Drummond contractor who is incarcerated for his role in the murder of Drummond union leaders; log books cataloguing the entrance and exit of visitors to Drummond facilities in Colombia; certain documents from key executives' personnel files; and certain documents related to security. (Doc. #246 at 7).

For all but one of the contested documents, a significant portion of the disagreement lies with the time period for which Defendants are willing to produce documents. The Third Amended Complaint alleges wrongdoing by Defendants from 1999 through 2006. (*See, e.g.,* Third Amended Complaint, ¶ 195). "[O]ut of an abundance of caution, Defendants agreed to produce documents from 1996 to 2006." (Doc. #256 at 4, n.2). Defendants assert that counsel for Plaintiffs expressly agreed to that temporal cut off at the outset of discovery during a meet and confer on January 13, 2011 and attach documentation attesting to the same. (Doc. #256, Exh. A at 1, ¶ 1) ("We will search from January 1, 1996 to December 31, 2006, for both hard copy and electronic documents. We will

---

[2] If there are any other groups or persons about which Defendants can present sufficient information that suggests there have been similar payments made, the court will entertain argument that the responses required should be supplemented with responses about those groups or persons.

not search after 2006."); (Doc. #256, Exh. A at email from Terrence Collingsworth) ("[F]ollowing

up on your letter today, we appear to be in agreement on the issues."); (Doc. #256, Exh. B) ("We

agree to your request to produce documents from January 1, 1996 to December 31, 2006."); (Doc.

#256, Exh. C) (addressing various document production issues, but never raising any issue with

regard to the date range for discovery).  Plaintiffs counter that they put Defendants on notice in

correspondence and in oral meet and confers that they did not believe the parties had agreed to

limiting the time period for *all* discovery.  (Doc. #246, Exh. 6 at May 9, 2011 letter) ("Globally,

Defendants have agreed to produce documents beginning in 1996 through 2006, unless otherwise

noted.  Plaintiffs have indicated that in some instances documents and information through the

present are highly relevant or reasonably calculated to lead to admissible evidence).

    This set of circumstances does not convince the court that Plaintiffs agreed to a blanket

discovery limitation of 1996 through 2006.  It does, however, convince the court that each request

should be examined closely as to whether an expansion of the time frame might be reasonable as

being calculated to lead to the discovery of admissible evidence in light of the claims and defenses

made part of this litigation.

    Each aspect of the aforementioned requests is considered in turn.

### 1.    Documents and Interrogatory Responses Related to Press Releases

    In April 2011, Defendants placed a full-page press release in various Colombian newspapers,

which, as translated, was titled "Nothing Stops Them from Destroying Drummond's Good Name."

(Exh. 7 to Doc. #246).  The press release discusses the ongoing litigation in this case, comments on

one of Plaintiffs' attorneys, Terry Collingsworth (and his association with then Birmingham attorney

Garve Ivey), and comments on purported inaccuracies made in a statement made by Libardo Duarte, currently being held at La Picota Prison in Colombia.

In dispute are Plaintiffs' requests for drafts of the press release, communications about the press release, documents related to any other press releases Defendants have placed referencing Plaintiffs' counsel or this litigation, the identity of all persons who drafted, reviewed, and/or approved the press release, and documents supporting and countering statements made in the press release concerning Drummond's operations in Colombia.

> **a.      Drafts of the Press Release and Related Communications, and the Identities of Drafters and Reviewers**

Plaintiffs assert that drafts of the press release are relevant to the knowledge Drummond employees have about claims and defenses and show the drafters' thought processes and decisions concerning which information was included in the final draft, and provide fertile ground for questioning during depositions.  (Doc. #246 at 5).  Defendants counter the applicability of attorney-client privilege and work product doctrine to the drafts of the press release.  (Doc. #256 at 4; Exh. 3 to Doc. #246).  According to the Defendants, "[b]ecause counsel for Defendants was involved in the preparation of the press release, any drafts or communications regarding the press release are privileged and need not be produced."  (Doc. #256 at 4).  Moreover, Defendants allege that drafts of and communications regarding the press release have no relevance to the underlying allegations in the Third Amended Complaint as the press release commented on the litigation itself, and not on the "historical facts from the 1999-2006 time frame at issue in this case."[3]  (Doc. #256 at 4-5).

---

[3] *See* discussion *supra* Section II.B. regarding the disagreement over the applicable time period.

