# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CLAUDIA BALCERO GIRALDO, et al.,** | } } } |
| **Plaintiffs,** | } } |
| v. | } } **Case No.: 2:09-CV-1041-RDP** |
| **DRUMMOND COMPANY, INC., et al.,** | } } } |
| **Defendants.** | } } |

## MEMORANDUM OPINION AND ORDER

On January 27, 2012, the parties contacted the court for guidance on an issue that had surfaced during the depositions of several Plaintiffs in this case. (*See generally* Doc. #309; *see also* Doc. #325 at 3). Specifically, some of the deposed Plaintiffs testified that they attended at least one meeting in which individuals may have been present who were not potential plaintiffs in this case or seeking legal advice as to options available for those who had been victims of alleged paramilitary violence. (*See* Doc. #314 at 1; *see also* Doc. #325 at 3). The question is whether the conversations during these meetings might be protected by the attorney-client privilege. The parties have filed briefs concerning their respective positions on the issue, (*see* Docs. #314, 325, 335) and it is now before the court for review.

**I.    Background**

The testimony obtained at this time in discovery has evidenced that the deposed Plaintiffs attended meetings at houses and hotels which were held for the purpose of discussing matters related to victims who had been killed by paramilitaries. (*See* Doc. #314 at 1-2) ("Importantly, in making

their initial remarks at the meetings, the lawyers were responding to a key known fact about all attendees: they had loved ones who had been killed in the region by the AUC and they wanted to understand whether they could seek legal redress for these deaths."); *see also* Doc. #325 at 1-2 ("[T]he purpose of these four (4) meetings was to inform the groups that a lawsuit would be filed and to generally discuss the allegations of the lawsuit.")).  At the first of these meetings, which was held at Jerardith Nieto Cuello's house and included some 30 attendants, an attorney identified as "Ricardo" made some remarks, including that he had "proof" (apparently of Drummond's liability) but could not show it to those in attendance because of its confidential nature; "[W]e spoke about the lawsuit and nothing else."  (*See* Doc. #325 at 1, 3; Exh. A at 64, 66; *see also* Doc. #314 at 2). A man named Santander Valencia was present at this first meeting.  (Doc. #314 at 3).  According to Jerardith Cuello, Valencia is a Drummond employee and a union member.  (*See* Doc. #314, Exh. A at 98).  Valencia was "facilitating" the communication between the clients and the lawyer; however, he spoke the same language as the attendees and did not (and does not) have his own claim in this case.  (*See* Doc. #314, Exh. A at 98-101).  Valenica was not present at subsequent meetings.

When the parties contacted the court for guidance on January 27, 2012, they were in the midst of a dispute as to the breadth of questioning that could be pursued by defense counsel. Specifically, defense counsel wanted to know what the attorney Ricardo said to start off the meetings and any additional comments throughout while Plaintiffs' counsel was not allowing the questioning. (*See* Doc. #314, Exh. A at 92, 97).

The court ruled that "to the extent there was anyone in any meeting that was not a potential plaintiff or . . . seeking legal advice for their own selves, that's a waiver."  (Doc. #314, Exh. A at 101).  For later meetings, at which Valencia was not present, the court conditionally ruled: "[W]ith

2

respect to any meetings where there [were] only individuals actually seeking advice about whether they should pursue a claim against known or unknown persons, I'm going to permit . . . in camera response [of asking about introductory remarks made by Ricardo and having the defense attorneys step out of the room while the question is answered]." (Doc. #314, Exh. A at 101). The parties were, however, permitted to brief the privilege issue. They have chosen to do so and, again, the dispute is before the court for review.

## II.     Analysis

The party invoking the attorney client privilege bears the burden of proving that an attorney-client relationship existed and that the particular communications were confidential. *See Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003), citing *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991). To determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the communication was (1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential. *Id.*, citing *United States v. Bell*, 776 F.2d 965, 971 (11th Cir. 1985). That is, the attorney client privilege is not absolute. Because it "serves to obscure the truth, . . . it should be construed as narrowly as it is consistent with its purpose." *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987).

### A.     Effect of the Presence of Santander Valencia at the First Meeting

The parties do not dispute that Santander Valencia is a third party to the litigation. (*See* Doc. #314 at 8; *see also* Doc. #325 at 6). Generally, the presence of a third party who is neither an attorney nor a co-defendant or co-plaintiff waives the attorney client privilege because the communication is no longer confidential. Charles W. Gamble, *McElroy's Alabama Evidence*, §

392.01 (3d ed. 1977) (noting that the attorney client privilege does not exist when the communications are made in the presence of a third party whose presence is not necessary for the successful communication between the attorney and the client). Certain exceptions do exist including the common interest exception and the facilitating communications exception which Plaintiffs contend are applicable here. (*See* Doc. #325 at 7, 9). *See Hodges, Grant & Kaufmann v. United States Government*, 768 F.2d 719, 720-21 (5th Cir. 1985) ("The privilege is not, however, waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication."); *see also Oxyn Telecommunications, Inc. v. Onse Telecom*, 2003 WL 660848 at *2-4 (S.D. N.Y. Feb. 23, 2003) (holding that privilege was not destroyed where two third parties were present during meetings to enhance the effectiveness of communications with the lawyers).

According to Plaintiffs, a common legal interest is established by the fact that Valencia is a union organizer and a trusted member of the community. (*See* Doc. #325 at 7-8). Valenica's union, Sintramienergetica, "is deeply involved in human rights issues at Drummond, and was a lead Plaintiff in *Drummond I*." (Doc. #325 at 8). Jerardith Cuello testified that Valencia acted as a "bridge" from the Plaintiffs to the attorney. (Doc. #325, Exh. A at 21-22, 120). "Mr. Valenica and the Drummond union have a shared interest in ensuring that their workers, and the families of the workers, seek redress for violence the AUC committed with the support and assistance of Drummond." (Doc. #325 at 9). Further, Plaintiffs contend that they are not sophisticated and have no familiarity with the American legal system, and that Valenica's presence was effectively that of a friend who had knowledge of both cultures and could explain attorney communications. (*See* Doc. #325 at 10-11).

The court does not find these arguments persuasive. Valenica is neither a plaintiff in this lawsuit, nor could he fairly be described as a potential plaintiff. (Doc. #314, Exh. A at 21, 62). Sintramienergetica is not a party in this lawsuit and Plaintiffs are not members of Sintramienergetica. There is no binding authority for extending the privilege to the third party in this case as Plaintiffs suggest. *See United States v. Almeida*, 341 F.3d 1318 (11th Cir. 2003) (holding that the common interest exception to be applicable where an attorney has multiple clients); *see also United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1298 (D.C. Cir. 1980) (holding the common interest exception to be applicable to co-parties); *Anderson v. Torrington Co.*, 120 F.R.D. 82, 84-86 (N.D. Ind. 1987) (in applying the common interest exception, noting that the key consideration is that the nature of the interest be identical, not similar). In addition, there is no evidence before the court that Valenica's presence facilitated communications between the attorney and the potential plaintiffs. Although Jerardith Cuello testified that Valencia acted as a "bridge" from the Plaintiffs to the attorney (Doc. #325, Exh. A at 21-22, 120), there is no evidence that the potential Plaintiffs *needed* such a messenger or intermediary nor that Valencia was of such stature that he *could* act in such a capacity. The court's previous ruling, that the entirety of any meetings held in the presence of non-party Santander Valenica are not privileged, remains unchanged.[1]

**B.    Subsequent Meetings in which the Identity of all Participants Cannot be Ascertained**

Defendants contend that even for those meetings not attended by Valenica the privilege is

---

[1] The attorney work product doctrine does not shield Plaintiffs from this ruling. Although oral statements can be privileged under the work product doctrine, the testimony shows that at this meeting, attorneys were not discussing their mental impressions of the case. *See Hickman v. Taylor*, 329 U.S. 495 (1947). (Doc. #314, Exh. A at 117).

nevertheless waived because "strangers" were present at the meetings.[2] (Doc. #314, Exh. A at 103-104; Exh. E at 36-37; Exh. F at 28-29; Exh. G at 28-29; Exh. H at 24-25). Communications made "in a room full of dozens of strangers," Defendants contend, "made without knowledge of whether those strangers were attorneys, potential plaintiffs, or whether they were otherwise involved in a lawsuit, fundamentally fail the Eleventh Circuit's test for confidentiality – a reasonable expectation or understanding that the communications were to be confidential." (Doc. #314 at 14-15) (citing *McCafferty's, Inc. v. Bank of Glen Burnie*, 179 F.R.D. 163, 167-168 (D. Md. 1998) (acknowledging that the attorney client privilege is waived where "conversations between attorneys and clients in a public place are overheard by others")). The question, however, seems to be not so much whether everyone knew everyone at the meetings, but rather whether everyone was gathered for the purpose of obtaining legal advice as victims of paramilitary violence. Absent this commonality, the participants were "disinterested" and "strangers" much like Santander Valenica.

The testimony of certain Plaintiffs reveals that the meetings were called to discuss matters related to the victims of paramilitary violence. (Doc. #314, Exh. A at 17-18). Jerardith Cuello, at whose house four meetings were held, testified that all participants at the meetings at her house became Plaintiffs in this case. (Doc. #314, Exh. A at 23, 64). She testified that she recruited participants for the meetings by traveling through towns, at the expense of Ricardo, and encouraging others to become part of a lawsuit against Drummond. (Doc. #314, Exh. A at 70-72). Jerardith Cuello found people to call on by "go[ing] to the towns and . . . meet[ing] perhaps with the president

---

[2] Defendants' brief in this regard argues that the entire meeting, for any meeting within which the identity of all participants cannot be ascertained, is not privileged. This is a little different from the question that was posed to the court in late January, i.e. whether *opening* remarks made by an attorney to the group are privileged.

of the community action committee and he would say, well, so and so or so and so, and I would go

and I would tell them." (Doc. #314, Exh. A at 72). Other Plaintiffs testified that they had no idea

of the purpose of the meetings prior to attending. (Doc. #314, Exh. E at 20-21, 26-27; Exh. I at 24-

25).[3] However, at these meetings the participants were told that Drummond might have been

---

[3]
| | | |
|---|---|---|
| Q: | Did she tell you what the meeting was going to be about? | |
| A: | No. | |
| Q: | She didn't give you any information about what this meeting was going to be about? | |
| A: | No. | |
| Q: | Did you ask her? | |
| A: | Yes. | |
| Q: | And she didn't give you an answer? | |
| A: | No. | |
| Q: | Why did you go to the meeting? | |
| A: | Well, you know, I went to find out what it was about. You know, since she came to tell me about it, I went to see, to find out. | |

. . .

Q:   Did anyone ask you who you were when you got to the meeting?
A:   No.

. . .

Q:   Before you got to the meeting, did you have any understanding of what it was going to be about?
A:   No.

(Doc. #314, Exh. E at 20-27).

Q:   Did she give you any information about what the meeting was to be about?
A:   No.
Q:   Did she tell you that if you went to the meeting that you could be given or you might be given money?
A:   Yes.
Q:   Did she tell you how much money you might be given?
A:   No.

. . .

involved with paramilitary activity in Colombia. (Doc. #314, Exh. A at 78-79).

This dichotomy of information presents an interesting question on the applicability of the attorney client privilege. Plaintiffs cannot positively identify all attendees as Plaintiffs or potential Plaintiffs, yet that seems to have been their intent, especially given the fact that some of the meetings occurred *after* this lawsuit had already been initiated. (*See* Doc. #314, Exh. F at 20; Exh. E at 36-37; *see also* Doc. #325 at 14-16). The locations of the meetings were less than completely private[4] and the testimony is murky concerning exactly which attendees were present and whether those present were there to seek legal advice. (*See* Doc. #325 at 20) ("The circumstances of this case are not unlike those in which courts have held that prospective clients were seeking legal advice when they attended meetings with lawyers 'to explore the possibility of raising potential . . . claims . . .'"). This could very well be because those deposed are "unsophisticated." (Doc. #325 at 19). Therefore, with regard to the Plaintiffs who have been deposed to date, the testimony regarding introductory remarks

---

        Q:     And was anyone else present at this meeting, other than the people who had lost relatives or loved ones?
        A:     No.

. . .

        Q:     As a result of going to these meetings, did you make a decision to file a lawsuit?
        A:     Uh-huh, yes.

(Doc. #314, Exh. I at 25-26, 29).

[4] Subsequent meetings were held in abandoned liquor stores, private homes, and in private outdoor locations. Despite the fact that they intended for the meetings to remain confidential, there are questions about whether Plaintiffs exercised diligence in seeking to maintain the confidentiality of the meetings (*see* Doc. #325 at 17) (citing *McCafferty's*, 179 F.R.D. at 164 (noting that relevant to the determination is the "diligence the party claiming the privilege exercised in seeking to maintain confidentiality" and the "intent to maintain confidentiality")).

made by the attorney is due to be unsealed because Plaintiffs have not established the applicability of attorney client privilege. *See Bogle*, 332 F.3d at 1347. And with respect to Plaintiffs' depositions which may still be taken, Defendants shall be permitted to question about any introductory remarks made by the attorney at the meetings where non-clients were present. However, where meetings were held *after* this lawsuit had been filed, no further questioning as to the matters discussed therein will be allowed. *See Bell*, 776 F.2d at 971.

### III.   Conclusion

For the foregoing reasons, the clerk of the court is **DIRECTED** to unseal the deposition testimony filed on March 7, 2012 as Document #327.

**DONE** and **ORDERED** this \_\_\_\_17th\_\_\_\_ day of April, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE