# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **Claudia Balcero Giraldo,** *et al.***,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.   ) | **Case No. 2:09-cv-1041-RDP** |
| ) | |
| **Drummond Company, Inc.,** *et al.***,** ) | **OPPOSED** |
| ) | |
| Defendants.   ) | |

## DEFENDANTS DRUMMOND COMPANY, INC. AND DRUMMOND LTD.'S
## MOTION TO COMPEL COMMUNICATIONS FROM THIRD-PARTY WITNESSES

/s/  William H. Jeffress, Jr.               /s/  William A. Davis, III
William H. Jeffress, Jr.                    William A. Davis, III (ASB-5657-D65W)
David A. Super                              H. Thomas Wells, III (ASB-4318-H62W)
Sara E. Kropf                               Benjamin T. Presley (ASB-0136-I71P)
Rachel Cochran                              STARNES DAVIS FLORIE LLP
Bryan H. Parr                               P.O. Box 59812
BAKER BOTTS L.L.P.                          Birmingham, AL 35259
1299 Pennsylvania Avenue, NW                (205) 868-6000
Washington, DC 20004-2400                   fax:  (205) 868-6099
(202) 639-7700
fax: (202) 639-7890

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

**Page**

**FACTS** ...........................................................................................................................................2

**ARGUMENT** .................................................................................................................................6

    I.       **Verbatim Statements By a Witness Given to Plaintiffs' Legal Team Are Relevant and Responsive**...................................................................7

    II.      **These Witness Communications Are Not Entitled To Work Product Protection**..................................................................................................8

          A.      **These Statements Reflect Facts, Not Thought Processes Of Counsel** ............................................................................................8

          B.      **Even If These Communications Are Work Product, Defendants Have Demonstrated Substantial Need For Them And Undue Hardship If They Are Not Produced Immediately** ...............................................................................................11

    III.     **Plaintiffs Have Waived The Work Product Objection To This Request** ..................................................................................................................13

**CONCLUSION** ...........................................................................................................................14

A recent deposition of a Colombian paramilitary revealed that Plaintiffs have improperly withheld key responsive documents. Defendants Drummond Company, Inc. and Drummond Ltd. served a document request on Plaintiffs asking for any communications received from any Colombian paramilitary, anyone on Plaintiffs' Rule 26 disclosures, or any potential witness in this litigation. Plaintiffs agreed to produce responsive documents, subject to certain objections not relevant here. However, it turns out that even though Plaintiffs received at least one handwritten statement by a Colombian paramilitary, on the basis of which (according to the witness) Plaintiffs' counsel prepared a declaration, Plaintiffs chose to withhold the document. There may be more of them.

Remarkably, Plaintiffs contend that these statements—witnesses' first-hand recollection of the facts, prepared by the witness and unfiltered and unedited by Plaintiffs' counsel—are protected by the work product doctrine. This contention ignores well-settled precedent that verbatim witness statements are not protected work product because they do not reveal any mental processes of counsel but rather the facts underlying the litigation—precisely what Defendants are entitled to discover. Plaintiffs did not even raise work product as an objection in their response to these requests. Having waived this objection altogether, Plaintiffs cannot hide behind it to prevent Defendants from fairly challenging the testimony of the paramilitary witnesses upon whom Plaintiffs' entire case rests.

The parties held a meet and confer by telephone, and Plaintiffs did not consent to this motion. Plaintiffs' counsel advised that they have not yet located the Gelvez handwritten statement. They have not revealed what other unproduced documents have been received from witnesses. Defendants therefore move to compel Plaintiffs to produce all communications, including handwritten statements, they have received from or provided to anyone disclosed on

their Rule 26 disclosures, any current or former Colombian paramilitaries, or any other potential witness related to Drummond.

While Defendants are not requesting expedited briefing on this motion, Defendants respectfully request that the Court rule on it as promptly as practicable, as any production ordered by the Court will be highly relevant to additional testimony scheduled to be taken beginning May 16, 2012, before Colombian courts pursuant to this Court's letters rogatory.

## FACTS

**The Relevant Request for Documents**

On May 20, 2011, Defendants served Plaintiffs with their second set of requests for documents. This set was directed towards Plaintiffs as a group. It requested documents relevant to the evidence about the supposed relationship between Defendants and the paramilitaries in Colombia. *See* Ex. A. Defendants included the following request ("Request No. 6"):

> 6. All communications regarding Drummond Company, Inc., Drummond Ltd. or the allegations in the SAC between any Plaintiff, or anyone acting on Plaintiffs' behalf including counsel, and any person disclosed on Plaintiffs' Rule 26 disclosures, any current or former Colombian paramilitary or any other potential witness in this litigation.

In response to Request No. 6, Plaintiffs said that that they would produce responsive documents subject to several objections.

> In addition to the foregoing General Objections, Plaintiffs object on the grounds that [1] this request is overly broad to the extent it seeks all communications regarding Defendants or the allegations, which encompasses documents that are not relevant to the claims or defenses in this case and are not reasonably calculated to lead to the discovery of admissible information. [2] Additionally, Plaintiffs object that the request is overly broad to the extent this request seeks communications regarding "potential witnesses" because it impermissibly seeks to track counsels' investigations concerning "potential witnesses," including those who wish to remain anonymous, and [3] seeks documents that are not relevant or reasonably calculated to lead to admissible evidence. [4] Additionally, Plaintiffs object because this request seeks information that is protected by the attorney-client privilege between Mr. Collingsworth and Mr. Rafael Garcia. Subject to and

>    without waiving these objections, Plaintiffs will produce responsive documents to
>    the extent they exist, are discoverable and not subject to the above privileges.

Ex. B at 5-6. In other words, Plaintiffs objected to this request on grounds of overbreadth, relevance and on a very narrow and specific assertion of the attorney-client privilege. They made no mention of the work product doctrine at all. In their General Objections, Plaintiffs note that they object to "***certain*** Requests for Production to the extent [they] seek[] the disclosure of information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection." *Id*. at 2 (emphasis added).

The requests included two instructions that are relevant here. First, consistent with Rule 26(e), the requests stated that if Plaintiffs "[became] aware of documents responsive to this Request subsequent to your initial production, such documents shall promptly be made available for inspection and copying." Ex. A at 4. Second, the requests instructed Plaintiffs that if responsive documents had been destroyed, they should provide certain information about the document and the circumstances surrounding its destruction. *Id*. at 3.

To the best of Defendants' knowledge, Plaintiffs have not produced any documents responsive to this request. Plaintiffs have also never informed Defendants that any responsive documents were destroyed.

**Defendants' Discovery of Responsive Documents That Were Not Produced**

Defendants recently discovered that Plaintiffs did not produce documents responsive to Request No. 6. On March 16 and April 20, 2012, the parties took the testimony of Jose Del Carmen Gelvez Albarracin, who is in prison in Colombia, before a Colombian court pursuant to a letter rogatory. Ex. C (final transcript of Mar. 16, 2012 testimony); Exhibit D (final transcript of Apr. 20, 2012 testimony). During the testimony, Plaintiffs' counsel, Mr. Collingsworth, asked Mr. Gelvez to identify as an exhibit an "English version translation with *your original Spanish*

3

*version of a statement that you gave.*"  Ex. C at 14:4-5 (emphasis added).  Mr. Gelvez's declaration is dated November 21, 2011.  Ex. E.

Mr. Gelvez testified that everything in the declaration was "true and accurate."  Ex. C at 16:13-17.  Throughout the testimony, however, Mr. Gelvez had to review what was in the declaration before he could answer questions posed by Mr. Collingsworth.  *See, e.g.*, *id.* at 44, 49, 50, 68-69.  The affidavit included statements that Drummond, along with another mining company named Prodeco, collaborated with the AUC.  During questioning by counsel for Defendants (Mr. Jeffress), however, Mr. Gelvez admitted that he had testified no fewer than six times in the Colombian judicial process about his connection to the AUC and had never once mentioned Drummond or Prodeco during any of that testimony.  *Id.* at 95:15-96:6.

Mr. Jeffress asked Mr. Gelvez whether the declaration was made up of "your words or . . . the words of the lawyers for the Plaintiffs?"  Mr. Gelvez answered:  "Obviously, it is of my own knowledge, and I made them."  *Id.* at 101:13-20.  A few questions later, when asked about specific language in the declaration -- "These people in the context of Colombia will not hesitate to use violence and threats against me and my family to silence me or kill me" -- he said "those are words written by me."  *Id.* at 102:14-17.  That testimony was obviously untrue.  The words in question are taken *verbatim* from earlier witness statements prepared by Plaintiffs' counsel.  *See* Dkt. 355, Ex. G (filed under seal and excerpting paramilitary declarations).

When the testimony resumed on April 20, Mr. Jeffress again confirmed with Mr. Gelvez that the final declaration that had been produced to Defendants was written by Mr. Gelvez and not by Plaintiffs' counsel, asking "did you write in your words this entire declaration, not just paragraph 2, but the entire declaration?"  Mr. Gelvez answered "Yes, sir" and went on to say that he had written the declaration in Spanish.  Ex. D at 119:1-6.  However, what was represented by

4

Mr. Collingsworth to be "an English translation" of the "original Spanish version" of his statement is not that at all. The English version contains words, and in one instance, an entire sentence ("I am confessing to participating in very serious crimes, including murder"), which are not contained in the Spanish version. *Id*. at 120:1-5. Perhaps the witness struck those words from the Spanish version before signing it, and Plaintiffs' counsel neglected to conform the original English version.

Later in his cross-examination, when confronted with a conflict between his testimony and his declaration, Mr. Gelvez finally admitted that, in fact, the signed declaration was not drafted by him as he had repeatedly testified, but by counsel for Plaintiffs. He said that he first provided to "Attorney Lorraine [Leete]" a "writing . . . that was written in my handwriting." *Id*. at 144:10-11. According to Mr. Gelvez, this "writing" contained his description "in a generalized way of what took place at the Prodeco mine during the years of '96 and '97." *Id*. at 144:12-13. He explained that the signed declaration produced by Plaintiffs "was done by them," referring to counsel for Plaintiffs. *Id*. at 144:14-16. Mr. Gelvez then refused to answer Mr. Jeffress' question about whether Ms. Leete had written particular language, saying "I will not answer the question. Just let's leave it at that." *Id*. at 145:8-9. On redirect by Mr. Collingsworth, Mr. Gelvez again said that he drafted a document "with my own handwriting." *Id*. at 147:4. Mr. Gelvez stated that he no longer had a copy of the document he had written but that he had no objection to Plaintiffs giving a copy of it to Defendants. *Id*. at 152:21-153:7. Off the record, Mr. Jeffress asked Mr. Collingsworth to produce the statement written by Mr. Gelvez, and Mr. Collingsworth did not agree to do so.

Since Mr. Gelvez's testimony concluded on April 20, Plaintiffs have not produced this handwritten statement or any other communications from former paramilitaries or other

witnesses. During the meet and confer on this motion on April 25, counsel for Plaintiffs confirmed that Mr. Gelvez had written a statement and explained that Mr. Gelvez had done so in response to a questionnaire given to him by Plaintiffs. Mr. Gelvez gave his handwritten document to Lorraine Leete who then gave it to Francisco Ramirez. Even though it had been more than a week since Mr. Gelvez's deposition, Mr. Collingsworth had not yet spoken to Ramirez to confirm whether the document has been destroyed or not. Plaintiffs' sole stated objection to production of these documents is that they are protected by the work product doctrine.

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 37, Defendants move to compel Plaintiffs to produce any documents responsive to Request No. 6, including any written statements like the one described by Mr. Gelvez during his testimony, and responses to "questionnaires" like the one described by Plaintiffs' counsel in the meet and confer. Production of these communications from or to a potential trial witness, a person disclosed on Plaintiffs' Rule 26 disclosures, or any current or former Colombian paramilitaries (collectively, "Witnesses") will not reveal counsel's "mental processes" but rather primary evidence of the facts. Defendants are not asking for draft affidavits written by counsel and shared with the Witnesses or for notes from Plaintiffs' interviews with these Witnesses.[1] Rather, Defendants are *only* requesting verbatim statements or other communications prepared by the Witnesses themselves. Defendants can demonstrate a substantial need for these communications, including the need to test the credibility of these key Witnesses and to prepare for upcoming testimony in Colombian courts pursuant to letters rogatory beginning the week of May 14, 2012. In addition, Defendants can also demonstrate that

---

[1] If the communications are produced, and disclose manipulation of Witnesses' testimony, Defendants reserve their right to request drafts of declarations.

6

they are unable to obtain this information in any other way because there is zero likelihood that these Witnesses—all of whom are "unavailable"—would cooperate with counsel for Drummond and voluntarily provide the information. Although the allegations are untrue, these witnesses have uniformly expressed fear of violent retribution from people affiliated with Drummond.

Mr. Gelvez himself admitted that at least one sentence in the English "translation" of his declaration was not part of the Spanish translation he signed. Combined with the fact that many declarations contain language that is plainly "cut and pasted" from other declarations, Defendants should be permitted to explore in discovery whether the declarations in fact were written by the witnesses at all, or whether they are merely the statements of counsel signed by the witnesses. If these declarations were written for strategic purposes and do not accurately represent what these Witnesses told Plaintiffs' counsel about the facts, this would, at a minimum, raise serious concerns about the strength of Plaintiffs' case and the method by which they have developed it. Defendants should be permitted to test the truthfulness of Mr. Gelvez's and other Witnesses' testimony and declarations by reviewing what first-hand information they provided to Plaintiffs.

## I. Verbatim Statements By a Witness Given to Plaintiffs' Legal Team Are Relevant and Responsive

Communications by a Witness about any of the Defendants are plainly relevant to this case. These types of documents go directly to the knowledge and credibility of the Witnesses on whom Plaintiffs will likely rely both at the summary judgment stage and at trial, and they may also support Defendants' defenses. These types of documents, such as the handwritten statement described by Mr. Gelvez, are responsive to Request No. 6. They are communications from a Witness to someone on Plaintiffs' legal team concerning Drummond.

Moreover, Plaintiffs are under an affirmative obligation to preserve any relevant documents and to supplement their disclosures during this case. *See, e.g.*, *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) (internal quotations and footnotes omitted) ("The common law duty to preserve evidence relevant to litigation is well recognized. . . . [T]he duty to preserve evidence arises when a party reasonably anticipates litigation. Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."); *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."). Even if Plaintiffs decided at the time of receiving communications from Witnesses that Plaintiffs would assert work product over them, Plaintiffs remained obligated to preserve those documents in case a question arose later.

**II. These Witness Communications Are Not Entitled To Work Product Protection**

If Plaintiffs pursue an argument based on work product, as they suggested at the meet and confer, they bear the burden of showing that the work product doctrine applies to these documents. *United States v. Moore*, 485 F.2d 1165, 1166 (5th Cir. 1973). They cannot meet this burden for two independent reasons. First, these documents reflect nothing more than the facts related by the Witnesses and not the mental impressions of counsel. Second, Defendants have demonstrated substantial need for the documents and an undue hardship if they are not produced.

   **A. These Statements Reflect Facts, Not Thought Processes Of Counsel**

The types of communications at issue fall into the category of "factual work product" rather than "opinion work product" as they do not reflect "mental impressions, conclusions, opinion or legal theories of an attorney." *See Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D.

8

682, 688 (S.D. Fla. 2010). Unlike opinion work product which enjoys nearly absolute immunity from disclosure, factual work product is commonly ordered disclosed. As *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), made clear, "[w]here relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."

This case closely mirrors *Callaway v. Papa John's USA, Inc.*, No. 09-61989-CIV, 2010 WL 4024883 (S.D. Fla. Oct. 12, 2010). In *Callaway*, counsel for plaintiffs sent an email to certain pizza delivery employees of Papa John's, explaining that a class action lawsuit had been filed and that "your name has been identified as a former employee/project coordinator who may have personal knowledge of the allegations in this lawsuit." *Id*. at * 3. In other words, the email went to potential witnesses. The plaintiffs received responses to this email from these potential witnesses. The defendant requested all of the responses. The plaintiffs refused to produce them, claiming that they were protected by the work product doctrine. The *Callaway* court rejected this argument. It relied on the rule that "'ordinarily, the work product doctrine does not shield from discovery documents created by third parties.'" *Id*. at *7 (quoting *Hunter's Ridge Golf Co., Inc. v. Georgia-Pacific Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006)). It went on to explain that "[c]ounsel did not prepare such materials; the recipients [of the email] did, or else they collected the documents. Either way, such documents do not reflect counsel's opinions or investigative or litigation strategies." *Id*. The court concluded that the documents at issue "provide factual information that does not enjoy the protections of the work-product doctrine." *Id*.

*Horita v. Kauai Island Utility Cooperative* is also instructive. Civil No. 07-00357, 2008 WL 2901236 (D. Haw. July 29, 2008). In this employment discrimination case, counsel for the plaintiff contacted a potential witness about the claims. Just before counsel for plaintiff

9

interviewed the witness, the witness drafted a statement about the facts and turned it over to the plaintiff.  When the defendant requested all witness statements, plaintiff refused to produce the statement, asserting work product.  *Id*. at *1.  The court ordered that the statement be produced.  Key to the court's reasoning was that the statement did "not contain notes or memoranda of Plaintiff's counsel."  *Id*. at *3.  Rather, the witness "alone—not in consultation with Plaintiff's counsel—prepared the statement."  *Id*.  The *Horita* court quoted extensively from another case, *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650, 653 (D. Alaska 1994), where the documents improperly withheld were potential class member answers to a questionnaire sent to them by counsel for plaintiffs:

> Discovery of the material contained in a verbatim, third-party witness statement by other means will simply not be the substantial equivalent of the earlier written statement.  As already suggested, this court views the attorney work product rule as involving a kind of fiction when the subject is the verbatim statements of witnesses.  **What counsel are entitled to protect is *their* work and *their* thoughts and *their* analysis of the case, not the knowledge possessed by third parties.**  It is the view of this court that a verbatim witness statement, even one solicited by counsel, is *per se* necessary to the full and efficient development of a case. (bold emphasis added)

Consistent with *Callaway*, *Horita* and *Dobbs*, several other cases make clear that where the requested documents are verbatim statements by witnesses, they are not protected by the work product doctrine.  *See, e.g.*, *Young v. California*, Case No. 05cv2375, 2007 WL 2900539 at *1 (S.D. Cal. Oct. 1, 2007) (witness responses to questionnaires sent by plaintiffs' counsel are not work product because they "are the factual observations of percipient witnesses, not the thoughts or impressions of counsel"); *Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09-CV-6552T, 2011 WL 4711961 at *10 (W.D.N.Y. Sept. 29, 2011) (emails from non-party to plaintiffs' counsel not work product because they "do not reveal counsel's opinions or strategies"); *Ricoh Co. v. Aeroflex, Inc.*, 219 F.R.D. 66, 69 (S.D.N.Y. 2003) (emails sent by a non-party to defense counsel not protected by work product; court noted that "it [would be] a

10

stretch to apply the attorney work product privilege to documents created by a third party and then sent to counsel for a party."); *Schipp v. General Motors Corp.*, 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006) (ordering disclosure of "verbatim, non-party witness statements" because they "are neither privileged nor work product").

The Eleventh Circuit has stated that witness statements and notes of interviews *prepared by attorneys* in anticipation of litigation "constitute the work product of the attorneys for the private plaintiffs." *See Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466 (11th Cir. 1984); *see also Live Nation Worldwide, Inc. v. Cohl*, Case No. 10-24144-CIV, 2011 WL 5597348 (S.D. Fla. Nov. 17, 2011) (draft declarations drafted by counsel are work product). *Castle* and *Live Nation* are not controlling here because the communications requested by Defendants were not prepared by lawyers but ***by the Witnesses themselves***. This distinction makes all the difference because it eliminates the possibility that what is contained in the communications includes any thoughts or strategies of Plaintiffs' counsel. The work product doctrine does not exist to allow Plaintiffs to hide from Defendants facts known by witnesses.

### B. Even If These Communications Are Work Product, Defendants Have Demonstrated Substantial Need For Them And Undue Hardship If They Are Not Produced Immediately

Even assuming for the sake of argument that the requested documents do constitute work product, they still should be produced because Defendants can easily establish that they meet the requirements under Rule 26(b)(3)—substantial need and undue hardship. *Castle*, 744 F.2d at 1467. As an initial matter, Defendants have a substantial need for these documents. There are several hearings scheduled in Colombian courts pursuant to letters rogatory during a two-week period beginning the week of May 14, 2012. These documents are necessary to prepare for those depositions, which will include depositions of former paramilitaries as well as Drummond employees who have been accused by some of these witnesses of directly collaborating with the

AUC. These communications are also critical to investigating and impeaching the testimony already given by paramilitaries during the letter rogatory process. *Hickman*, 329 U.S. at 511 (nothing that need may be shown where the documents might "give clues as to the existence or location of relevant facts. Or . . . be useful for purposes of impeachment or corroboration"). These witnesses have testified that the Drummond defendants collaborated with Colombian paramilitaries to kill over one hundred innocent civilians. Defendants should be given every opportunity to investigate these serious allegations and do so *before* the close of discovery in two months.

Defendants will also suffer undue hardship if the communications are not produced because they have no other way to obtain the information contained in these communications. This is not a situation where traditional methods of formal or informal discovery can substitute for production of these communications. Defendants have no access to these Witnesses. **First**, they are located abroad and are therefore "unavailable." *Hickman*, 329 U.S. at 511 ("production might be justified where the witnesses are no longer available or can be reached only with difficulty."); *A.F.L. Falck, S.p.A. v. E.A. Karay Co.*, 131 F.R.D. 46 (S.D.N.Y. 1990) ("Unavailability of a witness is a ground for setting aside the work product immunity.").

**Second**, these Witnesses are located in Colombian prisons and "can be reached only with difficulty." *Hickman*, 329 U.S. at 511. Both parties can attest to the difficulty of obtaining voluntary depositions in Colombia and the lengthy process to obtain testimony pursuant to letters rogatory. Moreover, some of the testimony by letters rogatory of these Witnesses has already been taken, making it even more unlikely that the Colombian courts will grant a successive petition for such testimony.

*Third*, there is no chance these individuals would ever meet with defense counsel to discuss what they originally told Plaintiffs or disclose the statements voluntarily. Although the allegations are completely false, Plaintiffs and their witnesses continue to claim that these witnesses are fearful of "powerful people" who may physically harm them for giving these declarations. These allegations—contained in nearly every declaration—are no doubt directed at Drummond. There is no possibility then, that counsel for Drummond could gain independent access to these Witnesses. *Contrast Castle*, 744 F.2d at 1467 (denying motion to compel witnesses statements drafted by counsel because "the witnesses themselves may be glad to provide copies of their statements."); *with Live Nation*, 2011 WL 5597348, at *5 (denying a motion to compel draft affidavits because there was "equal access to [the witness] to conduct their own fact-finding.").

*Finally*, these Witnesses have a strong incentive not to deviate from their final declarations as they could face sanctions in the Colombian justice process for lying. So, even if defense counsel could talk to them, the likelihood that they would recant their declarations is zero.

## III.    Plaintiffs Have Waived The Work Product Objection To This Request

Nowhere do Plaintiffs raise a work product objection to Request No. 6. The general objections note that Plaintiffs have an objection on work product grounds only to "certain" requests. Ex. B at 2. And, in fact, the responses to twelve of the eighteen requests *do* identify an objection on work product grounds. *See, e.g.*, *id.* (raising work product objections to Requests Nos. 1, 2, 3, 4, 5, 7, 9, 11, 12, 13, 14, 15). But the objections to Request No. 6 do not mention work product. *Id.* at 5-6. It is hornbook law that the failure to preserve an objection to a discovery request is a waiver of it. *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 668 (N.D. Fla. 2010) ("[W]hen a party fails to timely object to interrogatories, production requests, or other

13

discovery efforts, the objections are deemed waived." (citing *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989)).

## **CONCLUSION**

Plaintiffs have already hindered the preparation of Defendants' defense by withholding these documents until *after* several of the key depositions in this case. This situation is made even worse by the fact that these witnesses will not appear live at trial, and counsel for Defendants have now been denied the opportunity to confront them with these communications if they in fact differ from their final declarations. Plaintiffs should be ordered to respond to Request No. 6 immediately.

Dated: May 2, 2012

/s/  William H. Jeffress, Jr.
William H. Jeffress, Jr.
David A. Super
Sara E. Kropf
Rachel Cochran
Bryan H. Parr
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
(202) 639-7700
fax: (202) 639-7890

/s/  William A. Davis, III
William A. Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
Benjamin T. Presley (ASB-0136-I71P)
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL 35259
(205) 868-6000
fax:  (205) 868-6099

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on **May 2, 2012**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Terrence P. Collingsworth, Esq.
Christian A. Levesque, Esq.
Rachel A. Sheridan, Esq.
Conrad & Scherer, LLP
1156 15th Street NW, Suite 502
Washington, D.C. 20005

William R. Scherer, Esq.
Conrad & Scherer, LLP
633 South Federal Highway
Ft. Lauderdale, FL   33301

Eric J. Hager, Esq.
Conrad & Scherer, LLP
Avenida República de El Salvador 500 e Irlanda
Edificio Siglo XXI, PH Oficina W
Quito, Ecuador

            /s/ William A. Davis, III
            William A. Davis, III (ASB-5657-D65W)