FILED

2012 May-09  PM 08:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **CLAUDIA BALCERO GIRALDO,** *et al.,* ) | |
| ) | **Case No. 2:09-cv-1041-RDP** |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **DRUMMOND COMPANY, INC.,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL COMMUNICATIONS FROM THIRD-PARTY WITNESSES

**TABLE OF CONTENTS**

I.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   The Requests, Objections, and Documents at Issue . . . . . . . . . . . . . . . . . . . . . . 2

    B.   Mr. Gelvez submitted a draft declaration at counsels' request and for the
         clear purpose of this litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   The document request does not encompass draft affidavits, which is
         not fairly described as a "communication" . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.   The majority of courts, including those in this circuit, agree that draft
         declarations, the evolution of the declarations, and communications
         between non-parties and counsel constitute work product. . . . . . . . . . . . . . . . . 6

    C.   Defendants have failed to show substantial need for the documents. . . . . . . . . 16

    D.   Plaintiffs have not waived their objection on work product ground. . . . . . . . . 20

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

In their Motion to Compel, Defendants insist that they are seeking *only* "verbatim witness statements" that "do not reveal any mental impressions of counsel but rather the facts underlying the litigation." Mot. at 1.  In reality, Defendants seek draft declarations and any communications from witnesses, including those involving the evolution of declarations generally and specifically that of Witness Jose Del Carmen Gelvez Ablarracin ("Gelvez").  As explained herein, the draft declarations were created with the input of Plaintiffs' counsel, who provided Mr. Gelvez with questions to which he responded in a written declaration.  The final declaration had several prior iterations – all with counsels' guidance, input, and involvement.  Thus, these documents and communications are protected by the attorney work product.  Amazingly, Defendants made the same arguments to this Court concerning attorney-client privilege and work product when they argued that "[b]ecause counsel for Defendants was involved in the preparation of the press release, any drafts or communications regarding the press release are privileged and need not be produced." Doc. 332, at 9 (Court's order quoting Defendants' arguments); Doc. 256, at 4.  The Court ordered Defendants to place these drafts and communications on a privilege log.

The majority of courts to have addressed the issue have found that draft declarations shared by a non-party witness with counsel when the draft responds to questions or an inquiry of counsel and is for the purpose of that litigation constitutes protected attorney work product. Communications between counsel and a non-party witness also are often protected work product. Defendants have cited no authority that is contrary to these general rules and all of their authority involves factually distinct circumstances.

Moreover, Defendants have already deposed Mr. Gelvez and have had an opportunity to inquire about the underlying facts of his declaration.  Thus, Defendants have not made a showing of substantial need to overcome work product protection.  Finally, Plaintiffs have not waived

their claim to work product: they have consistently maintained that such communications and drafts are work product by objecting that the Request impermissibly sought to track counsels' investigations and they raised the work product objection in the corresponding interrogatories that seek the same kind of information about oral communications with witnesses.  Plaintiffs similarly raised the work product objection in correspondence and when they met and conferred with Defendants.  A finding that waiver of work product has occurred is a harsh sanction that courts rarely employ and Plaintiffs have made clear consistently that certain communications with witnesses and draft declarations are protected.

For all the reasons that follow, this Court should deny Defendants' motion because draft declarations and communications concerning the declarations and/or case strategies are protected attorney work product.

## I. FACTS

### A.      The Requests, Objections, and Documents at Issue

Defendants' Request No. 6 seeks "all communications regarding Drummond Company, Inc., Drummond Ltd. or the allegations in the SAC between any Plaintiff, or anyone acting on Plaintiffs' behalf including counsel, and any person disclosed on Plaintiffs' Rule 26 disclosure, any current or former Colombia paramilitary or any other potential witness in this case."  Defs' Mot. at 2 (citing Request No. 6). Plaintiffs objected on a number of grounds, and noted that the request "impermissibly seeks to track counsels' investigations concerning 'potential witnesses' . . ." Ex. 2, Response No. 6.  Plaintiffs additionally responded that to the extent documents existed that were not subject to the privileges, they would produce them subject to the other objections. *See id.*  Contrary to Defendants' assertions, Plaintiffs did produce certain communications that

2

they contended were not subject to the work product doctrine. Additionally, Plaintiffs asserted the work product doctrine in their general objections. *Id.* General Objection No. 3. Plaintiffs also objected on work product grounds to the corresponding interrogatories in Defendants' Second Set of Interrogatories, which requested witness statements made to counsel, counsels' notes, and oral communications between the witnesses and counsel, along with identifying information concerning written documents. *See* Ex. 1 (Nos. 1-20).

The number and universe of documents at issue now is very small. Plaintiffs have produced all final, signed declarations. Due to the unique circumstances of working with witnesses who are in prison without access to word processing equipment, and the fact that counsel was prohibited from bringing a computer into the prison, most of the final declarations necessarily involved multiple drafts reflecting an evolving document that incorporated changes based on input from counsel concerning testimony in furtherance of this litigation. Additionally, there are a small number of communications from several potential witnesses that Plaintiffs have withheld because they concern case strategies and were made in consultation with Plaintiffs' counsel. Plaintiffs have, however, produced other communications. Concerning Mr. Gelvez specifically, there are several drafts of his declaration, but no communications at all.

Plaintiffs' counsel informed Defendants during the meet and confer process that U.S. counsel does not have a copy of Mr. Gelvez's first draft and they are checking with their local Colombian counsel, Mr. Francisco Ramirez, to see if he has retained a copy. As Plaintiffs' counsel explained to Defendants in the telephonic meet and confer, Mr. Ramirez was traveling in Europe and did not have access to his files in Colombia during this trip. Plaintiffs' counsel are

endeavoring to locate this initial draft and Defendants' accusations that they failed to preserve evidence are unfounded and premature, regardless of their merit, which Plaintiffs contest.

**B.    Mr. Gelvez submitted a draft declaration at counsels' request and for the clear purpose of this litigation.**

Despite Defendants' claim that they are "*only* requesting verbatim statements or other communications prepared by the Witnesses themselves," (Defs' Mot. at 6) (emphasis in original), the predominant document at issue is a draft declaration provided by Witness Mr. Gelvez to Plaintiffs' counsel at their request in anticipation and furtherance of this litigation.  Mr. Gelvez is currently incarcerated in prison in Colombia.  Defendants had a full opportunity to cross examine Mr. Gelvez during this testimony, which was taken pursuant to the letter rogatory process.  *See* Def. Ex. C (Final Transcript March 16, 2012); Def. Ex. D (Final Transcript April 20, 2012).

According to his testimony, after Mr. Gelvez learned about ongoing litigation against Drummond, he approached Plaintiffs' counsel in order to "tell [them] about some events of which [he] had knowledge . . . in order to help to clarify such facts."  *See* Def. Ex. D (Final Transcript of Apr. 20, 2012 at 150:12-16). Mr. Gelvez met with Plaintiffs' counsel on several occasions beginning in February of 2011.  *See* Def. Ex. C (Final transcript of Mar. 16. 2012 at 98:11-19). Plaintiffs' counsel then asked Mr. Gelvez to draft a declaration regarding his knowledge of the relationship between Drummond and the AUC based on specific questions provided to him by Ms. Leete.  *See Id.* at 98:2-5 ("I was then visited by Attorney Lorraine Leete, who asked me to write up a document with everything that I knew regarding this topic, which did I [sic], and corrected it several times . . ."). As one of Plaintiffs' counsel, Ms. Leete explains in her declaration that "[she] provided Mr. Gelvez with a set of specific questions regarding his

4

knowledge about the relationship between Drummond and the AUC and requested that Mr. Gelvez draft a declaration based on these questions." Declaration of Lorraine Leete at ¶ 4. Indeed, Mr. Gelvez continued to work together with Plaintiffs' counsel to revise his declaration, before he signed the final declaration in November of 21, 2011. Def. Ex. C, 98:2-5.

It is clear from Mr. Gelvez's testimony that he did not provide Plaintiffs with a document that he had already written prior to meeting Plaintiffs' counsel, but rather only provided the draft declaration after he met with Plaintiffs' counsel and after he was asked specific questions regarding his knowledge of the links between Drummond and the AUC. Declaration of Lorraine Leete at ¶ 4. Thus, this draft declaration was drafted at the request of Plaintiffs' counsel, and was prepared in anticipation and furtherance of litigation.

## II. ARGUMENT

### A. The document request does not encompass draft affidavits, which is not fairly described as a "communication."

Defendants' Second Request for Documents No. 6, which seeks "all communications" to and from anyone acting on behalf of Plaintiffs and any person disclosed on Plaintiffs' Rule 26 disclosure, including potential witnesses (Defs' Mot. at 2), does not encompass draft declarations. Defendants' Second Request for Documents defined "communication" as "any writing or oral conversation, including, but not limited to, telephone conversations, conversations in meetings, letters, e-mails, voice mails, memoranda, notes, or telegraphic and telex communications." Ex. 2 (Defs' Second Request for Docs, Terms No. 4). A draft declaration simply is not a "communication" and Defendants' attempt to enlarge this request to include draft

declarations should be rejected.  Regardless, however, as Plaintiffs explain below, the draft declarations and related communications are protected work product.

**B**.      **The majority of courts, including those in this circuit, agree that draft declarations, the evolution of the declarations, and communications between non-parties and counsel constitute work product.**

In an attempt to piggy-back on Plaintiffs' investigations of third-party witnesses, Defendants try to justify their request by claiming they seek only "verbatim statements or other communications prepared by the Witnesses themselves," and that such statements reflect facts, not thought processes of counsel.  Defs' Mot. at 7-8.  As discussed above, Defendants do not accurately portray their request or the declaration and communications now at issue.  Mr. Gelvez's draft declaration is not a document created by a third-party, independent of counsels' guidance and input, but rather a document created at the specific request of Plaintiffs' counsel who provided Mr. Gelvez with questions to answer.  *See* Section I, *supra*.  The declaration was revised through multiple iterations involving both counsel and Mr. Gelvez.  Counsel's involvement in the drafting of the declaration is apparent from the witness' testimony, as well as Ms. Leete's declaration.  *See id.*

Many courts have now acknowledged that draft declarations, the evolution of those declarations, and communications from witnesses are protected by the work product doctrine, and these courts have noted the strong modern trend to recognize such protection.  *See, e.g.,* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 (3d ed. 2012) ("Recent cases have generally held that draft affidavits, and communications with counsel relating to affidavits, are covered by the work–product rule."); *Randleman v. Fidelity Nat. Title Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008) ("The trend is to consider draft affidavits and

communications with counsel relating to affidavits as covered by the attorney work product doctrine."); *Boyer v. Gildea*, 257 F.R.D. 488, 492-93 (N.D. Ind. 2009) ("Many district courts consider draft affidavits and communications with counsel relating to affidavits as covered by the attorney work product doctrine.") (citations omitted).

In fact, courts within this Circuit have upheld the axiomatic rule that "there is no question" that "witness statements and notes of interviews with witnesses" "constitute the work product of the attorneys for the private plaintiffs." *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466 (11th Cir. 1984).[1]   Other courts within this circuit have approvingly cited authority in which courts have applied the work product doctrine to protect draft affidavits created by non-party witnesses from production.  *See Live Nation Worldwide, Inc. v. Cohl*, No. 10–24144–CIV, 2011 WL 5597348, at *2-3 (S.D. Fla. Nov. 17, 2011) (extensively analyzing with approval cases holding that draft affidavits of a non-party and related communications were protected by the work product doctrine).  Implicitly acknowledging that the case law does not favor Defendants' artificial line-drawing between "verbatim" statements of the witness and counsels' statements, Defendants try to convince the court that these cases are not controlling because the communications were not prepared "by the Witnesses themselves." Def. Mot. at 11 (citing

---

[1]This Court recently denied Defendants' motion to compel responses to Interrogatory Responses Nos. 1 and 3 (Second Set), which sought witness statements and information learned through witness interviews.  This Court held the information is protected by the work product doctrine, which "does not force an attorney to repeat or write out all that witnesses have told him." Doc. 332, at 4 (citing *Hickman v. Taylor*, 329 U.S. 495 (1947), and *Williamson v. Moore*, 221 F.3d 1177 (11th Cir. 2000)).   This Court also did not order the production of draft press releases or communications regarding the same where Defendants had argued counsel was involved in the preparation of the press release, drafts and communications regarding the press release because they are privileged and work product.  Doc. 332, at 9.  The Court ordered Defendants to place these drafts and communications on a privilege log.  *Id.*

*Castle*, 744 F.2d at 1466; *Live Nation*, 2011 WL 5597348).  In neither of these cases, however, did the courts limit work product protections to only statements created by counsel or exclude those prepared "by the Witness themselves."  Defendants' distinction in this regard is not supported by the case law.  Moreover, the district court in *Live Nation* unequivocally quoted case authority for the rule that "draft affidavits are subject to the same rules as witness statements 'even if they are executed by a non-party.'" *Live Nation*, 2011 WL 5597348, at *3 (citing *Gerber v. Down East Community Hosp.*, 266 F.R.D. 29, 33 (D. Me. 2010) ("'The fact that the witness authors a portion of the email correspondence chain and likely retains a copy of the correspondence does not undermine the [work product] privilege.'" )).

Additional authority holding that drafts of declarations and communications between a non-party and counsel constitute work product abound.  For example, in *Institute for Development of Earth Awareness v. People for Ethical Treatment of Animals*, 272 F.R.D. 124 (S.D.N.Y. 2011), the plaintiff sought production of the drafts of two affidavits exchanged between the defendant's counsel and two non-party affiants. 272 F.R.D. at 125. The court denied the motion to compel, reasoning that drafts "do not lose their character as work product because a final executed version has been affirmatively used in the litigation." *Id.* The court added that "[t]o the extent that drafts reflect theories once held by PETA's counsel or strategies considered by counsel and abandoned, they are immune under Rule 26(b)(3)(B)." *Id.*

Not only are the draft declarations and communications concerning the drafts protected under the work product doctrine, inquiries concerning the evolution of an affidavit, including the role of the attorney in drafting the declaration are also protected.  *See U.S. v. University Hosp., Inc.*, No. 1:05-cv-445, 2007 WL 1665748, at *1 (S.D. Ohio June 6, 2007) ("The undersigned is

not aware of any case in which a court has permitted opposing counsel to question a witness about any role that counsel may have had in the evolution of an affidavit, about any communications with counsel relating to an affidavit, or about prior undisclosed drafts of an affidavit.").  The purpose of such protections is to prohibit the opposing counsel from "rid[ing] upon the coattails of Plaintiffs' counsel." *1100 West, LLC v. Red Spot Paint & Varnish Co.*, No. 1:05-cv-1670-LJM-WTL, 2007 WL 2904073, at *2 (S.D. Ind. May 18, 2007) (finding that draft affidavits of a non-party witness prepared by the plaintiffs' agent, a private investigator, were protected work product and noting that one of the purposes of the work product doctrine is to prevent a litigant "from taking a free ride on the research and thinking of his opponent's lawyer").

To further circumvent work product protection, Defendants mischaracterize the declaration they now use as an example and circumstances of its evolution, stating it is a document generated exclusively by the witness containing facts only.  Defs' Mot. at 11.  They focus on Mr. Gelvez's testimony in which he discusses how the facts contained in his final, signed declaration are based on his knowledge alone.  Defs' Mot. at 4-5.  As is the case with every final declaration, the facts contained therein are based on the witness' personal knowledge. This fact does not negate the rule, as many courts have recognized, that although sworn affidavits "are a witness's own statement and are not protected by the work product doctrine," [i]n contrast, *draft* affidavits are typically covered by the work product doctrine".  *Trustees of Plumbers and Steamfitters Local Union No. 43 Health and Welfare Fund v. Crawford*, 573 F. Supp. 2d 1023, 1028 n.3 (E.D. Tenn. Aug 11, 2008) (emphasis in original); *Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 155 (S.D.N.Y. 2007) (holding that drafts of an affidavit are work product even after a final draft is submitted, because the draft reflected "the mental

processes and opinion of counsel").  Making work product all the more apparent in this case are the unique circumstances of working with witnesses who are in prison without access to word processing equipment.  Most of the final declarations necessarily involved multiple drafts reflecting an evolving document that incorporated changes based on input and guidance from counsel.

Similarly, the court in *Tuttle v. Tyco Electronics Installation Services, Inc.*, No. 2:06-cv-581, 2007 WL 4561530 (S.D. Ohio Dec. 21, 2007) discusses the distinction between draft affidavits, which are generally protected as work product, and final sworn versions, which may not be protected because they represent the witness' knowledge of facts.  In *Tuttle*, the defendant moved to compel the production of "any prior, subsequent, or final versions" of the affidavits of two non-party witnesses. *Id.* at *1. The court drew a sharp distinction between the final versions and the drafts in deciding the applicability of the work product doctrine.  Where sworn affidavits purport to be a statement of facts within the personal knowledge of the witness and an opposing party "should not be frustrated in their ability to test the perception and credibility of these affiants," draft affidavits, on the other hand, are not merely statements of facts.  *Id.* at *2.  As the court noted:  "the work product doctrine does protect information relevant to the evolution of an affidavit, including but not limited to communications with the counsel relating to the affidavit, prior drafts of the affidavit, and any notes made by counsel while engaging in the process of drafting the affidavit." *Id.* at *2. Therefore, the court required the production of only the final versions of the affidavits. *Id.*

As these cases demonstrate, the same principle applies for communications between third-parties and counsel in anticipation or furtherance of litigation.  For example, in *Plew v.*

10

*Limited Brands, Inc.*, the district court rejected the argument that communications between defendants and third-parties were not protected work product because the "documents [were] prepared by one who is not a party to the case . . ."  2009 WL 1119414, at *1 (S.D.N.Y. Apr. 23, 2009).  The emails soliciting a response from the third-parties were prepared at the request of counsel following commencement of the lawsuit, "and were sent for the specific purpose of eliciting information from [the third-party] that might assist in defending against plaintiff's claims." *Id.* at *2. The court upheld work product immunity for both the parties' and third parties' emails because documents sent by a third-party created for the defendants because of the litigation "fit squarely within the protective ambit of Rule 26(b)(3)." *Id.* at *3.  *See also Randleman,* 251 F.R.D. at 285; *Boyer*, 257 F.R.D. at 492-93; *Live Nation*, 2011 WL 5597348, at *2-3 (citing cases holding that draft affidvits of a non-party and communications with non-parties were protected by the work product doctrine).

Defendants rely heavily on *Callaway v. Papa John's USA, Inc.*, No. 09-61989-CIV, 2010 WL 4024883 (S.D. Fla. Oct. 12, 2010), a case they say "closely mirrors" the present circumstances. Def. Mot at 9.  This case, as all others Defendants cite, is distinguishable.  In *Callaway*, the plaintiffs' attorney sent an email to third-parties asking if they had knowledge of the claims at issue and requesting that they respond to the attorneys.  *Callaway*, 2010 WL 4024883, at *3.  Unlike in this case, in *Callaway* the questionnaire responses at issue were in no way part of the "evolution" of an affidavit, and the facts contained in the questionnaire responses were not otherwise readily accessible to the defendant because there were, for example, no sworn declarations. Moreover, the responses received by the plaintiffs' counsel in *Callaway* were in response to a mass email sent to many individuals – clearly with no expectation that the email

would remain confidential or that the email therefore contained protected attorney work product. Given these facts, which are distinguishable, the district court found that the responses received by plaintiffs' counsel did not enjoy work product protection because the "documents do not reflect counsel's opinions or investigation or litigation strategies. Rather, they provide factual information that does not enjoy the work-product doctrine." *Id.* at *7.

In contrast to *Callaway*, Plaintiffs have established that they communicated with Mr. Gelvez for the purpose of him being a witness in this case and to discuss his relevant knowledge. Their communications were not part of a mass communication to prospective witnesses. Plaintiffs' counsel requested that he provide a declaration by providing him with questions to answer. After he provided the initial draft, they then worked with him to focus his testimony, ensure accuracy and otherwise present the relevant testimony. The evolution of the declaration falls squarely within the work product doctrine and is not discoverable, and the fact that Mr. Gelvez put "pen to paper" to draft the declaration at counsels' request does not negate the applicability of the work product doctrine in this case. As one court expressly noted: "I am unaware of any precedent holding that a witness statement is not work-product whenever it is the witness who puts pen to paper (or finger to keyboard) rather than counsel or counsel's agent." *Gerber,* 266 F.R.D. at 33 (finding draft declarations of non-party witnesses and communications with witnesses are work product); *Live Nation*, 2011 WL 5597348, at *3 (citing *Gerber,* 266 F.R.D. at 33 with approval).

*Horita v. Kauai Island Utility Co-op.*, Civil No. 07-000357, 2008 WL 2901236 (D.Haw. July 29, 2008), also cited by Defendants, is distinguished factually from this case as well because, as the *Horita* court noted, the witness in that case prepared her statement "alone-not in

consultation with Plaintiff's counsel." *Id.* at *3. The witness' statement was "prepared independently before her interview with Plaintiff's counsel" and therefore did not contain "clues as to the thought processes or mental impressions of Plaintiff's counsel." *Id.* at *4. Unlike in *Horita* where the witness created a factual statement without consultation or guidance of counsel, Mr. Gelvez drafted his statement after several meetings with plaintiffs' counsel and composed his declaration with the guidance of questions posed to him by counsel.

Nor do the circumstances in *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650 (D. Alaska 1994), also cited by Defendants, approximate the evolution of Mr. Gelvez's declaration. Decisive to the outcome in *Dobbs* was the court's concern that information was not easily obtainable in interrogatories or depositions: "The court rejects the notion that it serves the purposes of the Federal Rules of Civil Procedure to make the facts known by third-party witnesses so obscure or difficult to obtain." *Dobbs,* 115 F.R.D. at 653. Unlike in this case, in *Dobbs* the questionnaire responses did not evolve into sworn affidavits or other readily accessible material containing facts within the non-parties' knowledge. *Id.* at 652-53.  In this case, by contrast, the existence of Mr. Gelvez's sworn declaration negates any need for the drafts because the facts within Mr. Gelvez's knowledge are available in the final declaration and were already tested by Defendants' counsel in their examination of Mr. Gelvez.

The remainder of Defendants' authority is equally inapplicable because none involved declarations or affidavits drafted at the request of counsel and with counsels' guidance and participation, the disclosure of which would reveal counsels' opinions and case strategies.  *Cf. E.g., Ricoh Co., Ltd. v. Aeroflex Inc.*, 219 F.R.D. 66, 69-70 (S.D.N.Y. 2003) (ordering the production of emails sent by a non-party to the defendants' counsel where the non-party was not

a witness and counsel had not shared notes or questions or guidance in composing an affidavit, but rather the emails represented documents purely created by a third-party); *Schipp v. General Motors Corp.*, 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006) (with little discussion, the court ordered the production of "any verbatim non-party witness statements" that otherwise would have been unavailable to defendants, but reasoned that notes taken by the cross-plaintiff's insurer and provided to her attorney were protected work product).

In fact, one case Defendants cite, *Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09–CV–6552T, 2011 WL 4711961 (W.D.N.Y. Sept. 29, 2011), is far more supportive of Plaintiffs' position than it is to Defendants.' The court in *Carpenter* found that an email from the plaintiffs' attorney to a non-party witness soliciting information to be used for revising the witness' affidavit was protected work product. *Id.* at *8. The court surveyed authority concerning the extent to which the work product doctrine protects communications from non-parties to counsel, noting that "Courts have held that draft affidavits of parties to a litigation, prepared in consultation with counsel, are attorney work product." *Id.* at *9. Further, the court noted, "draft affidavits of non-party witnesses also deserve work product protection." *Id.* (citing cases in other circuits holding draft affidavits and the evolution of affidavits of non-party witnesses, including communications, are protected). Although the court ordered the production of one email from a non-party relating to the drafting of an affidavit, it did so on narrow grounds, reasoning that the email was sent by an individual who was not the affiant and the email did not "purport to reflect the affiant's opinions or suggestions on the draft." *Id.* at *1. The court also observed that the email did not respond directly to the questions posed by the plaintiffs' counsel, but if the email had responded directly to counsel's questions, "it might well qualify for protection." *Id.* at *10.

14

The case law is clear that courts overwhelmingly hold that draft declarations of third-party witnesses and communications concerning those declarations or case strategies constitute protected work product.  In this case, Plaintiffs' counsel provided the witness with questions to facilitate the making of the declaration and then collaboratively worked with the witness to revise and refine the declaration.  The final, sworn declaration has been produced, and the witness has testified to its accuracy and truthfulness.  There is no question that the great weight of authority supports Plaintiffs' contention that such declarations and communications are protected work product.

Of final note, Defendants raise the obligation to preserve relevant documents.  Defs' Mot. at 8 (citing *Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010); *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)).  First, as Plaintiffs' counsel explained to Defendants, although they do not have a copy of Mr. Gelvez's first draft, they are checking with their local Colombian counsel to see if he retained the draft in his files, as he was instructed to do.  *See* Section I.A., *supra*.  Any accusation, therefore, that Plaintiffs did not preserve this draft is premature and not ripe for this court's consideration.  Second, Defendants' case law is not applicable as it addressed litigation holds in *Pension* and the failure to preserve *the main evidence* in the case in *Silvestri*.  These cases do not address any duty by counsel to preserve work product, nor do they even touch upon circumstances similar to those present here.  There is no accusation that Plaintiffs deliberately destroyed evidence; Plaintiffs have produced the evidence in the form of a final declaration; and although they are searching for the draft, they contend it is work product and thus not

discoverable.  Defendants' suggestion that Plaintiffs have not preserved *evidence* is unfounded and should be rejected.

For all the reasons addressed above, the Court should find that the draft declarations and related communications are work product.

## C.   Defendants have failed to show substantial need for the documents.

Defendants argue they must have the draft and documents like this because they "go directly to the knowledge and credibility of the Witnesses . . ." Defs' Mot. at 7, 11.  Additionally, they claim the witnesses are unavailable, they will not meet with Defendants' counsel, and the "[w]itnesses have a strong incentive not to deviate from their final declarations as they could face sanctions in the Colombian justice system for lying." *Id.* at 12-13.  These arguments should be rejected.

First, a desire to test credibility or probe the truth of the statements does not justify piercing the work product protections, and courts have rejected such arguments.  For example, in *Randleman v. Fidelity Nat. Title Ins. Co.*, 251 F.R.D. 281 (N.D. Ohio 2008), the plaintiffs sought discovery from the defendant of all drafts of third-party witnesses, which the defendant used in support of its opposition to the plaintiffs' motion for class certification. The plaintiffs asserted that they had a substantial need for the information "because it may have an impact on their ability to test the credibility of the agents, brokers and lenders from whom [defendant] obtained affidavits." *Id.* at 283.  Plaintiffs also argued that they had "no way of cross-examining the witnesses regarding the preparation of the affidavits to test their credibility and perception" and "the information to be obtained from the defendant's draft materials is not otherwise available." *Id.* at 286.  The court found that the plaintiffs failed to demonstrate substantial need for three

reasons. First, information about the affiant's endorsement of the affidavit can be obtained

through questioning of the witness: "Effective examination can uncover the extent to which

someone other than the affiant 'framed' the statements in the affidavit, even if the attorney

conducting the examination has not seen the prior versions." *Randleman*, 251 F.R.D. at 286.

Second, because the affiants swore to the final affidavit and not the drafts, it would not undercut

the reliability of the final affidavit if a draft contained something that the affiant later removed.

*Id.* at 286 ("What matters now is whether the affiants in fact adopt and endorse the statements in

the final affidavits.  Moreover, if the drafts initially said something an affiant later removed, that

hardly undercuts either the reliability of the final statements of the affiant's credibility."). Third,

the court found that the availability of the witnesses for depositions negated any need for the

drafts. *Id.* ("[T]o the extent that statements previously recorded in draft affidavits are not

recollected by the affiant, depositions are the appropriate way to determine whether the affiant

can recall his or her prior sworn statements.").  Similarly, in *Institute for Development of Earth

Awareness v. People for Ethical Treatment of Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011),

the court found that "to the extent that drafts contained facts or supposed facts which

[defendant's] lawyer elected to include in an earlier draft but decided not to include in the

version which was served and filed" the plaintiff failed to show substantial need because the non-

party witnesses had been made available for to be examined depositions.

Other courts have similarly held that a party cannot show substantial need for affidavit

drafts that would otherwise constitute work product where the party seeking the drafts does not

demonstrate why it cannot challenge the accuracy of the witness's testimony by "using his

depositions to highlight absence of independent memory of the changes made to the draft affidavits." *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 608-09 (D. Nev. 2005).

Second, in this case, Defendants have had the opportunity to depose Mr. Gelvez at length and to ask him about his personal knowledge concerning the facts contained in his final declaration. *See* Section I, *supra*. Thus, Defendants' claims that the witness is inaccessible because he is in a Colombian prison are baseless. Defs' Mot. at 12. Similarly, many of the other witnesses who have provided declarations and for whom the parties have sought letters rogatory are also accessible. Moreover, contrary to Defendants' arguments, there is nothing stopping them from approaching these witnesses to discuss the facts of this case. It is clear from Defendants' representations that they only speculate that certain witnesses would not want to speak with them, but they do not state they have tried.

Moreover, Defendants have pointed to nothing in the record that calls into question the veracity of Mr. Gelvez's testimony or Plaintiffs' counsel's actions in acquiring the draft declaration – although Defendants speculate wildly and try to impugn Mr Gelvez's credibility. Mr. Gelvez's testimony was clear that he and Plaintiffs' counsel engaged in a series of communications concerning his declaration in which they worked together to create a final declaration. Def. Ex. C, 98:2-5; Declaration of Lorraine Leete at ¶ 4. This is completely consistent with Mr. Gelvez's further testimony that the facts contained in the final, signed November 2011 declaration "is of [his] own knowledge, and [he] made [the words in the declaration]." Def. Ex. C, 101:19-20. In fact, Mr. Gelvez explained that he worked with Plaintiffs' counsel to correct and revise his declaration. Def. Ex. C, 98:2-5. Mr. Gelvez also testified that he signed the declaration, and its content is true and accurate (Def. Ex. C, 16: 7-17)

18

and that "what I say [in my declaration] is everything that I said in that document that I handwrote." Def. Ex. D, 148:16-21. Defendants try to bolster their credibility arguments by stating that "the signed declaration produced by Plaintiffs 'was done by them,' referring to counsel for Plaintiffs. Def. Ex. D, 144:14-16. Defendants neglect to disclose Mr. Gelvez's full testimony, which was that he had "never itemized this document . . . from 1 to item 20. It was done by them." *Id.* at 144:14-21. Mr. Gelvez did not testify that the facts in his declaration came from Plaintiffs' counsel. *Id.*[2]

Additionally, Defendants cite specific language in Mr. Gelvez's testimony concerning the use of threats. Defs' Mot. at 4. When asked whether these were his words or those written by Plaintiffs' attorney, he responded that "[t]hose are words written by me. Since today while providing my statement and having named important officers of the Army and their own officers . . . there is no doubt that I will be target of threats, and moreover those directed to my family." Def. Ex. C, at 102:7-103:16. Similarly, if there is an issue with the translation of the final declaration, Defendants have had the opportunity to examine Mr. Gelvez and he has made clear the statements were truthful and corrected any errors in translation. Defs' Ex. D, 120:1-121:1. Mr. Gelvez made clear that the final declaration contained his knowledge, was truthful, and that he approved of the final content. Def. Ex. C, 16:7-17; Ex. D, 148:16-21. As one court noted,

---

[2]Defendants also misleadingly state that Mr. Gelvez refused to continue answering questions about "whether Ms. Leete had written particular language." Defs' Mot. at 5 (citing Ex. D, 145:8-9). Again, Defendants omit the relevant context: Mr. Gelvez had already answered these questions and he had just declared: "I've tried to be as clear as possible, but he's rejected all the answers, so." *Id.* at 143:20-21. This comment was in the midst of a series of instances where Defendants' counsel had stated that answers were "unresponsive." *Id.* at 144:8-149:3. As the testimony reflects, Mr. Gelvez did not simply refuse to answer, and in fact he did answer. *Id.*

"[w]hat matters now is whether the affiants in fact adopt and endorse the statements in the final affidavits.  Moreover, if the drafts initially said something an affiant later removed, that hardly undercuts either the reliability of the final statements of the affiant's credibility." *Randleman,* 251 F.R.D. at 286.

Defendants have simply failed to demonstrate that they have a substantial need for the documents: they have already cross-examined Mr. Gelvez on his declaration, the other witnesses are being deposed through the letters rogatory process, and Defendants have access to sworn declarations.  Finally, Defendants' wild speculation that "[w]itnesses have a strong incentive to not deviate from their final declarations as they could face sanctions in the Colombian justice system for lying" (Defs' Mot. at 13) supports the notion that these witnesses have been *truthful* in their declarations because "they could face sanctions in the Colombian justice system for lying." Regardless, Defendants have failed to show a substantial need for the draft declarations or communications regarding the same.

**D.      Plaintiffs have not waived their objection on work product ground.**

At every turn in this litigation, Plaintiffs have made clear their contention that drafts of third-party declarations, as well as communications with third parties concerning declarations or case strategies constitute protected work product and are not discoverable.  In their response to Defendants' Request No. 6 they expressly stated that the request "impermissibly seeks to track counsels' investigations."  Ex. 2.  In other responses to Defendants' Second Request for Documents, Plaintiffs used similar language, with the express notation that the requests "invaded" "attorney work product" because they "impermissibly seek[] to track counsel's investigations."  *See, e.g.,* Ex. 2 (*compare, e.g.,* Response No. 5 *with* Response No. 6).  The

20

failure to use the express phrase "work product" in their response to Request No. 6 was a clerical error, and Plaintiffs' use of similar wording in other responses demonstrates this oversight in the editing process.  Plaintiffs raised the work product doctrine in their general objections as well, and therefore fully preserved work product protection as to the materials sought in Request No. 6, regardless of whether the work product objection was explicitly raised in response to that particular request.  *See* B (General Objection No. 3).

Beyond this particular set of responses, Plaintiffs also raised the work product objection to each and every interrogatory that sought the same or similar information concerning oral witness statements and interview notes among other information. *See* Ex. 1 (Pls' Amended Objections and Responses to Defendants' Second Set of Interrogatories).  Plaintiffs expressly claimed work product related to these interrogatories in their correspondence with Defendants. *See* Ex. 3 (August 16, 2011 Letter, at 2) (citing *Hickman v. Taylor,* 329 U.S. 495, 512-13 (1947) and noting the Eleventh Circuit has also held that "materials [that] consisted of witness statements and notes of interviews with witnesses" without question constitute work product. *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466 (11th Cir. 1984)).  Finally, during the meet and confer process, as Defendants note, Plaintiffs raised the work product objection.

Defendants' attempt to obtain information that is protected by the work product doctrine by arguing the objection has been waived is a drastic step that is rarely taken by the courts generally and not in this instance where Plaintiffs have presented their objection at various times and where it is apparent that the failure to expressly use the phrase "work product" was an oversight.  This Court recently rejected Plaintiffs' argument that Defendants had waived their objections on the basis of attorney client privilege and work product as it relates to a ***draft press***

21

*release and related communications* where Defendants' counsel belatedly asserted they were

"involved in the preparation of the press release" and thus the drafts and communications were

privileged and did not need to be released.  Doc. 332, at 9-10.  In that instance, Plaintiffs argued

waiver because unlike in this instance, Defendants had *never* raised the objections until they filed

their briefing and there were no other related interrogatories besides those specifically requesting

the draft press releases.  Despite these circumstances, this Court stated, "[n]evertheless, the fact

remains that those privileges are raised here." *Id.* at 10.  Based on this ruling, it is clear that this

Court – in addition to many others – do not take waiver lightly and reserve it for the most

egregious of circumstances.

 Moreover, "courts have found that pursuant to Rule 26(b)(5) which concerns withholding

information on the basis of privilege, the failure to timely object on the basis of privilege does

not result in an automatic waiver." *B&S Equipment Co., Inc. v. Truckla Services, Inc.*, Nos.

09–3862, 10–0832, 10–1168, 10–4592, 2011 WL 2637289, at *5-6 (E.D. La. Jul 06, 2011)

(noting "the circumstances surrounding the objections must be weighed" and finding that waiver

was not justified where the plaintiff "made no allegations that the Defendants failure to timely

respond was due to unjustified delay, inexcusable conduct, bad faith, or other flagrant

violations"); *see also Applied Systems, Inc. v. Northern Ins. Co. of New York*, No. 97 C 1565,

1997 WL 639235, at *2 (N.D. Ill. Oct. 7, 1997) ("The discovery rules do not automatically

require waiver upon a party's failure to object. Rather, waiver of a privilege is a serious sanction

reserved for cases of unjustified delay, inexcusable conduct, bad faith, or other flagrant

violations."); *Jones v. American General Life and Accident Ins. Co.*, No. CV 101–003, 2002 WL

32073037, at *6 n.8 (S.D. Ga. Dec. 4, 2002) ("Untimely objections to interrogatories requesting a

party to identify documents does not waive claims of privilege that are asserted in response to requests for the production of those documents.").

In this instance, Defendants rest their entire argument on the fact that Plaintiffs did not specify the phrase "work product" in their response, despite the fact that other language in their response indicates their intent.  This was an oversight of which Defendants are aware given the multiple times Plaintiffs have raised this objection in relation to witness statements and interview notes in their interrogatory responses and correspondence with Defendants.  Defendants have identified no reason why this court should apply such a drastic step, and if waiver was not appropriate in the context of draft press releases, it is likewise not appropriate in this instance. Additionally, Defendants' case law does not hold otherwise or mandate a finding of waiver.  *See Bailey Industries, Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 667-68 (N.D. Fla.2010) (finding waiver because the party failed to file *any* written objection at all in its response to a subpoena).

### III.  CONCLUSION

For all the above reasons, this Court should deny Defendants' Motion to Compel Communications from Third-Party Witnesses because the draft declarations and communications are attorney work product.

Dated: May 9, 2012                                    Respectfully submitted,

                                                      /s/ Terrence Collingsworth
                                                      Terrence Collingsworth
                                                      (DC Bar No. 471830)
                                                      Conrad & Scherer
                                                      1156 15th Street NW, Suite 502
                                                      Washington D.C. 20005
                                                      Phone: 202-543-4001
                                                      Fax: 202-527-7990
                                                      tc@conradscherer.com

CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following:

William Anthony Davis, III
tdavis@starneslaw.com
H. Thomas Wells, III
twells@starneslaw.com
Philip G. Piggott
ppiggott@starneslaw.com
STARNES DAVIS FLORIE LLP
PO Box 598512
Birmingham , AL 35259-8512
205-868-6000

Laina Lopez
lcl@bcr-dc.com
Thomas Edward Wilson
twilson@bcr-dc.com
BERLINER CORCORAN & ROWE LLP
1101 17th Street Nw, Suite 1100
Washington, DC 20036
202-293-5555

William H. Jeffress, Jr.
william.jeffress@bakerbotts.com
David A. Super
david.super@bakerbotts.com
Rachel B Cochran
 rachel.cochran@bakerbotts.com
Sara E Kropf
sara.kropf@bakerbotts.com
Bryan H. Parr
bryan.parr@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington , DC 20004-2400
202-639-7700

Bruce F. Rogers
brogers@bainbridgemims.com
John W. Clark IV
jclark@bainbridgemims.com
Bainbridge, Mims, Rogers, Smith, LLP
600 Luckie Drive, Suite 415
Birmingham, AL 35253
205-879-1100

/s/ Terrence Collingsworth
_____
Terrence P. Collingsworth

24