# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CLAUDIA BALCERO GIRALDO, et al.,** } | |
| Plaintiffs, } | |
| v. } | Case No.: 2:09-CV-01041-RDP |
| **DRUMMOND COMPANY, INC., et al.,** } | |
| Defendants. } | |

## MEMORANDUM OPINION

The court has before it Defendants Drummond Company, Inc. and Drummond Ltd.'s Motion to Compel Communications from Third Party Witnesses (Doc. #370) filed on May 2, 2012. The Motion (Doc. #370) has been fully briefed (*see* Docs. #370, 376, 377). In accordance with the court's orders (Docs. # 379, 381) of May 17 and May 31, 2012, Plaintiffs have now provided to the court, for *in camera* inspection, copies of all handwritten documents from paramilitaries, as well as any and all questionnaires and "drafts."  (*See* Doc. #379). The discoverability of these documents is the issue currently before the court for review.

**I.      Background**

As explained in the Order (Doc. #379) of May 17, 2012, Defendants contend that a recent deposition of a Colombian paramilitary reveals that Plaintiffs have improperly withheld certain documents responsive to Defendants' document requests, including at least one handwritten statement from a Colombian paramilitary. (*See* Doc. #370 at 1, 2, citing Exh. A, ¶ 6). During his testimony on March 16 and April 20, 2012, Jose Del Carmen Gelvez Albarracin ("Gelvez") revealed that he handwrote a declaration in Spanish and provided that document to counsel for Plaintiffs.

(*See* Doc. #370 at 4-5). Defendants believe that other such documents might exist. Plaintiffs' counsel has declined to produce the handwritten document(s), asserting that they are protected by the work product doctrine because certain written statements were created in response to a questionnaire created by Plaintiffs' counsel and/or are drafts pertaining to the "evolution" of the final declarations. (*See* Doc. #370 at 6; *see also* Doc. #376 at 6). The parties fundamentally disagree as to whether such documents were requested by Defendants, and whether case law supports or discourages production.[1]

## II.     Legal Standards

Under the Federal Rules of Civil Procedure, a party is permitted to obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense . . . ". FED. R. CIV. P. 26(b)(1). The information sought does not need to be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Adkins v. Christie*, 488 F.3d 1324, 1330 (11th Cir. 2007). District courts can limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit . . .". FED. R. CIV. P. 26(b)(2)(c)(iii). However, courts are required to accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement. *Hickman v. Taylor*, 329 U.S. 495 (1947). In other words:

> [D]istrict courts have broad discretion in fashioning discovery rules, but they are bound to adhere "to the liberal spirit of the [Federal] Rules." *Burns v. ThiokolChem. Corp.*, 483 F.2d 300, 305 (5th Cir. 1973). The Federal Rules do not give district courts "blanket authorization . . . to prohibit disclosure of information whenever it

---

[1] Because the undersigned does not operate as a "gotcha" Judge, the court does not herein consider Defendants' argument that Plaintiffs have waived any work product objection to the contested production. (*See* Doc. #376 at 20-23).

> deems it advisable to do so, but are rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." *Williams v. City of Dothan, Ala.*, 745 F.2d 1406, 1416 (11th Cir. 1984) (quoting *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d. Cir. 1983)).

*Adkins v. Christie*, 488 F.3d 1324, 1331 (11th Cir. 2007).

A party may seek an order to compel discovery if an opposing party fails to respond to discovery requests or has an evasive or incomplete response. FED. R. CIV. P. 37(a)(3)(A), (B). In ruling on a discovery motion, courts consider the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in a particular case before the court. *See Patterson v. Avery Dominion Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

### III. Analysis

#### A. Documents Pertaining to Jairo Jesus Charris Castro

##### 1. Original Handwritten Declaration

The first document provided to the court for *in camera* review is an eight page document handwritten in Spanish by Jairo Jesus Charris Castro ("Castro") (Plaintiff's Exhibit 1 for Castro as provided in the documents for *in camera* review). Plaintiffs' counsel represent to the court that it was made for the purpose of the pending litigation *after* Castro had met with Colombian counsel and discussed the witness' knowledge regarding the allegations made in this case. Plaintiffs' argument is that this document is draft affidavit not fairly encompassed in Defendants' document request for "communications" and that the document is entitled to protection as attorney work product. (Doc. #376 at 5-6). Plaintiffs cite Wright & Miller for the contention that "[r]ecent cases have generally held that draft affidavits, and communications with counsel relating to affidavits, are covered by the work-product rule." (Doc. #376 at 6) (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal

3

Practice and Procedure § 2024 (3d. ed. 2012)). Defendants counter that verbatim witness statements are not work product and that the documents at issue are not "draft" declarations. (*See* Doc. #377 at 1-2).

Under the work product rule, the mental processes of an attorney are sheltered to allow for the attorney's analysis and preparation of a case. 23 Am. Jur. 2d Depositions and Discovery § 45. What a witness knows, however, is not the work of counsel. There is nothing in the record or before the court *in camera* to suggest that the original handwritten declaration provided by Castro was a draft. Although Plaintiffs' counsel represents to the court that the original statement was made after a meeting with Colombian counsel, Castro was writing down his own recollections in his own words. He was not filling in the blanks or simply answering a questionnaire. In fact, it is doubtful that Castro himself considered this original declaration to be a "draft." Therefore, Defendants' Motion to Compel Communications from Third-Party Witnesses (Doc. #370), as it relates to the original declaration of Jairo Jesus Charris Castro, is due to be granted.

2.  **Interim "Draft" Declarations**

In addition to the first document discussed above, Plaintiffs have provided for the court's review an additional six (6) "draft" declarations. The second document is an original declaration typed in English and adds attorney questions to Castro; in the third document Castro responds, in handwritten Spanish, to the questions posed to the original declaration; the fourth document is a July 21, 2009 typed declaration which appears to add some of Castro's responses to the first set of questions and includes some attorney notes; the fifth document is an undated declaration of Castro *which has already been produced to Defendants* (PLS 00000010-00000024);[2] the sixth document

---

[2] Obviously, there is no dispute over this document.

4

is a statement handwritten by Castro in Spanish, reportedly made in "response to conversations the witness had with Plaintiffs' legal team;" and finally the seventh document is a 16-page statement handwritten by Castro in Spanish on or about May 15, 2012, reportedly made "in response to conversations the witness had with Plaintiffs' legal team in furtherance of this litigation and in anticipation of his sworn testimony taken May 16, 2012."

It is clear to the court, upon *in camera* review, that documents 2 and 4 as set out above are insulated from production under the attorney work product doctrine. These documents contain the mental impressions of attorneys and constitute the work of a legal team. As related thereto, Defendants' Motion to Compel (Doc. #370) is due to be denied.

An analysis of documents 3, 6, and 7, however, presents an interesting question. In those documents, Castro appears to be answering, in the only means practicable for a jailed Colombian paramilitary, direct questions from counsel. Much like an attorney cannot be forced to write out all a witness tells him and pass on to opposing counsel (*see* Doc. #332 at 4), it would seem that the production of these later handwritten statements would be akin to requiring the production of an attorney's questions posed to a witness. *See Hickman v. Taylor*, 329 U.S. 495, 495-510 (1947) ("Examination into a person's files and records, including those resulting from the professional activities of an attorney, must be judged with care. . . . Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.").

But here, the extenuating circumstances cannot be ignored. *See Hickman*, 329 U.S. at 511 ("Where relevant and non-privileged facts remain hidden in an attorney's file and where production of these facts is essential to the preparation of one's case, discovery may properly be had."). The court takes Plaintiffs' counsel at their word in representing to the court that *all* handwritten statements provided by Castro were done so *prior to* May 16, 2012, the date Castro provided his

5

testimony pursuant to the letters rogatory process. And under "normal" circumstances, the fact that Defendants thereafter had the opportunity to question the third party witness would close the book on the matter and prevent disclosure. However here the parties are dealing with jailed paramilitaries who are hesitant to talk and will unequivocally not be available for trial testimony. The written statements of these paramilitaries might "be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty." *Hickman*, 329 U.S. at 511. Because such are the circumstances here, Defendants' Motion to Compel Communications from Third-Party Witnesses (Doc. #370), as it relates to the remaining "drafts" that were penned by Castro himself without any contemporaneous comments from Plaintiffs' counsel (documents 3, 6 and 7), is due to be granted.

**B.    Documents Pertaining to Jose Gelvez Albarracin**

Plaintiffs provided to the court for *in camera* review ten (10) documents related to witness Jose Gelvez Albarracin ("Gelvez").[3] The first is Gelvez's original handwritten declaration dated February 25, 2011. Counsel for Plaintiffs represent to the court that this original declaration was penned at Colombian counsel's request for the purpose of the litigation, and that it contains largely irrelevant information and some information which could put Gelvez in danger if revealed. Once again, Gelvez's declaration is clearly the "work" of a third party witness, and not the work of counsel, and this conclusion is made clear in this instance by Plaintiffs' counsels' frankness that it

---

[3] Document 10 is not at issue here. It is the witnesses' signed declaration which was provided to counsel for Defendants as PLS 00002797-2806.

contains largely information irrelevant to the case currently before the court.[4] (*See* Section III.A.1, *supra*). The security concern, not fleshed out in the briefing, provides at least some explanation for why the original declaration might properly be marked as confidential under the terms of the Protective Order, but such a concern is not a ground for preventing production of the documents. (*See generally* Doc. #380). Therefore, Defendants' Motion to Compel Communications from Third-Party Witnesses (Doc. #370), as it relates to the first declaration that was penned by Gelvez himself without any contemporaneous comments from Plaintiffs' counsel (Document 1), is due to be granted.

The next two documents, 2 and 3, are clearly work product based on the court's *in camera* review. These documents contain the mental impressions of attorneys and constitute the work of a legal team. As related thereto, Defendants' Motion to Compel (Doc. #370) is due to be denied.

Document 4, as provided to the court for *in camera* review, is not penned by hand. It is typed in Spanish and Plaintiffs' counsel represents to the court that it contains information "that was told to Plaintiffs' counsel." The court takes Plaintiffs' counsel at its word that this document was not created by Gelvez, and instead is more closely akin to an attorney being forced to write out all a witness tells him and pass it on to opposing counsel. (*See* Doc. #332 at 4). Therefore, Defendants' Motion to Compel, as it relates to Gelvez Document 4, is due to be denied.

Documents 5, 6, 7, and 9 are also clearly protected by the work product doctrine. A review of the document makes clear that attorneys were plainly using their thought processes and mental impressions of the case to create a synthesized declaration for Gelvez. As related thereto, Defendants' Motion to Compel (Doc. #370) is due to be denied.

---

[4] Nevertheless, the court notes the declaration contains information that may lead to the discovery of admissible evidence.

Document 8 presents the closest question. It is declaration, clearly typed by Plaintiffs' counsel after synthesizing information obtained from Gelvez, but also includes Gelvez's handwritten notes of November 15, 2011 on the declaration as drafted. Because the draft declaration was produced by use of attorney thought processes, it need not be produced. However the actual handwritten statements of Gelvez are the work of a third party witness, and are Gelvez's personal recollections of the events that transpired as possibly relevant to this case. Because of the extenuating circumstances making discovery in this case particularly challenging, Defendants' Motion to Compel (Doc. #370), as it relates to Gelvez Document 8, is due to be granted in part and denied in part.

### C. Documents Pertaining to Libardo Duarte

Five (5) documents relative to Libardo Duarte have been provided to the court for *in camera* review.[5] Of those, Documents 1, 3, and 4 are protected from disclosure by the work product doctrine. These documents, as is apparent from the court's *in camera* review, are the work of Plaintiffs' counsel, containing the mental impressions of the legal team. *See Hickman*, 329 U.S. at 495-510. Therefore, Defendants' Motion to Compel (Doc. #370), as it relates to Duarte Documents 1, 3, and 4, is due to be denied.

Document 2 contains notes handwritten in Spanish by Duarte, apparently in response to a draft of his declaration that he reviewed in February 2011. It does not appear that Duarte was responding to pointed questions from Plaintiffs' counsel, but rather was noting his own corrections to the draft provided to him. While such notations may not be admissible in a customary case, here once again, extenuating circumstances control. (*See* Section III.A.2, *supra*). The parties are dealing

---

[5] Document 5 has already been produced to Defendants and therefore is, of course, not at issue here.

with jailed paramilitaries who are hesitant to talk and will unequivocally not be available for trial testimony. *See Hickman*, 329 U.S. at 511. Therefore, Defendants' Motion to Compel (Doc. #370), as it relates to Duarte Document 2, is due to be granted.

**IV.     Conclusion**

For the reasons set out, Defendants' Motion to Compel Communications from Third-Party Witnesses (Doc. #370) is due to be granted in part and denied in part as described herein. A separate order shall be entered.

**DONE** and **ORDERED** this ____15th____ day of June, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE