# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CLAUDIA BALCERO GIRALDO**, *et al.*, Plaintiffs, | Case No.: 2:09-CV-1041-RDP |
| v. | **OPPOSED** |
| **DRUMMOND COMPANY, INC.,** *et al.*, Defendants. | |

### DEFENDANT JAMES L. ADKINS' MEMORANDUM IN SUPPORT OF HIS MOTION TO STAY CERTAIN DISCOVERY AS TO ADKINS PENDING RESOLUTION OF HIS MOTION TO DISMISS AND FOR A PROTECTIVE ORDER

COMES NOW defendant James L. Adkins ("Adkins") without waiver of any defenses, including all of those set forth in his pending Renewed Motion to Dismiss Plaintiffs' Third Amended Complaint (Dkts. 303, 304, 305, 310), and, pursuant to Federal Rule of Civil Procedure 26(c) and this Court's inherent power to manage its docket, hereby respectfully requests that the Court stay the discovery propounded by Plaintiffs on Adkins on May 15, 2012, until such time as the Court is able to rule upon Adkins' pending Renewed Motion to Dismiss the TAC.

### I.     Procedural History

On March 11, 2011, this Court – following oral argument – issued a Memorandum Opinion (Dkt. 141) and Order, granting Adkins' Motion to Dismiss the

Second Amended Complaint ("SAC," Dkt. 55) for lack of personal jurisdiction. Primarily, the Court granted dismissal because Plaintiffs failed to allege that Adkins purposefully directed any of his alleged activities toward Alabama. (*Id.* at 9-17). The Court held that Plaintiffs failed to meet the specific jurisdiction test *even though* Plaintiffs said they could, with some discovery, "flesh out their allegations by establishing even more facts showing that Defendant Adkins took part in meetings in Alabama regarding plans to pay the AUC." (*Id.* at 15-16, quoting Dkt. 91 at 32). The Court held that such additional facts would "not [on their own] be enough to overcome all of the other factors which weigh against jurisdiction." (Dkt. 141 at 16). Those "other factors" are: (a) Plaintiffs have not alleged that Adkins purposefully directed any of his alleged tortious actions toward Alabama, and (b) Adkins has shown that exercising personal jurisdiction over him in Alabama does not comport with traditional notions of fair play and substantial justice. Accordingly, the Court denied jurisdictional discovery, holding:

> Jurisdictional discovery is simply not appropriate on Plaintiffs' unplead, speculative "hunch" that Adkins' limited contacts with Alabama had something to do with the cause of action alleged the Second Amended Complaint. . . . Short of dreaming up outlandish scenarios that could justify allowing jurisdictional discovery inquiring whether Adkins' conduct in Alabama was related in some way to Plaintiffs' cause of action, the court can envision no set of facts discovered at jurisdictional discovery that could possibly equate to Adkins' *purposeful*

2

> *availment* of *this* forum. . . . There is nothing in the Second Amended Complaint alleging that Adkins purposefully directed any of his allegedly tortious conduct toward Alabama or that he purposefully availed himself of the protection of the forum, and thus this case stands in stark contrast to the contract decisions cited by Plaintiffs on purposeful availment (including *Burger King*, which was referenced at the hearing). Therefore, the court concludes jurisdictional discovery is not appropriate in this case and it is not a close question.

(*Id.* at 15-17, internal citations omitted; internal emphasis in original).

Following the Court's ruling on *inter alia* Adkins' Motion, discovery began between the remaining Defendants and Plaintiffs, and on September 29, 2011, this Court entered a Scheduling Order (Dkt. 235) governing all pre-trial matters, including discovery. Paragraph 2 of that Order required all discovery to be commenced so that it may be completed by June 29, 2012. (*Id.* at 1 ¶2).

Also on September 29, 2011, Plaintiffs filed a Third Amended Complaint ("TAC") (Dkt. 233), again naming Adkins as a defendant. Plaintiffs did not serve Adkins with the TAC until January 26, 2012. While the merits allegations against Adkins in the TAC remained nearly identical to those in the SAC, Plaintiffs attempted to improve their jurisdictional allegations against Adkins, as reflected by TAC paragraph 165.

On January 30, 2012, just four days after Plaintiffs had served Adkins with the TAC, Adkins filed a Renewed Motion to Dismiss, again raising lack of personal

jurisdiction for *inter alia* failure to allege any purposeful availment of Alabama by Adkins. (*See* Dkts. 303, 304, 305). As Adkins argues in that Renewed Motion, the language of TAC paragraph 165 may be new, but it fails to cure any of the jurisdictional deficiencies identified by this Court in its Order granting Adkins' original Motion to Dismiss. In other words, the TAC just rearranges deck chairs on a sinking ship.

On February 6, 2012, Plaintiffs filed an opposition to Adkins' Renewed Motion. (Dkt. 306). In that opposition, Plaintiffs argued two theories of personal jurisdiction not argued in opposition to Adkins' original Motion to Dismiss: (1) that Adkins is subject to the exercise of specific personal jurisdiction based on a "conspiracy theory" (*id.* at 6-10), and (2) that Adkins is subject to the exercise of general personal jurisdiction based on Adkins' supposed continuous, systematic contacts with Alabama from 1995-2002 (*id.* at 10-13). In support of these theories, Plaintiffs submitted a declaration of witness Jaime Blanco Maya ("Blanco"), who declared that Adkins "went back to Alabama two or three times to secure agreement from Garry Drummond to fund the AUC"; "returned on a monthly basis to the forum and often smuggled $10,000 cash from Drummond in Alabama to the AUC in Colombia"; and "report[ed] back on the AUC's compliance with the plan to Drummond in Alabama on a monthly basis across six or more years" (*Id.* at 9-10).

4

In that February opposition, Plaintiffs argued that they needed to take certain discovery to address their general jurisdictional theory that Adkins had, at one time, continuous, systematic contacts with Alabama so as to justify the exercise of general jurisdiction. Specifically, they said they needed discovery on (1) whether Adkins "stayed several days or weeks" on his trips to Alabama, and (2) "whether he kept an apartment in Alabama" (*id.* at 12). Plaintiffs did not at that time, however, serve Adkins with any discovery requests. In fact, as discussed in more detail below, Plaintiffs did not serve Adkins with any discovery requests until May 15, 2012, and none of those requests address the issues specifically raised in the Plaintiffs' February opposition brief.

On February 13, 2012, Adkins filed a reply brief. (Dkt. 310). In it, Adkins demonstrated why the conspiracy theory of jurisdiction must fail because, once again, Plaintiffs do not allege that Adkins directed any of his alleged wrongful conduct toward Alabama. (*Id.* at 2-9). Adkins also demonstrated why Plaintiffs' general jurisdiction argument must fail because Plaintiffs have not established that Adkins has had, at any time, any of the paradigmatic indicators of being "essentially at home," *Goodyear Dunlop Tires Oper. S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011), in Alabama. (Dkt. 310 at 9-16).

Further, Adkins pointed out the many reasons (*id.* at 14-16) why even limited

discovery regarding Plaintiffs' general jurisdiction theory would be unhelpful to the Court:

> (1) Even if Adkins spent a week or more in Alabama (he did not) per trip, Adkins still is not subject to general jurisdiction because the paradigmatic indicators of general jurisdiction – domicile, property ownership, office – are absent, both in 1995-2002 and certainly now.
> (2) As for keeping an apartment in Alabama, Adkins twice declared "[a]t no time have I owned, possessed, leased, used, or had an interest in any real property in Alabama." (First Adkins Decl. ¶4; Second Adkins Decl. ¶5), and Plaintiffs have not pled otherwise.
> (3) Plaintiffs' lawyers "took Adkins' deposition in the *Romero* case" (Dkt. 141 at 16), and had every interest in asking about Adkins' Alabama contacts at that time (*id.*).

Since the filing of the TAC, Plaintiffs have been using the discovery process to marshal evidence – such as Blanco's testimony – about Adkins' supposed involvement in Colombia in some of the underlying events. (*See Baloco v. Drummond,* 7:09-cv-557, Dkt. 90-3, excerpts of Letters Rogatory 4/19/12 hearing of Jaime Blanco Maya taken for the *Balcero* case).

On May 15, 2012, Plaintiffs sought – for the first time – discovery from Adkins. On that date, Plaintiffs' counsel sent Adkins' counsel an email (Ex. A) containing three forms of broad and extensive discovery requests directed toward Adkins: (1) Interrogatories (Ex. B), (2) Requests for Document Production ("RFPs") (Ex. C), and (3) Requests for Admission ("RFAs") (Ex. D).

The Interrogatories, RFAs, and RFPs directed toward Adkins seek information

6

related to the merits of the claims and are not related to the pending Renewed Motion to Dismiss. None of the requests ask Adkins, for example, whether he "stayed several days or weeks" on his trips to Alabama, or "whether he kept an apartment in Alabama" – despite Plaintiffs' supposed need (Dkt. 306 at 12) for that information. Moreover, much of the discovery could be – and indeed, may already have been – obtained from other Defendants, as Plaintiffs implicitly acknowledge. RFP No. 22, for example, seeks production of documents "to the extent these have not already been produced in response to discovery requests directed at Drummond Company, Inc. and Drummond Ltd." (Ex. C at 8). And, because the discovery requests are made pursuant to Rules 33, 34, and 36 – all of which contemplate discovery against a "party" – Plaintiffs implicitly acknowledge that Adkins must answer only to the extent he is in fact determined to be a party defendant subject to the Court's jurisdiction. Further evidence of Plaintiffs' implicit acknowledgment that these discovery requests are proper only as against a party subject to the Court's jurisdiction is RFP No. 4, which seeks documents upon which Adkins relies to "support any assertion in your Answer" (Ex. C at 5). Adkins, of course, will not have to file an "Answer" unless and until his pending Renewed Motion to Dismiss is denied.

Consistent with Federal Rules of Civil Procedure 26, 33, 34, and 36, Adkins served Plaintiffs, through counsel, written objections to each of the pending discovery requests. And, for the reasons that follow, Adkins now respectfully requests that the

Court stay the discovery propounded on Adkins on May 15, 2012 – specifically, the RFAs, RFPs, and Interrogatories – until such time as it is able to rule upon his pending Renewed Motion to Dismiss the TAC, and to enter a protective order pursuant to Rule 26(c) to that effect.

**III.   Argument – A Stay of the Pending Discovery As To Adkins Is Warranted Under the Circumstances**

   **A.   Standards for Issuing a Stay of Discovery**

Courts have "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Fujita v. U.S.,* 416 Fed. Appx. 400, 402 (5th Cir. 2011) (quoting *Petrus v. Bowen,* 833 F.2d 581, 583 (5th Cir. 1987)). *See also Crawford-El v. Britton,* 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."); *Redford v. Gwinnett Cty. Jud. Cir.*, 350 Fed. Appx. 341, 346 (11th Cir. 2009) ("Matters pertaining to discovery are committed to the sound discretion of the district court") (internal citations and quotations omitted).

So, for example, where a motion to dismiss raises "serious questions regarding the viability" of a complaint, a court is well within its discretion to stay discovery pending resolution of the motion to dismiss. *Redford,* 350 Fed. Appx. at 346. As the Eleventh Circuit has said:

> any legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the

8

> discovery stage, if possible. Allowing a case to proceed through the pretrial processes with an invalid claim that increases the costs of the case does nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system.

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997). *See also Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1292-93 (11th Cir. 2005) (same).

To determine whether to stay discovery pending resolution of a motion to dismiss pursuant to Rule 26(c), a court should inquire whether "discovery will impose undue burden or expense without aiding the resolution of the dispositive motions[.]" *Fujita,* 416 Fed. Appx. at 402. *See also Petrus,* 833 F.2d at 583 ("Nothing that Petrus could have learned through discovery could have affected the resolution of the defendants' 12(b)(6) motion. We hold that the district court properly deferred discovery while deciding whether the defendants were proper parties to the action.").

That inquiry balances the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for any discovery. *See Jackson-Bear Group, Inc. v. Amirjazil*, 2011 WL 720462, 2011 U.S. Dist. LEXIS 17329, at *2 (M.D. Fla. Feb. 22, 2011). Accordingly, a court should take a "preliminary peek at the merits of the motion to dismiss to see if it appears to be clearly meritorious and truly case dispositive." *Id. See also Minton v. Jenkins,* 2011 WL 2038700, at *1 (N.D. Fla. May 24, 2011) (same). If, following a "preliminary

peek," the court determines that there exists a "clear possibility that the motion will be granted" and an action may be "entirely terminated," the burden on the defendant of responding to discovery requests outweighs any benefit to the plaintiffs, and discovery should be stayed. *Minton,* 2011 WL 2038700, at *2. *See also Wedemeyer v. Pneudraulics, Inc.*, 2011 WL 4543193, at *2 (S.D. Ga. Sept. 15, 2011) (conducting "preliminary review of defendant's dismissal motion" and granting stay of discovery because "the Court find that it has considerable heft and likely will dispose of this case."); *Don Reinke Restore Savannah Dev. v. Darby Bank & Trust Co.,* 2011 WL 674896, 2011 U.S. Dist. 41072, at *5 (S.D. Ga. Feb. 17, 2011) (following preliminary review of motion to dismiss, concluding motion "may dispose of this case, obviating further discovery").

Although motions for a stay of discovery typically arise in the context of Rule 12(b)(6) motions to dismiss, they can arise – and be granted – in the context of a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). In *Jackson-Bear*, for example, defendants moved to dismiss for lack of personal jurisdiction and to stay discovery. The court took a "preliminary peek" at the motion to dismiss and determined that defendants had raised sufficiently "meritorious challenges to the Complaint" to merit a 60-day stay of discovery subject to extension if, at the end of that time frame, the motion to dismiss was still pending. 2011 WL 720462, 2011 U.S. Dist. LEXIS 17329, at *3. *Cf. Fidelity & Dep. Co. of Md. v. Am. Consertech, Inc.,*

10

2008 WL 4080270, 2008 U.S. Dist. LEXIS 66533, at *6 (S.D. Ala. Aug. 28, 2008) (noting that, if defendant had believed that her motion to dismiss for lack of personal jurisdiction "was likely to be granted, she could have requested a stay of discovery pending a ruling on her motion").

> **B. A Stay of the Discovery Pending As To Adkins Is Appropriate Pending Resolution of His Renewed Motion to Dismiss**

In this case, having to respond to the discovery propounded on Adkins on May 15 will impose an undue burden and expense on Adkins without aiding the resolution of the dispositive Renewed Motion to Dismiss for lack of personal jurisdiction that is pending before this Court.

> **1. The Motion to Dismiss Is Meritorious and If Granted, Will Be Dispositive of the Case Against Adkins, Hence Obviating Party Discovery Against Him**

Taking a "preliminary peek" at Adkins' Renewed Motion to Dismiss will demonstrate to this Court that it is meritorious and case-dispositive. Indeed, Adkins' Renewed Motion to Dismiss seeks dismissal based on lack of personal jurisdiction on largely the same grounds as his original Motion to Dismiss, which this Court granted in March 2011. (*See* Dkt. 141 at 9-17). Specifically, neither the TAC nor the Blanco Declaration, submitted by the Plaintiffs in support of jurisdiction, sufficiently address: (1) the lack of Adkins' purposeful availment of Alabama, (2) the fact that Adkins could not reasonably expect to be haled into court in Alabama, and (3) the lack of

11

continuous and systematic business ties between Adkins and Alabama. Thus, just as there was "nothing in the Second Amended Complaint alleging that Adkins purposefully directed any of his allegedly tortious conduct toward Alabama or that he purposefully availed himself of the protection of the forum," (*id.*), so too is there "nothing" in the TAC so alleging. (Dkt. 141 at 15). As one court put it when granting a motion to stay discovery pending resolution of a dispositive motion, "this case appears still-born, and the proposed amended complaint [], at best seems futile in that it simply restates the same claim a little more eloquently, at best rearranging deck chairs on a sinking ship." *Wedemeyer*, 2011 WL 4543193, at *2.

For these reasons, the claims against Adkins should be dismissed for lack of personal jurisdiction, hence obviating any party discovery against him. As *Chudasama* held, "any legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible." 123 F.3d at 1368.

Requiring Adkins to respond to the pending discovery now, when there exists such a strong basis for this Court to find Adkins not subject to the jurisdiction of this Court, unnecessarily increases the costs of the case and "does nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system." *Id.* Indeed, as discussed *supra,* many of the discovery requests (e.g., RFP No. 22) appear duplicative of prior

requests made to other Defendants and almost all of them could be made (if they have not already been made) against other Defendants already determined to be subject to this Court's jurisdiction.

Moreover, requiring Adkins to respond to the pending discovery would require him, implicitly, to submit to the jurisdiction of this Alabama Court, even though it has yet to be determined if he is subject to jurisdiction here. *See Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 730 n.7 (11th Cir. 1982) ("the defendant has a legitimate and protectable interest in avoiding the time, effort, and expense of discovery when the court's jurisdiction to hear the merits may be lacking.").

**2.    The Motion to Dismiss May Be Resolved Without Any of the Propounded Discovery, And The Burden of Adkins Having to Respond Outweighs Any Prejudice to Plaintiffs**

For the following two reasons, the pending Renewed Motion to Dismiss can be resolved without resort to the pending discovery, and the burden on Adkins of responding to Plaintiffs' discovery requests outweighs any benefit to Plaintiffs.

*First*, Plaintiffs themselves seem to agree that these discovery requests apply only to the extent Adkins is determined to be a party defendant subject to the jurisdiction of this Court. (*See, e.g.,* RFP No. 4). And, Plaintiffs do not contend that they need answers to the pending RFAs, RFPs, or Interrogatories for this Court to rule on Adkins' Renewed Motion. As mentioned, the only sort of jurisdictional discovery Plaintiffs requested in opposition to Adkins' Renewed Motion addresses general

13

jurisdiction, specifically the amount of time Adkins used to spend in Alabama on his trips to return home to West Virginia and whether he rented an apartment in Alabama. And, as mentioned, none of the RFAs, RFPs, or Interrogatories specifically address those topics.

*Second*, as mentioned, Plaintiffs have been engaged in extensive discovery with other Defendants and apparently have been using the discovery process to marshal evidence – e.g., the declaration and testimony of Blanco – in support of their personal jurisdiction and merits theories against Adkins. Indeed, Plaintiffs asked this Court to consider Blanco's Declaration in ruling on Adkins' Renewed Motion. There is therefore no need to subject Adkins, a possible non-party, to the burdens and expense of the pending party discovery when all discovery necessary to resolving the instant motion already has been conducted. *See Averhart v. Shettle,* 16 F.3d 1225, 1994 U.S. App. LEXIS 3002, at *9 (7th Cir. Feb. 18 1994) (unpublished opinion) (finding no abuse of discretion in denying plaintiff inmate, in a consolidated case by him and other inmates, the opportunity to conduct discovery because "All discovery necessary to the prosecution of the overcrowding and double-celling claims was conducted by able counsel for the plaintiff's in the consolidated cases; and we are satisfied that nothing Averhart could have obtained through discovery would have prevented the dismissal of the remaining claim.").

## III.    Conclusion

Based upon the foregoing, Adkins respectfully requests that this Court stay the pending discovery – the Interrogatories, RFAs, and RFPs propounded on Adkins on May 15, 2012 – as to Adkins until such time as the Court is able to rule upon Adkins' pending Renewed Motion to Dismiss Plaintiffs' TAC, and enter a protective order pursuant to Federal Rule of Civil Procedure 26(c) providing for such a stay.

DATED:    June 15, 2012

    /s/ Bruce F. Rogers
BRUCE F. ROGERS (ASB-2675-E66B)
JOHN W. CLARK IV (ASB-5187-O77C)
BAINBRIDGE, MIMS, ROGERS & SMITH, LLP
The Luckie Building, Suite 415
600 Luckie Drive (35223)
Post Office Box 530886
Birmingham, Alabama 35253
Telephone:  (205) 879-1100
Facsimile:   (205) 879-4300
E-mail:       brogers@bainbridgemims.com
                jclark@bainbridgemims.com

THOMAS E. WILSON (*pro hac vice*)
LAINA C. LOPEZ (*pro hac vice*)
BERLINER, CORCORAN & ROWE, LLP
1101 Seventeenth Street, N.W., Suite 1100
Washington, D.C. 20036
Telephone:  (202) 293-5555
Facsimile:   (202) 293-9035
E-mail:       twilson@bcr-dc.com
                lcl@bcr-dc.com

*Attorneys for Defendant James L. Adkins*

## **CERTIFICATE OF SERVICE**

It is hereby certify that on <u>June 15, 2012</u>, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to the following:

Terrence P. Collingsworth
Christian A. Levesque
Rachel A. Sheridan
Conrad & Scherer, LLP
731 8th Street, SE
Washington, DC 20003

William R. Scherer
Conrad & Scherer, LLP
633 South Federal Highway
Ft. Lauderdale, Florida 33301

Eric J. Hager
Conrad & Scherer, LLP
Avenida Repupica de El Salvador
500 e Irlanda
Edificia Siglo XXI, PH Oficina W
Quito, Ecuador

Peter J. Cambs
Michael R. Hugo
Gaqry P. Falkowitz
Parker Waichman Alonso, LLP
3301 Bonita Beach Road, Suite 101
Bonita Springs, Florida 34134

William A. Davis, III
H. Thomas Wells, III
Benjamin T. Presley
Starnes Davis & Florie LLP
Post Office Box 59812
Birmingham, Alabama 35259

William H. Jeffress, Jr,
David A. Super
Sara E. Kropf
Rachel B. Cochran
Baker Botts L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC 20004

                                         */s/ Bruce F. Rogers*
                                         Of Counsel