# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **CLAUDIA BALCERO GIRALDO, et al.,** | } | |
| | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:09-CV-1041-RDP** |
| | } | |
| **DRUMMOND COMPANY, INC., et al.,** | } | |
| | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

The court has before it the January 30, 2012 Renewed Motion to Dismiss (Doc. #303) filed by Defendant James L. Adkins ("Adkins").[1]  Pursuant to the court's order (Doc. #308) of February 9, 2012, the Motion (Doc. #303) is now before the court for review.

Having considered the briefs and evidentiary submissions (*see* Docs. #303, 304, 305, 306, 310), the court finds that Defendant Adkins' Renewed Motion to Dismiss (Doc. #303) is due to be granted for the reasons stated herein.

---

[1] On February 13, 2012, Defendant Adkins filed a Motion to Strike the Declaration of Jaime Blanco Maya (Doc. #311) on the ground that the declaration failed to substantially comply with the requirements of 28 U.S.C. § 1746, which statute permits the submission of unsworn declarations in place of sworn affidavits or testimony.  In their Opposition (Doc. #313), Plaintiffs produced an amended Blanco Declaration which includes the required core language from § 1746.  Therefore, the Motion to Strike (Doc. #311) is **MOOT**.  (*See* Doc. #315 at ¶ 1) ("Adkins agrees with the assertions of the Plaintiffs that the Amended Blanco Declaration is now ***procedurally*** in compliance with 28 U.S.C. § 1746.  Accordingly, Adkins' motion to strike is moot for the time.") (emphasis in original).

## I.   <u>Relevant Procedural History and Facts</u>

For more times than the court cares to count, the procedural history and facts relevant to this case have been fleshed out in previous court orders.  (*See, e.g.,* Docs. #30, 43, 45, 112, 141).  As relevant to the motion to dismiss currently before the court for review, the Third Amended Complaint (Doc. #233) contains allegations that a total of five Defendants should be held liable to Plaintiffs on theories of aiding and abetting, conspiracy, and/or agency for committing violations of the law of nations.  They plead two counts (Counts I and II) under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and one count (Count III) under the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350, note.  Individual Defendant James Adkins argues that: (1) there is no personal jurisdiction over him in this court and (2) Plaintiffs' theories of secondary liability as to Adkins are insufficient to support subject matter jurisdiction under the ATS (Counts I and II), or to state a claim under the TVPA (Count III).[2]  (*See generally* Doc. #304).

From 1992 until December 2011, Adkins was a resident of West Virginia.  (*See* Doc. #304 at 3-4) (internal citations omitted).  In December 2011, Adkins moved to Arizona for employment purposes. (*See* Doc. #304 at 4) (internal citations omitted).  At no time has Adkins owned, leased, rented, or otherwise had any interest in any property in Alabama, nor has he had a phone number, bank account, or mailing address in Alabama.  (*See id.*).  Beginning in June 1995 with the signing of his Employment Agreement, and through the course of his employment from mid-1995 until mid-2001 with Drummond, Ltd., Adkins traveled to Alabama intermittently to meet with Drummond officials.  (*See id.*).  During that time period, Adkins maintained an office in Colombia .  (*See id.*).

---

[2] Additional grounds, which Adkins has incorporated by reference for the purpose of preserving for appeal, are not considered herein.  (*See* Doc. #303 at 1-2).

Since 2001, the only time Adkins has been to Alabama was one night in 2010 which he spent at a friend's house while on a personal trip.  (*See id.*).  Since then, Adkins has not been to Alabama at all.  (*See id.*).

## II.   <u>Standard of Review</u>

A Rule 12(b)(2) motion tests the court's exercise of personal jurisdiction over a defendant. *See* FED. R. CIV. P. 12(b)(2).  "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) ("A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction.").  If the plaintiff satisfies his initial burden and the defendant then challenges personal jurisdiction by submitting affidavit evidence in objection to personal jurisdiction, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.  *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002); *see also Posner*, 178 F.3d at 1214 ("The plaintiff bears the burden of proving 'by affidavit the basis upon which jurisdiction may be obtained' only if the defendant challenging jurisdiction files 'affidavits in support of his position.'" (citation omitted)). When the issue of personal jurisdiction is decided on the evidence, but without a discretionary hearing, a plaintiff demonstrates a "prima facie case of personal jurisdiction" by submitting evidence sufficient to defeat a motion made pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.  *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006). At this evidentiary juncture, the court construes the complaint's allegations as true if they are uncontroverted by affidavits or deposition testimony, *id.*

at 1317, and where there are conflicts, the court "construe[s] all reasonable inferences in favor of the plaintiff[s]." *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 199 Fed. Appx. 738, 741 (11th Cir.2006) (quoting *Meier*, 288 F.3d at 1269).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A court may dismiss a complaint under Rule 12(b)(6) if a plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). That is, if a plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Id.*; *see Ashcroft v. Iqbal*, 139 S.Ct. 1937, 1953 (2009) (holding that *Twombly* was not limited to antitrust cases but rather was based on an interpretation and application of Federal Rule of Civil Procedure 8).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc)). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* [plausible] theory."[3] *Brooks v. Blue Cross & Blue Shield*

---

[3] *Twombly* teaches that the correct standard is whether a plaintiff's claims are "plausible." 550 U.S. at 547.

*of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)).   Nevertheless, conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim.  We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (internal citations omitted); *Kirwin v. Price Commc'ns. Corp.*, 274 F. Supp. 2d 1242, 1248 (M.D. Ala. 2003) ("[A]lthough the complaint must be read liberally in favor of the plaintiff, the court may not make liberal inferences beyond what has actually been alleged."), *aff'd in part*, 391 F.3d 1323 (11th Cir. 2004).

**III.**   **Analysis**

    **A.**   **Personal Jurisdiction**

        Adkins advances both personal and subject matter grounds for dismissal of the Third Amended Complaint asserted against him.  This court addresses the issue of personal jurisdiction first.  "A defendant may join objections to jurisdiction under Rule 12(b)(2) with a motion to dismiss for failure to state a claim or any other defenses that are assertable by motion without waiving the jurisdictional defense . . . As a general rule, when the court is confronted by a motion raising a combination of 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint." C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d*, § 1351 at 243-44; *see also Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 221 (2d. Cir. 1963) (holding that it was error for district court to dismiss action for failure to state a claim prior to addressing challenges to personal jurisdiction and venue, because dismissal on the former ground

would be with prejudice, while dismissal for either of the two latter grounds would be without prejudice).

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990); *see also Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 919 (11th Cir. 1989). First, the jurisdictional question under the state long-arm statute is considered.[4] *See Cable/Home Communication Corp.*, 902 F.2d at 855; *see also Alexander Proudfoot Co.*, 877 F.2d at 919. If there is a basis for the assertion of personal jurisdiction under the state statute, that is, minimum contacts with the forum, the next determination to be made is whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Cable/Home Communication Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919. The nature and quality of the contacts may vary depending on whether the type of jurisdiction being asserted is specific or general. *See Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.

---

[4] When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, as are the ATS and the TVPA, the Federal Rules of Civil Procedure direct this court to look to the state long-arm statute in order to determine the existence of personal jurisdiction. *Cable/Home Communication Corp.*, 902 F.2d at 855.

The reach of the Alabama long-arm statute is a matter of Alabama law.  Federal courts are required to construe it as would the Supreme Court of Alabama.  *See Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890-891 (11th Cir. 1983).  Alabama's long-arm statute permits personal jurisdiction to the extent it "is not inconsistent with the constitution of this state or the Constitution of the United States."  ALA. R. CIV. P. 4.2(b).  Thus, the real question here is whether assertion of personal jurisdiction over Adkins comports with the Fourteenth Amendment's Due Process Clause.  *See Olivier v. Merritt Dredging Co., Inc.*, 979 F.2d 827 (11th Cir. 1992) (citing *Alabama Waterproofing Co., Inc. v. Hanby*, 431 So.2d 141, 145 (Ala. 1983)).  Compliance with the Fourteenth Amendment's Due Process Clause exists where the defendant has minimum contacts with the forum state, and where the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Olivier*, 979 F.2d at 830-831; *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (quoting *International Shoe*, 326 U.S. at 316).

There are two types of personal jurisdiction: specific and general.  Specific jurisdiction is based on a party's contacts with the forum state that arise out of or are related to the cause of action.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *see also Consolidated Dev.*, 216 F.3d at 1291.  Consistently throughout this case, Plaintiffs have contended that this court has jurisdiction over James Adkins based upon *specific* jurisdiction.  (*See e.g.*, Doc. #91 at 29) ("Plaintiffs' assertion of jurisdiction over Adkins is based on specific jurisdiction . . .").  Now, for the first time, they also argue that the court has *general* jurisdiction over him as well. (*See* Doc. #306 at 1)("Adkins not only traveled to the forum repeatedly to plan with Drummond the illegal acts alleged in the Third Amended Complaint, conferring specific jurisdiction, but he came to Alabama so often that the test for general jurisdiction is likewise satisfied.") (citing Blanco Decl. at

7

¶¶ 18-20, 25-26).  Adkins, however, focused his personal jurisdiction argument on lack of specific personal jurisdiction because Plaintiffs had heretofore conceded the lack of general personal jurisdiction over Adkins.  (*See* Doc. #91 at 29) ("Plaintiffs' assertion of jurisdiction over Adkins is based on specific jurisdiction . . ."); (*see also* Doc. #304 at 5, n.1) ("As before, this Court lacks general jurisdiction over Adkins . . . Adkins has never had continuous and systematic contacts with Alabama so as to render him essentially at home here, and has not had *any* meaningful contact with Alabama for approximately ten years.") (emphasis in original; internal citations omitted).  That is no longer the case; therefore, both possible bases for personal jurisdiction over Adkins will be considered herein by the court.  (*See* Doc. #306 at 6, n.3) ("Plaintiffs acknowledged previously that the facts in the SAC could not support general jurisdiction, but the new facts in the Third Amended Complaint and the Blanco Declaration certainly support a finding of general jurisdiction.")

### 1. Specific Jurisdiction

The exercise of specific jurisdiction is proper over a nonresident defendant when he has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King v. Rudzewicz*, 471 U.S. 462, 473, 475 (1985) (internal citations omitted); *Consolidated Dev.*, 216 F.3d at 1291 ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action in the complaint.  It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'") (internal citations omitted).  The requirement that there be minimum contacts is grounded in fairness.  It assures that "the defendant's conduct and connection with the forum State [is] such that he should

8

reasonably anticipate being haled into court there." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  In cases of international defendants, the court should consider "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system." *Asahi Metal Indust. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987).

 To show that litigation "arises out of" the activities in the forum state, the Eleventh Circuit does not use "mechanical or quantitative" tests, *see Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009); however, it is "not enough that there be some similarity between the activities that connect the defendant to the forum and the plaintiff's claim."  *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 n. 3 (11th Cir. 2008).  The defendant's contacts with the forum must be related to the "operative facts of the controversy."  *Id.*  Questions of specific jurisdiction are examined in the context of the particular claims asserted – here, those claims are grounded in intentional tort.  To properly determine jurisdiction, "a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783 (1984) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

The Third Amended Complaint makes the following "new" allegations against James Adkins:

> •  During his years of service for Drummond, between 1995-2002, Defendant Adkins traveled to Alabama every 4-6 weeks to brief Garry Drummond, Mike Tracy, and other Drummond officials on security issues, including Drummond's support for the AUC.  Adkins regularly told the AUC leaders and their intermediaries that he went to Alabama regularly to brief Garry Drummond and obtain his consent to key strategic issues, including providing support to the AUC.  Adkins obtained consent in Alabama from Garry Drummond to provide substantial support to the AUC. (Third Am. Compl., ¶ 165).

These new allegations are, according to Plaintiffs, derived from assertions made in the Blanco

Declaration:

• Adkins traveled to the United States every twenty to thirty days. Most often, he traveled to Alabama to the headquarters of the Drummond Company . . . Adkins told me that every time he went to Birmingham he met with Garry Drummond to talk about security issues at the mine, the railroad line, and the port . . . After two or three trips, he told me that he had raised the issue of funding El Tigre's Front of the AUC and that Garry Drummond had agreed to the idea . . . Adkins said that he would try to bring down money from Drummond in cash, to give to the AUC. He flew to Colombia on private flights from Alabama to Cartagena, and thought he would be able to bring up to $10,000 USD per flight. (Blanco Decl., ¶ 18).

• After Adkins told me of his plan to have Drummond financially support the AUC, I got in touch with El Tigre. . . . I told El Tigre of the plan to provide El Tigre's Front of the AUC, the Juan Andres Alvarez Front, 30 million Colombian pesos per month. Out of the monthly payments, $25 million Colombian pesos (which converted to dollars are roughly $10,000 USD) would be paid by Drummond, and $5 million would be paid from my company, ISA. (Blanco Decl., ¶ 19).

• I let Adkins know that El Tigre was in agreement with Drummond's proposal. When Adkins came back to Colombia from his next trip to the United States, he gave me $10,000 USD, which I then personally gave to El Tigre. (Blanco Decl., ¶ 20).

• Drummond was in a state of despair because the explosions were occurring with greater frequency each day. Adkins told me that as a result of these attacks, Drummond came into a direct arrangement with the AUC to provide security to the railroad line. (Blanco Decl., ¶ 25).

The court agrees with Adkins that these "new" allegations continue to fall short of proving

the relatedness prong of the specific jurisdiction test. Although Adkins purportedly briefed his

superior at his superior's office in Alabama, "the Supreme Court has cautioned against using this

type of contact in minimum contacts analysis because it does not show Adkins' decision to take

advantage of the forum state; rather he was merely communicating with his supervisor and could not

dictate where those communications took place." (*See* Doc. #141 at 13, n.6) (citing *Burger King*,

471 U.S. at 475). Adkins himself never maintained an office in Alabama, and Adkins' Employment

Agreement specifies his work location as Colombia. (Doc. #304 at 4) (citing First Adkins Decl., ¶¶ 6, 8). On a more fundamental level, the new paragraph added to the Third Amended Complaint does nothing to establish that Adkins purposefully availed himself of Alabama as a forum State – Colombia yes, but Alabama – no. (*see* Doc. #141 at 13-14). The focal point of the tort (as alleged in the pleadings) is clearly Colombia. *See Calder v. Jones*, 465 U.S. 783, 789 (1984) (courts generally deny specific jurisdiction in a forum that does not hold the focal point of the injury). There is, as before, a complete absence of any effects felt or intended to be felt in Alabama. (*See* Doc. #141 at 25) (internal citations omitted).

Plaintiffs attempt to overcome these hurdles by contending that the allegations against Adkins are "now dramatically different" than they were with the original motion to dismiss; now the "main facts" are "deriv[ed] from the Blanco Declaration." (Doc. #306 at 2, 3). They allege that Adkins, for the time period of 1995-2002, made trips to Alabama every 4-6 weeks to discuss security issues with Drummond and obtain consent (*i.e.* "broker . . . the agreement") for Drummond's support to the AUC, and contend that is enough to support a finding of specific jurisdiction according to Plaintiffs under a conspiracy theory. (*See* Doc. #306 at 3, 6-10).

Under a conspiracy theory, a defendant who otherwise would not be subject to personal jurisdiction might be hailed into court if the plaintiff "plead[s] its conspiracy allegations with sufficient particularity" and alleges "overt acts taken within Alabama in furtherance of the conspiracy." *J&M Assocs., Inc. v. Callahan*, No. 07-0883-CG-C, 2011 WL 5553696, at *3 (S.D. Ala. Nov. 15, 2011) (internal citations omitted). According to Plaintiffs, "Adkins sealed the deal in Alabama" and "returned on a monthly basis to the forum and often smuggled $10,000 cash from Drummond in Alabama to the AUC in Colombia." (Doc. #306 at 9) (citing Blanco Decl., ¶¶ 18-19

and Third Am. Compl., ¶ 165). "Here, Adkins came to the forum for the purpose of making the illegal agreement and then he facilitated the ongoing unlawful acts by serving as the money mule on a regular basis and by reporting back on the AUC's compliance with the plan to Drummond in Alabama on a monthly basis for six or more years." (Doc. #306 at 9-10).

The problems with Plaintiffs' conspiracy theory as a basis for jurisdiction are multi-fold. First, while Plaintiffs are absolutely correct in stating that the court has previously found that Plaintiffs sufficiently pled a conspiracy in their complaint, such finding was made with respect to a conspiracy formed ***in Colombia*** between the Drummond Defendants and the AUC. (*See* Doc. #43 at 19, 29-32; *see also* Third Am. Compl., ¶¶ 195, 233-35). Nowhere does the Third Amended Complaint contain allegations that ***Adkins*** conspired to commit war crimes or extrajudicial killings. While there are allegations that ***Drummond*** entered into an agreement with the AUC (Third Am. Compl., ¶¶ 195, 233-235), ***Adkins*** is alleged only to have "approved payments" and "consent[ed] to key strategic issues, including providing support to the AUC" ***in Alabama***. (Third Am. Compl., ¶ 165). There is no allegation that the support to the AUC sought and/or "brokered" by Adkins had anything to do with war crimes and extrajudicial killings that occurred in Colombia. *See Ex parte McNeese Title, LLC*, 2011 Ala. LEXIS 180 at *7-15 (Oct. 14, 2011) (in determining whether a plaintiff has met the conspiracy theory, a court need only consider jurisdictional averments and not allegations directed to the merits of the claim); (*see also* Third Am. Compl., ¶ 165; Doc. #310 at 18) ("Plaintiffs thus concede by silence that they have no allegation that, despite Adkins' purported knowledge of the AUC's record of violence . . . Adkins later personally decided in favor of siding with the AUC to murder the decedents . . . Plaintiffs also do not address . . . Adkins' argument that

12

Plaintiffs fail to allege that Adkins personally shared the AUC's interest to commit war crimes in order to advance AUC interests over FARC interests.").

Second, the cases cited by Plaintiffs for personal jurisdiction under a conspiracy theory require a showing that "the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protection of its laws" *J&M Assocs.*, 2011 WL 553696 at *3 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (finding the Defendant to have purposefully directed his activities toward Alabama because the tort was perpetrated in Alabama against the plaintiff in Alabama, and the conspiracy was alleged to help perpetrate the tort in Alabama)), ***and*** that Defendant's conduct relates to the cause of action (*id.*). The court has heretofore explained how these requirements have not been met (*see* pp. 10-11, *infra*; *see also* Doc. #141 at 13-17); they are similarly not met with regard to the conspiracy allegation. (*See* Doc. #141 at 13-17). These dual requirements are the constitutional benchmarks of the minimum contacts analysis and ensure that a defendant is only burdened with litigation in a forum where his conduct and connection with the forum are such that he should reasonably anticipate being haled into court there. *See J&M Assocs.*, 2011 WL 5553696 at *3 (citing *Oldfield*, 558 F.3d at 1220-21). Because they are lacking in this case, the court cannot assert specific personal jurisdiction over Adkins.[5]

_____

[5] Even if Plaintiffs had been able to satisfy the relatedness and purposeful direction prongs for specific personal jurisdiction, it would be unfair and unreasonable to subject Adkins to suit in Alabama. *See Burger King*, 471 U.S. at 476-78. The constitutional due process inquiry, regardless of the conspiracy allegation, focuses on the relationship among the Defendant, the forum, and the litigation. *See Rush v. Savchuk*, 444 U.S. 320, 327 (1980) (internal quotations omitted). Factors to consider in this inquiry are: the burden on the defendant, the forum state's interest in adjudicating the dispute, Plaintiffs' interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of several states in furthering fundamental substantial policies. (*See* Doc. #141 at 17, n. 7). The burden on Adkins to litigate this dispute in Alabama is real – Adkins has not had any meaningful contact with Alabama for 11 years; he is currently living in Arizona and claims West Virginia as his

2.      **General Jurisdiction**

Plaintiffs' alternative argument on personal jurisdiction is that general jurisdiction exists based on the "continuous and systematic"contacts Adkins had with Alabama during the course of his employment with Drummond.   (Doc. #306 at 10-11) (citing *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also Consolidated Development v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (2000) ("The due process requirements for general personal jurisdiction are more stringent than for personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state.")).  Using the Blanco declaration, Plaintiffs contend that Adkins must have traveled to Alabama approximately sixty-one (61) times during the course of seven years.  (*See* Doc. #306 at 11).  Plaintiffs believe they are entitled to jurisdictional discovery on the issue of general personal jurisdiction, "for example, if [Adkins] stayed for several days or weeks on his frequent trips or whether he kept an apartment in Alabama."  (Doc. #306 at 12).

Just as before, jurisdictional discovery will not help Plaintiffs with their endeavor to assert general personal jurisdiction over Adkins.  (*See* Doc. #141 at 15) (internal citations omitted).  First, Adkins has heretofore affirmatively stated to the court that he at no time "owned, possessed, leased, used, or had an interest in any real property in Alabama."  (First Adkins Decl., ¶ 4; Second Adkins Decl., ¶ 5).  Plaintiffs deposed Adkins in the *Romero* case and turned up nothing on Adkins'

_____

residency.  (*See* Doc. #304 at 13; *see also* Doc. #306 at 14).  Alabama has very minimal interest, if any, in litigating this dispute involving Adkins.  *See Licciardello*, 544 F.3d at 1284.  No harm has occurred in Alabama; Alabama is not the focal point of the dispute.  Further, Plaintiffs are not alleged to live in Alabama or anywhere in the United States.  Alabama is no more convenient for them than any other forum in which to litigate this dispute and effective relief might be obtained against Adkins elsewhere.  (*See* Doc. #141 at 27).  Therefore, as before, traditional notions of fair play and substantial justice do not allow this court's jurisdiction over Adkins.

14

connections to Alabama.  (*See* Doc. #141 at 16).  Second, even *if* Adkins stayed in Alabama for

weeks at a time, that in and of itself would not subject Adkins to the jurisdiction of this court.  (*See*

Doc. #310 at 15, n. 7) ("[I]t was three weeks down there [in Colombia], once week up here . . . and

he would typically go through Alabama just for the purpose of getting home.  On occasion he might

stop and meet with the executives to the extent they requested such a meeting.") (internal citation

omitted).   Coming to Alabama for the sake of his employment is vastly at odds with being

"essentially at home" in Alabama.  *See Goodyear Dunlop Tires Oper. S.A. v. Brown*, 131 S. Ct.

2846, 2851 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction

is the individuals' domicile.").  In order for jurisdictional discovery to be appropriate, there must be

a genuine issue of fact to be resolved.  *See Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 n. 7

(11th Cir. 1982).  Plaintiffs' speculative "hunch" that Adkins might have stayed for longer periods

of time in Alabama is simply not enough to open this issue up to discovery.  (*See* Doc. #141 at 15).

Based on the foregoing, this court cannot assert general personal jurisdiction over Adkins.

### B.    Subject Matter Jurisdiction

Adkins argues that Plaintiffs' theories of secondary liability as to himself are insufficient to

support subject matter jurisdiction under the ATS (Counts I and II) or to state a claim under the

TVPA (Count III).  The court need not address those arguments here.  It is proper for a court to

address issues of personal jurisdiction before reaching the merits of Plaintiffs' claims; a Defendant

that is not subject to the jurisdiction of the court cannot be bound by its rulings.  *See Madara v. Hall*,

916 F.2d 1510, 1513-14, n.1 (11th Cir. 1990).  Moreover, the fact that a dismissal for failure to state

a claim is with prejudice whereas a dismissal for lack of jurisdiction is without prejudice counsels

against bypassing the jurisdictional issue.  *See Madara*, 916 F.2d at 1514, n. 1 (contrasting

dismissals made under FED. R. CIV. P. 12(b)(2) and FED. R. CIV. P. 12(b)(6) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d. Cir. 1963) (en banc)).  Therefore, this court declines to rule upon Adkins' arguments against subject matter jurisdiction.

## IV.    Conclusion

For the foregoing reasons, Defendant James L. Adkins' Renewed Motion to Dismiss (Doc. #303) is due to be granted.  A separate order will be entered dismissing all claims against Adkins.

DONE and ORDERED this _____20th_____ day of June, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE