**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **CLAUDIA BALCERO GIRALDO, et al.,** | }<br>}<br>} |
| **Plaintiffs,** | }<br>} |
| v. | }   Case No.: 2:09-CV-1041-RDP<br>} |
| **DRUMMOND COMPANY, INC., et al.,** | }<br>}<br>} |
| **Defendants.** | } |

**MEMORANDUM OPINION**

The court has before it Plaintiffs' Rule 16 [sic] Motion to Vacate Judgment to Take Limited Discovery Regarding U.S. Conduct and to Allege Diversity Jurisdiction (Doc. #468) filed on August 21, 2013. Pursuant to the court's August 23, 2013 Order (Doc. #469), the Motion (Doc. #468) has been fully briefed (*see* Docs. #468, 474, 476) and is properly before the court for decision. Upon careful review, the court concludes the motion should be denied.

**I.   Procedural History**

Plaintiffs Jane Doe (1-166) and Peter Doe (1-81) commenced this action on May 27, 2009 by filing a complaint (Doc. #1) in this court for equitable relief and damages under the Alien Tort Claims Act ("ATS"),[1] Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350, and Colombian wrongful death law. (*See* Compl. ¶¶ 122-44). In their original complaint, Plaintiffs alleged that they were wives/legal heirs, parents/legal heirs, and children/legal heirs of those "murdered by the AUC's Juan Andres

---

[1] Over time, courts have referred variously to 28 U.S.C. § 1350 as the Alien Tort Statute (hereinafter "ATS"), the Alien Tort Act, and the Alien Tort Claims Act. In *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), the Supreme Court referred to § 1350 as the Alien Tort Statute. *See Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Company*, 517 F.3d 104, 113, n. 2 (2d Cir. 2008). This court will primarily use that designation.

Alvarez Front in furtherance of its agreement with Drummond to provide security, pacify the area, and otherwise ensure that the civilian population in and around the Drummond mine and its railroad line would not in any way provide support or cooperation to the FARC or other leftist rebels." (Compl., ¶ 15). Plaintiffs sought "damages for the loss of their relative who was an innocent civilian murdered in furtherance of Drummond's security objectives and also as a result of the civil conflict between the AUC and the FARC[.]" (Compl., ¶ 15).

Since that original 2009 Complaint was filed, the action in this case has been non-stop. Plaintiffs amended the complaint three times over the course of three years. (*See* Docs. #35, 55, 233). On May 24, 2010, after two motions to dismiss had been ruled on (*see* Docs. #30, 43), the court ordered the parties to create a plan for discovery, suggesting that it would be prudent to hit the ground running as the case had already been pending for over a year. (*See* Doc. #54).

The parties began issuing letters rogatory for service on foreign defendants and noticing depositions. (*See* Docs. #57-60, 134, 135, 143, 144, 148-76, 178, 186-94, 199, 200-10). On August 25, 2010, more than a year after this court's Initial Order went out requiring a Rule 26 conference, the parties filed a Report of the Parties' Planning Meeting (Doc. #74). The Report contained a discovery cut-off date of February 28, 2012 (Doc. #74, ¶ B) and a trial ready date of August 2012 (Doc. #74, ¶ H). More motions to dismiss followed (*see* Docs. #62, 78, 81, 109, 112, 113, 129, 141, 142), but the court and the parties continued to operate within the deadlines contained in the Report. (*See* Docs. #121, 122, 140 ("[T]he parties are free to conduct discovery that can be undertaken notwithstanding the outcome of the appeal in *Baloco*."), 195 ("[T]he corporate defendants have been providing discovery in this case;" "And in this case, the Drummond defendants have been providing discovery, both documentary and interrogatories;" "[W]e're in the middle of discovery against

Drummond; we're in document reviews, and we're going to take some depositions of Drummond people."); *see also*, Docs. #210, 229, 230).

On September 2, 2011,[2] the parties filed a Joint Motion to Modify the Pretrial Schedule Submitted in the Report of Parties' Planning Meeting (Doc. #215) which sought deadline extensions (although the dates they requested differed). Plaintiffs proposed August 28, 2012 as a discovery cut-off date; Defendants proposed April 30, 2012. (*See* Doc. #215). The court considered the competing dates on the issue and determined that it was "reasonable to extend discovery as well as the anticipated trial date by splitting the difference of the varying recommendations of the parties." (Doc. #234 at 2). All deadlines were extended by four months, making the new and final discovery cut-off date June 29, 2012. (*See* Doc. #235).

The course of this case is truly a protracted one. Nevertheless, what is clear is that throughout "years of complex motion practice discovery" (Doc. #468 at 1), beginning with their original complaint (Doc. #1) and as reflected in various amendments to their pleadings (Docs. #55, 233), Plaintiffs have consistently maintained and represented to the court, even through summary judgment, that Defendants' decisions to provide substantial support to the AUC at issue in this case were made in the United States.[3] (*See e.g.*, Doc. #233, ¶¶ 162-68; Doc. #330 at 10-11, 15; Doc. #339 at 39; Doc. #340, ¶ 5, 164A, 165; Doc. #347; Doc. #407 at 11 ¶ 12, 15 ¶ 7, 16n.4, 19 ¶ 1, 21 ¶ 3, 22, 25 ¶ 6, 26 ¶7, 27 ¶8; Doc. #449 at 15-21). Regardless of how much they may want to do so, they cannot now go back in time and re-invent history so that their claims in

---

[2] Plaintiffs also requested leave to file the Third Amended Complaint (Doc. #213) on September 2, 2011. The Third Amended Complaint was allowed by order of the court and was filed on September 29, 2011. (*See* Docs. #232, 233).

[3] When seeking to file a fourth amended complaint, Plaintiffs' made clear to the court that they considered Mr. Drummond and his company to be interchangeable, arguing that "the factual allegations in the most recent complaint already address the actions Garry Drummond took in his individual capacity." (Doc. #340 at 7). "These changes merely confirm that Garry Drummond had an active role in the allegations of the Complaint . . . [t]hese instances should be amended as follows to clarify that Garry Drummond is now being named as a defendant in this action . . ." (*Id.* at 11). Perhaps most importantly, Plaintiffs argued "[t]he minor changes noted above will not in any way alter the substance or approach of the case." (*Id.*).

this case can be reincarnated. (*See* discussion *infra*, Section III.A. on "Discovery Related to the Question of 'Touch and Concern'").

## II.     Standard of Review

Federal Rule of Civil Procedure 60 is titled "Relief from a Judgment or Order." Rule 60(b) provides for "relief from a final judgment, order, or proceeding" on the following grounds: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether precisely called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. FED. R. CIV. P. 60(b). Plaintiffs seek to have the court vacate its judgment on the sixth "umbrella provision" which operates as a "grand reservoir of equitable power to do justice in a particular case when relief is not warranted" by the other clauses of Rule 60(b). *See U.S. v. Certain Real Property Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1318 (11th Cir. 1997) (quotation marks and citations omitted). Relief under Rule 60(b)(6) is discretionary and requires "exceptional" or "extraordinary" circumstances; movants must show that "absent such relief, an 'extreme' and 'unexpected' hardship will result." *Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1294 (11th Cir. 2013) (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)). Final judgments should not be "lightly reopened." *Griffin*, 722 F.2d at 680. Critically, as it relates to this case, tactical errors in a litigant's tactics or strategy do not warrant relief under this rule. *See Ackermann v. United States*, 340 U.S. 193, 211-12 (1950) ("There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.").

**III.     Analysis**

Plaintiffs ask this court to vacate its order granting summary judgment for the corporate Defendants on the Alien Tort Statute claims and to allow Plaintiffs additional but limited discovery on the issue of Defendants' conduct in the United States. (*See* Doc. #468 at 1). In the alternative, Plaintiffs request that they be permitted to amend the Third Amended Complaint, by, *inter alia*, dropping non-diverse Defendants for purposes of diversity jurisdiction and allowing the wrongful death claims under Colombian law to proceed in this court. (*See* Doc. #468 at 2).

**A.     Discovery Related to the Question of "Touch and Concern"**

Plaintiffs argue that "extraordinary circumstances" exist here. They allege that there was "no need to seek discovery focused on Defendants' domestic conduct prior to *Kiobel*, and no chance afterwards because discovery was already closed." (Doc. #468 at 4). They cite cases providing relief under Rule 60(b)(6) where "there has been a clear-cut change in the law." *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987).

The fatal flaw infecting Plaintiffs' argument is that the earthquake that shook their claims was forecasted. Plaintiffs made a *strategic* choice not to pursue (beyond what they already had) information regarding Defendants' domestic conduct despite the fact that since at least March 5, 2012 the Supreme Court hinted that the extraterritorial reach of the Alien Tort Statute was a central question pertaining to such claims. In fact, on March 7, 2012 Defendants filed a motion in this court to stay all proceedings pending the Supreme Court's decision in *Kiobel*. (*See* Doc. #326). But Plaintiffs *opposed* the motion to stay (with full knowledge of the discovery cutoff of June 2012) and in doing so explicitly recognized that the extraterritorial reach of the statute was at issue. (*See generally* Doc. #330). They went even further and stated that "even if the Supreme Court determined there is some kind of extraterritorial limitation on claims brought under the ATS, this does not mean that claims brought against a United States company with a strong connection to the United

States would also be precluded." (Doc. #330 at 10). Plaintiffs had alleged throughout the course of the litigation that Drummond "assisted, encouraged, supported and conspired with the AUC by and through its conduct that occurred in the United States." (*Id.*, Doc. #233 at ¶¶ 162-68). They even purportedly had evidence to support such claims – "we have alleged and now have decent evidence that some of the key decisions were made in Alabama that affected the deaths of our clients."[4] (Doc. #339 at 39). They argued against staying discovery – "[t]here's absolutely no reason to slow discovery down if what we think is going to happen is we'll have a decent argument at summary judgment . . . the evidence that we're trying to get now is the same no matter what, there is no reason to stop." (Doc. #339 at 38, 40).

On the day that *Kiobel* was decided, this court entered an order directing the parties to brief the effect of *Kiobel* on the case before the court. (*See* Doc. #447). In their brief on the issue, Plaintiffs argued that their claims "touched and concerned" the territory of the United States because: "defendants decisions to conspire with and aid and abet the AUC's commission of war crimes and extrajudicial killings were made in the U.S.;" "defendants took overt acts in the U.S. to execute the plan to support the AUC's commission of war crimes

---

[4] Indeed, in their brief arguing against the stay, Plaintiffs argued:

> In stark contrast to facts and circumstances in *Kiobel*, Plaintiffs' claims, in addition to those brought against individual corporate officers and other individuals, involve Drummond, Inc., a United States company, headquartered in Alabama, that is alleged to have assisted, encouraged, supported and conspired with the AUC by and through conduct that occurred in the United States. As examples only, Plaintiffs have alleged that Drummond, Inc. owns, directs, and controls Drummond coal operations in Colombia. Corporate officers of Drummond, Inc. planned, strategized, and conducted meetings in Alabama concerning Defendants' agreements to pay the AUC in furtherance of committing extrajudicial killings and war crimes under the TVPA and ATS. Top executives from Drummond, Inc. traveled from the U.S. to Colombia to conduct face-to-face meetings with top AUC leaders and directed the AUC to assassinate Drummond union leaders and directed the AUC's targets. Regular reports and briefings were provided to Alabama-based Drummond executives.
>
> . . .
>
> [B]oth El Tigre and Jaime Blanco will provide evidence that the ultimate decisions resulting in the murder of Plaintiffs' decedents were made in the U.S. by Drummond executives.

(Doc. #330 at 10-11, 15).

6

and extrajudicial killings;" "from the U.S., defendants controlled the day to day operations in Colombia, which included control over security matters and policies concerning the AUC;" and "defendants directly supervised and controlled Jim Adkins, one of the mastermind's of the illegal scheme to fund the AUC and commit war crimes and extrajudicial killings." (Doc. #449 at 15-21). At no point did Plaintiffs argue that they had not had the opportunity to develop evidence to support jurisdiction under *Kiobel*. To the contrary, they "highlight[ed] particularly relevant evidence . . . for the purpose of assisting the court in determining the effect of *Kiobel* on the current case." (Doc. #449 at 16, n. 9).

Plaintiffs have consistently argued during the course of the litigation that decisions were made in the United States to effectuate the murders in Colombia. The reality that the evidence did not bear that out on summary judgment, and that *Kiobel* requires such evidence, does not give Plaintiffs a free pass to re-open discovery and seek out witnesses whose testimony would have been relevant during the extended time frame for discovery. This aspect of the Motion to Vacate (Doc. #468) is due to be denied.

  **B.**   **Amending the Complaint for a Fourth Time**

Plaintiffs' secondary argument is that this court should allow Plaintiffs an opportunity to amend the complaint for a fourth time despite the fact that the case is closed. The purpose of such amendment would be to dismiss defendant Augusto Jimenez, achieve complete diversity, and permit Plaintiffs' wrongful death claims based on Colombian law to proceed. (*See* Doc. #468 at 6-17). By doing so, Plaintiffs would "avoid . . . the necessity of an immediate appeal even if the court denies Plaintiffs' simultaneous request for additional limited discovery on their ATS claims." (Doc. #468 at 7). To support this argument, Plaintiffs rely on: (1) Federal Rule of Civil Procedure 60(b)(6); (2) Federal Rule of Civil Procedure 21; (3) 28 U.S.C. § 1653; and (4) Federal Rule of Civil Procedure 15(a).

Each of these grounds for amendment are overshadowed by a simple fact that cannot be ignored or explained away. No wrongful death claims have existed in this case since November 2009. (*See* Doc. #30 at 34-35; *see also* Doc. #31). True, they were dismissed on supplemental jurisdiction grounds. (*See* Doc. #30 at 35) ("Those issues are sufficiently complex that it would be impossible for this court to navigate the Colombian law requisites for a wrongful death claim. *See Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1318 (11th Cir. 2008) ("The conclusion of the district court that the claim raised complex issues is supported by the record, and the court was well within its discretion to decline jurisdiction over that claim.")). But since November 2009, Plaintiffs have made no effort to reincarnate these claims. At the time of the dismissal of the Colombian claims in 2009, Plaintiffs could have sought to reinstate those claims under diversity jurisdiction and/or could have filed those claims in Colombia to preserve them under the statute of limitations. Their failure to do so *four years ago* cannot now be fairly couched as grounds to allow a fourth amendment to a complaint originally filed in 2009.

No court has ever held that dropping a non-diverse party is proper to breathe new life into claims that had been foreclosed by the court for four years, whether under Federal Rules of Civil Procedure 60(b)(6), 21,[5] 15(a),[6] or 28 U.S.C. § 1653.[7] The prejudice to Defendants would simply be too great. Plaintiffs asked for,

---

[5] Here, an amendment would not be proper under Federal Rule of Civil Procedure 21 which provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." The wrongful death claims were dismissed from this case in November 2009. This entire case was closed in July 2013. Justice does not allow Plaintiffs to *avoid* a judgment by relitigating the entire case under a different cause of action and a different jurisdictional basis. Any doubt about the jurisdiction over the wrongful death claims has long been settled; jurisdiction over the wrongful death claims is not affected by any debatable issue that was resolved between 2009 and the present. Thus, for this and other reasons noted below, this case is on different footing than *LeBlanc v. Cleveland*, 248 F.3d 95 (2d Cir. 2001) ("Because the question of admiralty jurisdiction was unresolved, it was in the interest of judicial economy to proceed together with [the co-plaintiff's] case and to eliminate a non-diverse party only if doing so were essential to jurisdiction.").

[6] Amendment would not be proper under Federal Rule of Civil Procedure 15. Rule 15 makes clear that a district court need not allow amendment of the pleadings: (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). The deadline to amend the pleadings passed almost three years ago. (*See* Doc. #122). Plaintiffs could have pursued Colombian wrongful death claims in

and were granted, the opportunity to amend the complaint in this case three times. (*See* Docs. #35, 55, 233). There has never been even the hint of a need or an attempt to re-file the distinct wrongful death claims. Whether this was a tactical error or a strategic decision, Defendants can not now be required to bear the burden of the choice *four years* after those claims had been disclosed, and *after* the merits of the federal claims have been dismissed on summary judgment as to the Defendants over which the court has personal jurisdiction. Unlike the case cited by Plaintiffs to allow the amendment, Defendants in this case have not had notice of potential Colombian wrongful death claims since 2009.[8] To re-open them now would be extremely prejudicial and would require substantial additional expense, preparation, and discovery. *See id.* This aspect of the Motion to Vacate (Doc. #468) is due to be denied.

---

diversity in any of the three amended complaints, but chose not to do so.

[7] 28 U.S.C. § 1653 allows that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." But the statute cannot manufacture jurisdiction where none existed previously. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989) (explaining that "only incorrect statements about jurisdiction that actually exists, and not defects in the allegations themselves" can be remedied with use of this statute). Here, the operative complaint names Augusto Jimenez as a defendant and alleges only federal claims, thus making diversity jurisdiction improper. There are no jurisdictional allegations to "correct" pursuant to 28 U.S.C. § 1653.

[8] Plaintiffs argue that *LeBlanc v. Cleveland*, 248 F.3d 95 (2d Cir. 2001) is directly on point and supports their motion to vacate and to allow amendment of the complaint. In *LeBlanc*, the Second Circuit reversed the district court for not allowing Plaintiff to amend her complaint to assert diversity jurisdiction after the case had been dismissed for lack of admiralty jurisdiction. *Id.* at 101. But *LeBlanc* is distinguishable because there the district court wholly failed to consider LeBlanc's Rule 21 and Rule 15 motions, failed to assess whether there would be any prejudice in granting the Rule 15 amendment, and improperly determined that granting the Rule 60(b) motion would be futile. *Id.* at 100. Throughout this case, Plaintiffs have made affirmative assertions that they could establish a sufficient connection between the alleged support for the AUC and decisions made in the United States by Defendants. Moreover, the court has fully considered Plaintiffs' Rule 15 and 21 motions. In doing so, the court in connection with Plaintiffs' Rule 15 motion, has determined that the prejudice to Defendants is simply too great to allow an amendment, after this case has been litigated for four years and is now closed. Moreover, if Plaintiffs' Rule 21 motion were granted, Defendants would similarly be prejudiced by allowing Plaintiffs to effectively change the entire theory and jurisdictional basis of the case. Finally, here, unlike the situation in *LeBlanc*, Plaintiffs' tactical choice to go forward with this litigation by completing discovery and litigating Defendants' motions for summary judgment is an appropriate factor for this court to consider in ruling on this motion, as is their failure to seek to re-assert their diversity claims at any time prior to now after the dismissal of those claims in 2009.

III.   **Conclusion**[9]

For all of the foregoing reasons, the Motion to Vacate (Doc. #468) is due to be denied. A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this ___5th___ day of November, 2013.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[9] On October 21, 2011, a complaint was filed in the case of *Drummond Company, Inc. v. Collingsworth et al.*, 2:11-cv-3695-RDP-TMP. Allegations have now been made in *Collingsworth* that certain paramilitary witnesses in this case might have been paid for their testimony. As the court noted at a hearing on pending discovery issues in 2:11-cv-3695-RDP-TMP:

> The Court: I am concerned about the allegations. I don't feel like I would be doing a service to either side, particularly the Defendants, unless I said that in this hearing. I'm not presuming any of these allegations are true . . . But I feel like I would not be candid as I should be with you if I told you that I was anything but very concerned about these assertions.
>
> I don't know what my obligations are, for example, in the case that I currently have where these allegations may bleed into that case.
>
> I don't know what my obligations are in terms of exercising inherent authority over the parties and counsel in these cases on the Rule 60 motion cases still pending, the case that's still pending in my court.
>
> And I don't know what my obligations are even with the case that's pending in the 11th Circuit right now regarding these matters. I'm not making any judgment about that right now.
>
> But I think at some point in the future when these issues become more clear about what's really happened, I think I may have to assess whether there's something I need to do beyond just ruling on discovery motions. Make sense?

(Doc. #63 at 84-85 in 2:11-cv-3695-RDP-TMP).