Plaintiffs complain that Drummond did not focus on the attorney-client and work product privileges in communications regarding the contested drafts. (*See* Doc. #262 at 2). Nevertheless, the fact remains that those privileges are raised here. (Docs. #246, Exh. 3 at 1). Defendants must, however, provide Plaintiffs with a privilege log, cataloguing each draft the April 2011 press release went through and the identities of the drafters and reviewers. Because the press release commented on the status of the litigation and the credibility of a potential witness, it may be relevant to the claims made in this case despite the fact that it was issued after 2006. The court is particularly concerned by the fact that the press release commented on the credibility of a potential witness in this case, and Defendants should remain mindful of how that aspect of the release complicates this issue. Upon completion and production of the privilege log, the parties shall discuss and re-examine whether: (1) any of those drafts should be produced because they disclose "neither confidential client communications made for the purpose of seeking legal advice nor attorney work product," *Calvin Klein Trademark Trust v. Wachner*, 124 F.Supp.2d 207 (S.D. N.Y. 2000), *and* (2) the drafts would be relevant to the claims made in this case, given that they comment primarily on activities (as opposed to historical facts) in the litigation itself. If the parties cannot agree upon a full resolution of the issue, the court will order an *in camera* review of the documents in question. As such, Plaintiffs' Motion to Compel (Doc. #246), as it relates to drafts and communications regarding the April 2011 press release and the identities of the drafters and reviewers, is **GRANTED IN PART** and **DENIED IN PART** without prejudice as set forth above.

### b.  Documents Related to any Other Press Releases

Although technically part of their motion, Plaintiffs do not make much of an additional pitch for the disclosure of documents related to any other press releases Defendants have placed

referencing Plaintiffs' counsel or this litigation.  (Doc. #246 at 4-5, referencing Third Document Request No. 3).  However, the basis for that request, and the objections thereto, mirror those made with regard to the April 2011 press release.  Defendants are **DIRECTED** to provide Plaintiffs with copies of any other press releases they may have placed *referencing this litigation only*.  Thereafter, counsel for Plaintiffs are **DIRECTED** to review any additional press releases and determine if discovery would be relevant to the claims made in this case.  As such, Plaintiffs' Motion to Compel (Doc. #246), as it relates to documents related to any other press releases, is **GRANTED IN PART** and **DENIED IN PART**, without prejudice, as set forth above.

### c. Discovery of the Statements in the Press Release Regarding Drummond's Positive Qualities and Positive Effects

In the April 2011 press release, Defendants assert the "excellent reputation" of Drummond and noted that the press would be provided with "additional information on all of Drummond's positive qualities and the positive effects the company is having in Colombia."  (Doc. #246, Exh. 7 at 4).  Plaintiffs seek the documents and/or information supporting and countering that statement. (Doc. #246 at 6).  Defendants object that the request is too broad, seeking information outside of the litigation since the press release was advanced six years after the events at issue in this case.[4]  (Doc. #256 at 5) ("Plaintiffs confuse facts and allegations made in support of claims or defenses *in the litigation*, which are relevant, with statements by Drummond made *outside of the litigation* in a press release, six years after the events at issue.") (emphasis in original).  They agree, however, to provide such information if they decide to use it at trial.  (Doc. #256 at 5-6).

---

[4] *See* footnote 1, *supra*.

11

The court agrees that the request, as stated, is overly broad.  This request for information "countering" the statement that Drummond performs "good works" amounts to little more than an invitation to a flea market.  However, because Drummond opened the door to the issue of its "good works" and specifically noted that it would be providing such evidence to the press, Drummond is **DIRECTED** to provide Plaintiffs with the evidence of "good works" they were in fact referencing in the April 2011 press release.  As such, the Motion to Compel (Doc. #246) on this issue is **GRANTED IN PART** and **DENIED IN PART**.

> ### 2.    Financial Documents Related to Agency, Alter Ego, and Punitive Damage Claims

Plaintiffs' requests for production numbers 101-103 and 106 (among others not in dispute) seek documents sufficient to show: gross revenue generated by Defendants between 1999 and the present; yearly profit and loss statements and/or yearly income for the same time period; the yearly balance sheets for Defendants; and documents, including communications, concerning taxes paid to the Government of Colombia or the United States government based on yearly production or total yearly revenue earned by Defendants.  (Doc. #246 at 7-8 and Exh. 1; *see also* Doc. #256 at 6). Plaintiffs contend that the requested information relates to punitive damages (which are available under both the ATS and the TVPA) and claims of agency and alter ego[5] (which, according to Plaintiffs, can be demonstrated at least in part through evidence that Defendants commingled funds, assets, and labor through financial statements and tax returns).  (Doc. #246 at 8-11).  Defendants object to these requests.

---

[5] Plaintiffs' theory is that Drummond Company, Inc. ("DCI") is liable for the actions of Drummond, Ltd. ("DLTD") through an alter ego or agency theory.  (Doc. #246 at 7).

As to the disclosure of financial documents for purposes of determining punitive damages, Defendants say the request is premature.  (Doc. #256 at 7).  They cite (as do Plaintiffs) *Wilson v. Gillis Advertising Co.*, 145 F.R.D. 578 (N.D. Ala. 1993) (Acker, J.) for the proposition that "in a suit involving a federal question where punitive damages are at issue, the financial condition of the defendant is relevant and will be admissible as a factor to be used in determining the amount of punitive damages, if any, to be awarded."  *Id.* at 580.  However, none of the authorities examined by Judge Acker informed the court at what point in the litigation such information becomes admissible.  *See id.*  Further research indicates that this remains an open question in the Eleventh Circuit.  Because the court has already discussed with the parties that this action will, more than likely, be bifurcated into liability and damage trials (*see generally* Doc. #276), it makes sense that financial information relevant only to the question of punitive damages be left for discovery at a later date.  However, whether the information may also be relevant to the liability theories of alter ego and agency is a separate question.  (Doc. #246 at 10; *see also* Doc. #262 at 5).

The parties agree that the factors relevant to alter ego control are set forth in *United Steelworkers v. Connors Steel Co.*, 855 F.2d 1499, 1505-1506 (11th Cir. 1988).  (Doc. #246 at 9-10; *see also* Doc. #256 at 8).  They include: (1) whether DCI owns all or most of the capital stock of DLTD; (2) whether DCI finances DLTD; (3) whether DLTD has grossly inadequate capital; (4) whether DCI and DLTD file consolidated financial statements and tax returns; (5) whether DCI pays the salaries and other expenses or losses of DLTD; and (6) whether DLTD is described as a department or division of DCI.   Defendants have made available to Plaintiffs all of DCI's and DLTD's bank records for the year 2001, including bank statements, bank reconciliations, cancelled checks, and records of all electronic payments.  (Doc. #256 at 8).  Plaintiffs have yet to review those

documents.  (Doc. #256 at 8; *see also* Doc. #262 at 6).  Defendants urge that Plaintiffs should be required to review those documents before Defendants incur additional expense obtaining all of the requested information.  (Doc. #256 at 8).  Alternatively, Defendants suggest that Plaintiffs obtain the information by propounding "a concise interrogatory or two."  (Doc. #256 at 9).

As Defendants acknowledge, some financial documents of DCI and DLTD will undoubtedly shed light on either side of the question of alter ego and/or agency.  However, Defendants argue that certain of the documents requested will shed no light on the question.  For example, statements of yearly revenue (Request No. 101) "would not show whether DCI was the source of DLTD's revenue or whether the revenue was transferred between companies . . . The same is true for yearly profit-and-loss statements and balance sheets."  (Doc. #256 at 9).  The court is inclined to agree that the relevance of these documents is tangential at best.  However, the court does agree with Plaintiffs that they are the masters of their own discovery and that interrogatories addressing questions such as consolidated financial statements and tax returns and salary information may not be sufficient to address their concerns as to these questions, particularly considering their importance to Plaintiffs' theory of liability.  (*See* Doc. #256 at 9; *see also* Doc. #262 at 6).

The best course of action may be to appoint a Magistrate Judge or Special Master for the review of certain of the contested financial documents for the determination of their relevance to the liability claims made in this case.  The parties are to consult and seek to reach agreement on such a procedure, and the court will set a hearing on the question of the contested financial documents by separate order.  In the meantime, this portion of Plaintiffs' Motion to Compel (Doc. #246) is administratively terminated.

3.      **Travel Documents Related to Plaintiffs' Alter Ego/Agency Claims and Allegations that Defendants Assisted, Aided, and Abetted the AUC in Carrying out Murders**

Plaintiffs contend that their requests for certain travel documents fit into the factors relevant to demonstrating agency and alter ego.   (Doc. #246 at 12) ("Specifically, the degree of communications and number and location of meetings are relevant to issues of agency.") (citing *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp.2d 1229, 1243 (N.D. Cal. 2004)).   To that end, Plaintiffs have requested certain travel documents, including: copies of registration of all Drummond aircraft (Request No. 1; *see* Exh. 4 to Doc. #246); all flight plans filed for international travel (Request No. 3; *see* Exh. 4 to Doc. #246); and all passenger manifests showing who flew on each and every segment of each international flight (Request No. 4; *see* Exh. 4 to Doc. #246).   (*See* Doc. #246 at 12, outlining the contested document requests).   Defendants have objected that information related to passenger manifests, flight plans, and registrations are not relevant, not reasonably calculated to lead to admissible evidence, and overly burdensome.   (Doc. #246 at 12; Doc. #256 at 11).

As discussed earlier, many factors may be relevant in demonstrating agency and alter ego. "As we have noted, there is no litmus test for determining whether a subsidiary is the alter ego of its parent.  Instead, we must look to the totality of the circumstances."  *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).  Three elements must be proved: (1) control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practices in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will, or existence of its own; and (2) such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory

or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and (3) the aforesaid control and breach of duty must proximately cause the injury or unjust loss at issue. *United Steelworkers of American v. Connors Steel*, 855 F.2d 1499, 1506-1507 (11th Cir. 1988). It is against this backdrop that the relevance of the contested requests must be considered.

### a. Requests Related to Aircraft

Plaintiffs contend that the registrations, passenger manifests, and flight plans for direct or indirect flights between Colombia and the United States[6] on Drummond's private aircraft are "highly relevant to the direct support that Drummond provided to the AUC to carry out illegal operations and conduct in Colombia . . . Plaintiffs are entitled to review passenger manifests, cross reference names, consult with witnesses, if so desired, and determine for themselves whether certain names reflect individuals who were members of the AUC or collaborated with the AUC and whom Plaintiffs may want to interview." (Doc. #246 at 12, 14).

As an initial matter, Defendants assert that neither DCI nor DLTD maintain flight plans, "though both companies do have some information related to what flights were taken during the relevant period." (Doc. #256 at 12, n.7). Therefore, the motion to compel (Doc. #246) flight plans is **MOOT**. The issue of the registrations of the planes has not been addressed by Defendants. (Doc. #246 at 12; *see also* Doc. #256 at 11-14). Therefore, the motion to compel (Doc. #246) registrations is **GRANTED**.

As to the passenger manifests "showing who flew on each and every segment of each international flight," Defendants argue the request should be limited to certain key executives. (Doc.

---

[6] According to their Motion, Plaintiffs have limited their request for direct and indirect flights between Colombia and the United States, not for every flight plan over an 11 year period. (Doc. #246 at 15).

#256 at 11).  They also make clear that "passenger manifest information was not computerized until 2004, also making searches of this information burdensome."  (Doc. #256 at 14).  The court understands the burdens facing Defendants in providing this information, but the information is relevant not only to the claims made by Plaintiffs of alter ego/agency, but also, and perhaps more importantly, to allegations that Defendants supported the AUC with the use of equipment and facilities.  (Doc. #262 at 8; *see also* Third Amended Complaint ¶ 267).  Therefore, the motion to compel (Doc. #246) passenger manifests is **GRANTED** for the relevant time period of 1996 to 2006.

> **b.      Requests Related to Araujo and Adkins' Travel Records**

In their Second Set of Document Requests, Plaintiffs seek all of the travel records of James Adkins and Alfredo Araujo.  (Doc. #246 at 12).  Araujo was dismissed from this case on personal jurisdiction grounds, and has not been named in the Third Amended Complaint.  Adkins is named as a defendant in the Third Amended Complaint, but has recently filed a renewed motion to dismiss.  (*See* Doc. #303).  Defendants have objected to producing the travel records for these two individuals, arguing that it is an attempt by Plaintiffs to seek improper jurisdictional discovery to undo those jurisdictional rulings.  (Doc. #256 at 14-15).

But Plaintiffs seem to focus their argument for production of these documents on the theories of alter ego and agency.  (Doc. #262 at 8).  Indeed travel by corporate officers or executives between corporations may serve as some evidence of control by one corporation over another relevant to an alter ego inquiry.  *See Compagnie Francaise d'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 39 (S.D. N.Y. 1984) (holding that where plaintiffs alleged alter ego theory, plaintiffs could seek travel records for certain individuals).  Defendants do not seem to dispute this.  (Doc. #256 at 14-15).  Therefore, the motion to compel (Doc. #246), as it relates to the

travel documents of Araujo and Adkins, is **GRANTED**.  Defendants shall produce to Plaintiffs the travel records of Araujo and Adkins for the time period of 1996 to 2006, to the extent those travel records exist and are kept in the ordinary course of business.

### 4.    Documents Related to State Action

The parties agree that claims for extrajudicial killings under the ATS and TVPA require an assertion that the murders were committed under the color of authority of the Colombian government, and that Drummond aided and abetted or conspired with the AUC, or that the AUC was Drummond's agent.  To obtain evidence related to the "state action" requirement, Plaintiffs seek discovery of all documents related to (and communication with) Mr. Fabio Echeverri, an individual who provided consulting services to Drummond since 1989 and later acted as a member of former Colombian President Alvaro Uribe's administration.  (Doc. #246 at 15-16; *see also* Doc. #256 at 15) ("Disclosure of communications between Drummond and Mr. Echeverri is directly relevant to establishing the required elements of state action.").

Defendants offered to produce all communications with Mr. Echeverri that are (1) dated between 2002 and 2004 (when he was a government advisor) and (2) relevant to the allegations in the TAC.  (Doc. #246, Exh. 6; *see also* Doc. #256 at 15).  Plaintiffs rejected that offer contending that the two year time frame is too narrow "as [Echeverri] likely continued to use his position in the Colombian government to discuss, negotiate, or otherwise influence matters relevant to the allegations and defenses in this case."  (Doc. #246 at 16).  Interestingly, the Third Amended Complaint does not mention Mr. Echeverri, nor do any of the declarations provided by Plaintiffs' witnesses.  As such, Mr. Echeverri's relevance to the claims made in this case appears to be attenuated at best.  Therefore, the court finds that Defendants' position as to this request is

18

reasonable and supported by the issues joined by the parties.  The motion to compel (Doc. #246), as it relates to documents related to Fabio Echeverri, is **DENIED WITHOUT PREJUDICE**.

      5.      **Log Books Related to Entry and Exit of Individuals into Drummond's Colombia Mine, which May Show AUC Access**

In Plaintiffs' First Request for Documents, Request No. 54 seeks "all documents constituting log books or ledgers of any kind that identified persons who arrived or departed from the Drummond mine or the Drummond port in Colombia" and, with Request No. 77, "all log books, also known as *bitacoras*, or similar documents concerning Puerto Drummond, that maintain any record of arrivals and departures of port visitors, port activities, and/or similar information, beginning in 1999." (Doc. #246 at 17).  Defendants concur that the presence of AUC's members on Drummond property would be relevant to the claims made in this case, but counter that a listing of the names of *every* visitor to the Drummond mines is irrelevant.  (Doc. #256 at 16).  Defendants propose a search of the log books for names (provided by Plaintiffs) of known or suspected AUC members.  (Doc. #256 at 16). Plaintiffs have rejected that proposal, arguing that it inappropriately places the burden of discovery on Plaintiffs and would disallow Plaintiffs to cross reference names or aliases with information already in their possession.  (Doc. #246 at 17).  The cases cited by the parties are not controlling authorities and, in any event, do not present the unique circumstances relevant here.

The court agrees with both parties that portions of the log books are relevant to the claims made in the case.  But a request for full access to all log books over a seven year period clearly fails for over breadth.  Plaintiffs are **DIRECTED** to provide Defendants with a complete list of names of confirmed or suspected AUC members (including those of "questionable" AUC membership for cross reference purposes) for Defendants' search within the log books.  As such, the motion to

compel (Doc. #246), as it relates to full access of the log books, is **DENIED WITHOUT PREJUDICE**.

### 6.    Documents from Key Executives' Personnel Files

Plaintiffs seek discovery of the complete personnel files of Augusto Jiminez, Alfred Araujo, James Adkins, "all other individuals listed in Defendants' initial disclosures who are or were employees of Drummond," and "any current or former employee or agent of any Defendant who is noticed for deposition in the course of this litigation."  (Doc. #246, Exh. 2, Request No. 75). Defendants agreed to provide certain information out of the personnel files.  Plaintiffs apparently no longer seek the entire files, but continue to seek documents identifying key individuals' positions in the Drummond companies and job descriptions through the present, an identification of which company paid salaries, expense account or travel documents between the U.S. and Colombia contained in the personnel files, and disciplinary actions taken against those individuals concerning issues related to the allegations in the Third Amended Complaint or any issues related to human rights violations.  (Doc. #246 at 18-19; *see also* Doc. #256 at 18; Doc. #262 at 12).  If limited to the time period of 1999-2006, the court finds these remaining requests for information contained in key executives' personnel files to be within the scope of discoverable evidence.  *See Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) ("[T]he discovery of such files is permissible only if: (1) the material sought is clearly relevant and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable.").  With that express limitation, the motion to compel (Doc. #246), as it relates to the request for certain additional documents contained in certain personnel files, is **GRANTED**.

**7.      Documents Related to Jaime Blanco, a Close AUC Collaborator who Provided Food Services for Drummond**

Jaime Blanco Maya provided a declaration to Plaintiffs stating that Defendant Alfredo Araujo, the Vice President of Drummond, Ltd., was a long time friend who had close ties to both the AUC and the government.  (Doc. #246 at 20).  The declaration describes the alleged payment system Drummond established to funnel money to the AUC through Blanco's food services company, ISA.  (Doc. #246 at 21).  A more recent declaration provides "extensive detail on the intricate scheme Defendants used to make the payments look legitimate."  (Doc. #262 at 13).  In light of those allegations, Plaintiffs seek the following: documents sent to or received from Blanco or someone on his behalf regarding Drummond's operations in Colombia; documents related to Drummond's award of a contract with Blanco; and documents related to contracts Drummond had with Blanco, including final agreements and drafts.  (Doc. #246 at 20).  Defendants have agreed to search for and produce any communications with Blanco relevant to the allegations in the Third Amended Complaint, as well as a list of payments made by Drummond to ISA or Blanco.  (Doc. #256 at 20).  Defendants have also agreed to produce any final agreements with Blanco.  (Doc. #256 at 20).  They state that they are "considering" issues related to Blanco requests in light of "Blanco's new allegations." (Doc. #256 at 21).

It appears to the court that the parties are still working on a resolution to the outstanding discovery requests dealing with Blanco.  Therefore, this portion of the motion to compel (Doc. #246) is administratively terminated without prejudice, and the parties are to report if this issue needs further judicial attention.

8.      **Documents Related to Security Policies**

Plaintiffs have made a number of requests related to both formal and informal security policies, practices, procedures, and guidelines provided to Drummond in Colombia.  (Doc. #246 at 23).  The relevance of these documents is purportedly based on allegations that Drummond directly supported the AUC as part of its involvement in ongoing hostilities in Colombia, and that the AUC increased its power and efficacy as a direct result of Drummond's support.  (Doc. #262 at 10).  Defendants have agreed to provide certain documents related to security policies, but have limited their production to documents between 1996 and 2006 on the basis that documents after 2006 are not relevant to Plaintiffs' claims and that any policy documents touching upon remedial measures after 2006 are inadmissible.  (Doc. #246 at 24; *see also* Doc. #256 at 22 and Doc. #262 at 11) ("Defendants should not have to produce documents beyond 2006 because they are not relevant to the claims and defenses here and would also be inadmissible as remedial measures.") Plaintiffs contend that post-2006 security documents are relevant because they would show "the feasibility of Drummond conducting its operations in Colombia without deliberately embroiling itself in the civil conflict and funding an organization to kill hundreds or thousands of innocent civilians or the feasibility of implementing other security measures to protect Drummond's interests that did not necessitate active participation in the civil conflict."  (Doc. #246 at 25).

Defendants have never raised this feasibility argument; that is, they have never contended or suggested that it was not feasible for them to operate in Colombia without paying any money to the AUC.  (Doc. #256 at 23).  Because Defendants have not raised this argument of defense, and because the relevant time period for the claims presented in this case is 1996 through 2006, the

motion to compel, as it relates to post 2006 security documents, is **DENIED WITHOUT PREJUDICE**.

## III.   <u>Conclusion</u>

Defendants' Motion to Compel Interrogatory Responses (Doc. #245) and Plaintiffs' Motion to Compel Production of Responsive Documents and Response to Interrogatory (Doc. #246) are **GRANTED IN PART**, **DENIED IN PART,** and **ADMINISTRATIVELY TERMINATED** as set forth above.

**DONE** and **ORDERED** this _____8th_____ day of March, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE